Bijan Amini, Esq.
Jason Levin, Esq.
STORCH AMINI PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 490-4100
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| SHETEL INDUSTRIES LLC, : | |
| | 17-CV-02505 (LDW) (ARL) |
| Plaintiff, : | |
| | |
| -against- : | **AMENDED COMPLAINT** |
| | |
| ADIN DENTAL IMPLANT SYSTEMS, INC., : | |
| ADIN DENTAL SOLUTIONS USA, INC., and | JURY TRIAL DEMANDED |
| JEREMY DANZER, : | |
| | |
| Defendants. : | |

-------------------------------------------------------------x

     Plaintiff Shetel Industries LLC ("Plaintiff"), by and through its undersigned counsel, as

and for its amended complaint against defendants Adin Dental Implant Systems, Inc. ("Adin"),

Adin Dental Solutions USA, Inc. ("Adin USA Newco"), and Jeremy Danzer ("Danzer")

(collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

    1.     This is an action seeking redress for misappropriation of trade secrets under the

Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, unfair competition and false advertising

under the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, and for

misappropriation of trade secrets, unfair competition, defamation *per se*, tortious interference

with contract, and tortious interference with prospective business relationships under New York

law.

2.     Adin engaged Plaintiff to serve as the exclusive distributor of its dental products in the United States.  At the time, Adin had limited sales or business activity here.  After Plaintiff spent substantial sums developing and growing the sales of Adin products, Adin claimed to be interested in purchasing Plaintiff's business and tried to obtain Plaintiff's proprietary information, including its customer list and sales history.  When Plaintiff refused to turn over its crown jewels absent a definitive purchase agreement, Adin enlisted Danzer, formerly an employee and Executive Director of Plaintiff, to assist it in acquiring the distribution network Plaintiff created without compensating Plaintiff.

3.     On September 13, 2016, after Plaintiff had already terminated his email access, Danzer hacked into his former work email account and sent eighteen (18) emails to his personal email account containing and attaching Plaintiff's confidential, proprietary and trade secret information.  Danzer stole, among other things, the names and contact information for hundreds of Plaintiff's customers, Plaintiff's sales history, Plaintiff's sales forecasts, information regarding Plaintiff's sales leads, and Plaintiff's internal notes regarding communications with its actual and potential customers.

4.     The next day, Danzer and/or Adin incorporated Adin USA Newco for the purpose of competing with Plaintiff using Plaintiff's proprietary, confidential and trade secret information.  Indeed, Adin hired Danzer and lured away other key members of Plaintiff's business and sales force, obtained additional confidential information from the former employees regarding Plaintiff's business and customers, and used the information to solicit Plaintiff's customers to move their business from Plaintiff to Adin USA Newco.  Defendants' solicitations and their communications with industry professionals have included false information about Plaintiff and its business.  Defendants' actions are causing significant confusion in the

2

marketplace.  For example, according to a former customer of Plaintiff, Adin manufactured

thousands of dollars of defective dental implant products which the customer purchased from

Defendants.  However, due to the confusion caused by Defendants, the customer mistakenly

thought it purchased the products from Plaintiff and threatened legal action if it did not receive a

refund from Plaintiff.  Plaintiff's business has suffered significant harm from Defendants'

misconduct.

5.      By this action, Plaintiff seeks to hold Defendants accountable for their violations

of federal and state trade secret and unfair competition laws, as well as for their other wrongful

conduct.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction to claims arising under the Defend

Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.*, pursuant to 28 U.S.C. § 1331.

7.      This Court has subject matter jurisdiction to claims arising under the Lanham Act,

15 U.S.C. § 1051 *et seq.*, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331.

8.      This Court has supplemental jurisdiction for claims arising under state law

pursuant to 28 U.S.C. § 1367.

9.      As an independent basis for jurisdiction over the state law claims, this Court has

subject matter jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship).  Complete diversity

of citizenship exists between Plaintiff and Defendants, and the amount in controversy exceeds

$75,000.

10.     This Court has personal jurisdiction over each of the defendants.  Each defendant

regularly transacts business within the State of New York.  Adin regularly sold and shipped

products to Plaintiff in New York for sale in this State and in other states.  Adin USA Newco is

registered to do business in New York.  The individual defendant Danzer performed services for

Plaintiff within the State of New York.  Defendants deliberately interfered with Plaintiff's

written contracts with employees who were employed in New York and subject to the personal

jurisdiction of this Court.  Adin, Adin USA Newco, and Danzer tortiously interfered with those

contracts and disseminated materially false statements regarding Plaintiff, including within the

State of New York.

11.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391 because

Defendants are subject to personal jurisdiction in this District and because a substantial part of

the events giving rise to Plaintiff's claims occurred in this District.

<u>**PARTIES**</u>

12.     Plaintiff is a limited liability company organized and existing under the laws of

the State of New York.  Plaintiff's headquarters are located at 123 Grove Ave, Suite 109,

Cedarhurst, NY 11516.

13.     Defendant Adin is an Israeli corporation located at Industrial Zone Alon Tavor,

POB 1128, Afula 191101, Israel.

14.     Defendant Adin USA Newco is a New Jersey corporation located in Bergen

County, New Jersey.

15.     Defendant Danzer is an individual residing, upon information and belief, at 24

Hallberg Avenue, Bergenfield, New Jersey.

<u>**ALLEGATIONS COMMON TO ALL CLAIMS**</u>

A.     <u>Plaintiff Develops, Establishes and Supports a United States Market for Adin's Products</u>

16.     Plaintiff is a distributor of dental implants, accessories and related products within

the United States.

4

17.     Defendant Adin is an Israeli manufacturer of dental implants, accessories and related products.

18.     Prior to 2012, Adin tried, albeit unsuccessfully, to break into the United States market for dental implants.  Entering this market is challenging, time-consuming, and expensive.

19.     Thus, Adin turned to Plaintiff to expend its own time and resources to create, grow and maintain the market for Adin's products in the United States.

20.     Adin and Plaintiff agreed that Plaintiff would serve as Adin's exclusive distributor in the United States, and Adin often referred to Plaintiff as "Adin USA."  Among other things, Plaintiff agreed to establish and maintain a distribution, sales, marketing and technical support system to promote the sale and support of Adin's products in the United States.

21.     To entice Plaintiff to continue to expend its own resources to develop and grow the business, Adin told Plaintiff that it ultimately wished to purchase Plaintiff's business.

22.     Plaintiff incurred substantial expense developing and maintaining the United States market for Adin's products, as well as building the Adin brand in the United States.  Among many other things, Plaintiff invested time and substantial sums in advertising, marketing, trade shows and equipment costs.  Plaintiff established hundreds of business relationships with customers and other industry participants.  Plaintiff built and grew a customer base, and hired a sales force to help increase and expand sales.  Plaintiff also developed and promoted its website (www.adinimplants.com).

23.     Plaintiff kept Adin aware of the extensive effort and expense through which Plaintiff developed the market and built the Adin brand in the United States.  Adin regularly communicated with Plaintiff regarding Plaintiff's business in the United States, as well as Adin's own business.  Adin also attempted throughout their relationship to obtain Plaintiff's confidential

information (including customer information and sales history) without compensation, which Plaintiff refused to provide.

24.     In or about February 2012, Plaintiff hired Defendant Danzer to serve as its National Director of Sales.  Danzer became an Executive Director in or about January 2016. Throughout this period, Danzer became familiar with Plaintiff's business and customers, and he had access to Plaintiff's proprietary customer and sales information.  Danzer also met with Plaintiff's other salepersons and its customers nationwide.

25.     In August 2015, Plaintiff hired Kseniya Shyrokava ("Shyrokava") pursuant to a written agreement to assist with sales of products in Brooklyn, New York.  Shyrokava had no prior industry experience.  Shyrokava was paid a salary and commissions.  While performing services for Plaintiff, Shyrokava learned Plaintiff's confidential and competitively sensitive business information.  The written agreement provided that, if Shyrokava left her employment with Plaintiff, she could not compete with Plaintiff or solicit Plaintiff's customers for a period of twelve months:

> Non-Competition / Non-Solicitation
>
> (a) Employee shall not, for a period of twelve (12) months from the date Employee ceases to be an employee of the Company:
>
> (i) engage, as an officer, director, shareholder, member, manager, owner, partner, joint venture, trustee, or in a managerial capacity, whether as an executive, independent contractor, agent, consultant or advisor, employee, or as a sales representative, in any business selling any products or services offered by the Company at the time of termination of Employee's employment hereunder, anywhere in the United States and in any other country in which the Company does business;
> . . .
> (iii) either directly or indirectly solicit any person or entity that is at that time, or that was, at any time within the twelve (12) months prior to that time, a customer of the Company, for the purpose of soliciting or selling products or services in competition with the Company.

26.     In June 2016, Plaintiff hired John White ("White") pursuant to a written agreement.  White was paid a salary and commissions.  While performing services for Plaintiff, White learned Plaintiff's confidential and competitive business information.  Pursuant to the same language in Shyrokava's agreement, White's agreement provided that, if White left his employment with Plaintiff, he could not compete with Plaintiff or solicit Plaintiff's customers for a period of twelve months.

27.     Both Shyrokava and White learned Plaintiff's proprietary information during the course of their employment with Plaintiff, including the identities of Plaintiff's customers and the pricing offered to those customers.

B.      Adin Attempts to Purchase Plaintiff's Business

28.     Beginning no later than February 2013 and continuing for several years, Adin claimed to be interested in purchasing the business that Plaintiff had built in the United States, including Plaintiff's customers, goodwill, competitive intelligence and other assets.

29.     On numerous occasions, Adin asked for Plaintiff's proprietary business information, including its compilation of customer information and order history.  Plaintiff refused to provide the requested, highly confidential information absent executing a definitive purchase and sale agreement.

30.     The parties never agreed on or executed a purchase and sale agreement, and Adin never provided reasonable terms for the purchase of Plaintiff's business.

C.      After Adin Was Unable to Purchase Plaintiff's Business,
        Adin Steals It with Danzer's Help

31.     Despite its failure to purchase Plaintiff's business, Adin still wanted to acquire Plaintiff's business and the market that Plaintiff established in the United States.

32.     While Danzer was still employed by Plaintiff, Danzer and Adin discussed the possibility of his employment.  At the time, Adin was aware that Danzer had access to Plaintiff's proprietary information, including its compilation of customer information, order history and specific customer sales terms (including pricing).  Because of his unique position with Plaintiff, Danzer had access to such information relating to all of Plaintiff's customers, and not solely those customers to whom Danzer made sales.

33.     Adin and Danzer ultimately agreed to form a new company and target the business that Plaintiff had spent years developing.

34.     Plaintiff was unaware of the discussions between Danzer and Adin at the time, but it noticed that Danzer's work performance deteriorated significantly.  Danzer missed the performance targets he established and he became less communicative with Plaintiff's principals.

35.     Danzer's employment as Executive Director of Plaintiff ceased in late-July 2016. On July 30, 2016, Plaintiff terminated Danzer's access to his work email account by changing the password.

36.     On September 13, 2016, Danzer hacked into the email account he used when he was Plaintiff's employee and Executive Director.  Danzer proceeded to send eighteen (18) emails from his former work email account to his personal email account containing some of Plaintiff's most competitively-sensitive information.

37.     The information stolen by Danzer includes the sales history, account information and contact information for hundreds of Plaintiff's customers located throughout the United States, including customers with whom Danzer had no direct and/or independent relationship. The information stolen by Danzer also includes Plaintiff's sales forecasts, information regarding

sales leads, and Plaintiff's internal notes regarding communications with actual and potential customers.  Plaintiff was not aware of Danzer's theft of information at the time.

38.     All of the information wrongfully taken by Danzer is referred to hereinafter as the "Stolen Information."

39.     Danzer was aware that his access to his old email account was terminated and that he had no permission or authority to access, much less obtain, the Stolen Information.

40.     The Stolen Information includes Plaintiff's trade secrets.

41.     Plaintiff's trade secrets are the result of the significant expenditure of time, money and effort.  Such information is not generally known to the public or to other people who can obtain economic value from its disclosure or use.  The information provides Plaintiff with a significant competitive advantage by, among other things, increasing the likelihood of closing sales and reducing the cost of developing business.  This information is invaluable to someone trying to identify, recruit and service customers interested in the specific dental implant products sold by Plaintiff.  Indeed, Plaintiff's compilation of information would save a competitor millions of dollars and years of business development work.

42.     Plaintiff takes reasonable measures to keep its trade secrets confidential.  The information is only accessible by a select group of Plaintiff's employees who have a "need-to-know" and who have obligations of confidentiality, good faith and/or loyalty to Plaintiff.  Such employees must use specific usernames and passwords to access the information.

43.     On September 14, 2016, the day after Danzer obtained the Stolen Information, Danzer and/or Adin incorporated Adin USA Newco in New Jersey with the intention of using that entity to take away Plaintiff's business using the information wrongfully taken from Plaintiff.

44.     By September 16, 2016, Danzer was hired by Adin and/or Adin USA Newco as the Northeast Director of Sales.  One of Danzer's tasks was to contact Plaintiff's customers and convince them to stop doing business with Plaintiff and to start doing business with Defendants. Danzer used and continues to use the Stolen Information and Plaintiff's other confidential, proprietary and trade secret information for this purpose.  Plaintiff has demanded that Danzer return and/or delete its information information.

45.     Plaintiff and Adin explored another possibility of a purchase and sale agreement in or about November 2016, but it became obvious that Adin was using its hiring of Danzer and its poaching of customers to try to extract concessions from Plaintiff.  During their discussions, Adin told Plaintiff that Adin had already obtained 50% (and growing) of Plaintiff's business and that Plaintiff should sell the business before Adin poached even more of Plaintiff's customers. The purchase price discussed by that time was $1.5 million.  The discussions did not progress and Adin ultimately stopped supplying products to Plaintiff.

46.     Adin and Adin USA Newco also hired Shyrokava and White with Danzer's assistance, despite Danzer's knowledge of the terms of their respective written agreements with Plaintiff.

47.     One of Shyrokava and White's tasks after beginning employment with Adin and Adin USA Newco was to contact Plaintiff's customers and convince them to stop doing business with Plaintiff and to start doing business with Defendants.  This conduct violated the non-competition and non-solicitation provisions in their contracts with Plaintiff.

48.     Plaintiff demanded the return of its confidential, proprietary and trade secret information, including valuable sales history, customer list, pricing information, and other data it developed.  In response to Plaintiff's demands, Shyrokava and White provided Plaintiff with

copies of Plaintiff's confidential information.  Yet they both have continued to utilize the same information to solicit Plaintiff's customers.

49.     In early February 2017, White, on behalf of Adin USA Newco, fulfilled a customer order that was placed with Plaintiff.

50.     By targeting Plaintiff's customers using the valuable sales history, customer list, pricing information, and other data developed by Plaintiff that Adin was unable to acquire in a purchase and sale transaction, Defendants have been using Plaintiff's proprietary business information without authorization and to Plaintiff's detriment.  This information is not readily available to the public or easily obtained.

51.     Additionally, Defendants have put false information into the marketplace in order to improve their competitive position to Plaintiff's detriment.  For example, Adin, Adin USA Newco, and Danzer verbally and falsely informed Plaintiff's customers and business contacts that Plaintiff is no longer in business.  To the contrary, Plaintiff remains in business and continues to sell dental implants and related products.

52.     On or before March 21, 2017, Adin and Adin USA Newco – through their President Eyal Milman and Senior Vice President Ami Hantman – verbally and falsely informed Business Contact 1[1] located in California that Adin had purchased Plaintiff.

53.     Defendants have also misled customers by telling them that nothing has changed with respect to the seller or support provider of the products when, in fact, Danzer, Shyrokava and White are selling on behalf of Adin and Adin USA Newco rather than on behalf of Plaintiff. Further, Shyrokava and White's LinkedIn profiles are designed to give the false impression that

---

[1] Plaintiff will identify Business Contact 1, Customer 1 and Customer 2 to Defendants.

they have been continuously employed by the same company throughout the relevant time period.

54.     In late 2016, Danzer verbally and falsely informed Customer 1 located in New York that Plaintiff was out of business, causing Customer 1 not to pay Plaintiff approximately $17,000 for goods sold and services rendered.  Customer 1 refuses to pay Plaintiff and is doing business with Defendants.

55.     On or before February 7, 2017, Danzer verbally and falsely told Customer 2 located in New Jersey that Plaintiff is no longer in the business of selling dental implants.

56.     Upon information and belief, Defendants have made similar misrepresentations to these and a material portion of the customers within the marketplace in an attempt to obtain Plaintiff's business.  Defendants have knowingly and deliberately taken many of Plaintiff's customers.

57.     Defendants have confused and misled other customers.  According to a former customer of Plaintiff, Adin manufactured thousands of dollars of defective dental implant products which Defendants sold to the customer.  However, due to the confusion caused by Defendants at the point of sale, the customer mistakenly thought it purchased the products from Plaintiff and threatened legal action if it does not receive a refund from Plaintiff.

58.     In March 2017, Adin represented to Plaintiff that Plaintiff constituted about 5-8% of Adin's business, which Adin claimed was worth a total of $300,000,000.  Thus, based on Adin's own analysis, Plaintiff's business was worth approximately $15,000,000 to $24,000,000 to it.  Rather than pay that amount or anything close to it, Defendants simply stole Plaintiff's business.

59.     As a result of Defendants' theft and use of Plaintiff's confidential, proprietary and trade secret information, including the Stolen Information, as well as Defendants' unfair competition, defamatory statements and other wrongful conduct, Plaintiff has lost customers and customer orders.  In particular, to date, Defendants' conduct has caused Plaintiff to lose approximately $150,000 per month in sales.  Further, but for Defendants' conduct, Plaintiff's business would have continued its growth trajectory.  Plaintiff has also been forced to layoff employees due to Defendants' wrongful conduct.

## FIRST CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Federal Misappropriation of Trade Secrets
### Under 18 U.S.C. § 1836 *et seq.*

60.     Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

61.     Defendants have and are engaged in acts of misappropriation in violation of the Defend Trade Secrets Act.

62.     Plaintiff possesses confidential information, including financial and business information such as compilations, methods and techniques, which constitute trade secrets.  Such information includes, for example, customer lists, sales history, sales forecasts, information regarding sales leads, and internal notes regarding communications with actual and potential customers.

63.     Plaintiff's trade secrets relate to products and services that are used in or intended for use in interstate or foreign commerce.  For example, Plaintiff sells its products and services to customers located throughout the United States.

64.     Plaintiff takes reasonable measures to maintain the secrecy and confidentiality of its trade secrets.  The information is only accessible by a select group of Plaintiff's employees

who have a "need-to-know" and who have obligations of confidentiality, good faith and/or loyalty to Plaintiff.  Such employees must use specific usernames and passwords to access the information.

65.     Plaintiff's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, others who can obtain economic value from the disclosure or use of such information.

66.     Danzer's employment as Executive Director of Plaintiff ceased in late-July 2016. On July 30, 2016, Plaintiff terminated Danzer's access to his work email account by changing the password.

67.     On September 13, 2016, Danzer hacked into the email account he used when he was Plaintiff's employee and Executive Director.  Danzer then sent the Stolen Information in 18 emails from his former work email account to his personal email account.  Danzer was aware that his access to his old email account was terminated and that he had no permission or authority to access, much less obtain, the Stolen Information.

68.     The Stolen Information includes Plaintiff's trade secrets.

69.     Adin and Adin USA knew or had reason to know that Plaintiff's trade secrets were obtained through improper means.

70.     Defendants have used, and continue to use, Plaintiff's trade secrets to obtain business for themselves.  Adin has even boasted to Plaintiff how much business it has been able to take away from Plaintiff with the assistance of Danzer and Plaintiff's other former employees.

71.     Defendants' conduct constitutes knowing, willful, and malicious misappropriation.

72.     As a result of Defendants' violations of the Defend Trade Secrets Act, Plaintiff is entitled to recover actual damages, any unjust enrichment realized by Defendants, and any other damages permitted under the Act.

73.     Plaintiff is also entitled to exemplary damages under 18 U.S.C. § 1836(b)(3)(C) because Defendants willfully and maliciously misappropriated Plaitniff's trade secrets.  The amount of exemplary damages sought by Plaintiff is two times the amount of damages awarded to Plaintiff under 18 U.S.C. § 1836(b)(3)(B).

74.     Plaintiff is also entitled to recover its reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D) because Defendants willfully and maliciously misappropriated Plaintiff's trade secrets.

## SECOND CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)
### New York Misappropriation of Trade Secrets

75.     Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

76.     Plaintiff possesses confidential information, including financial and business information such as compilations, methods and techniques, which constitute trade secrets.  Such information includes, for example, customer lists, sales history, sales forecasts, information regarding sales leads, and internal notes regarding communications with actual and potential customers.

77.     Plaintiff's trade secrets were developed through great effort and expense in terms of manpower, time, and costs.  Such information is not generally known to the public or to other people who can obtain economic value from its disclosure or use.

78.     Plaintiff's trade secrets provide it with a significant competitive advantage by, among other things, increasing the likelihood of closing sales and reducing the cost of developing business.  This information is invaluable to someone trying to identify, recruit and service customers interested in the specific dental implant products sold by Plaintiff.  Indeed, Plaintiff's compilation of information would save a competitor millions of dollars and years of business development work.

79.     Plaintiff takes reasonable measures to keep its trade secrets confidential.  The information is only accessible by a select group of Plaintiff's employees who have a "need-to-know" and who have obligations of confidentiality, good faith and/or loyalty to Plaintiff.  Such employees must use specific usernames and passwords to access the information.

80.     On September 13, 2016, Danzer hacked into the email account he used when he was Plaintiff's employee and Executive Director.  Danzer then sent the Stolen Information in 18 emails from his former work email account to his personal email account.  Danzer was aware that his access to his old email account was terminated and that he had no permission or authority to access, much less obtain, the Stolen Information.

81.     The Stolen Information includes Plaintiff's trade secrets.

82.     Adin and Adin USA knew or had reason to know that Plaintiff's trade secrets were obtained through improper means.

83.     Defendants have used, and continue to use, Plaintiff's trade secrets to obtain business for themselves.  Adin has even boasted to Plaintiff how much business it has been able to take away from Plaintiff with the assistance of Danzer and Plaintiff's other former employees.

84.     Defendants' conduct constitutes knowing, willful, and malicious misappropriation.

16

85.     As a result of Defendants' wrongful conduct, Plaintiff has sustained and is likely to continue to sustain damages in an amount to be determined at trial of no less than $2,000,000.

86.     Plaintiff is also entitled to exemplary and punitive damages by reason of Defendants' willful, reckless, deliberate, and intentional conduct.

## THIRD CLAIM FOR RELIEF (AGAINST DANZER)

### Trespass to Chattels

87.     Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

88.     Plaintiff has rightful ownership and right of possession over its confidential and proprietary business information, including the Stolen Information.

89.     Danzer intentionally and substantially interfered with Plaintiff's right to the exclusive use and possession of its confidential and proprietary business information, including by way of his theft and ongoing wrongful possession of such information.

90.     Plaintiff was deprived of its right to the exclusive use and possession of its confidential and proprietary business information, including the Stolen Information.

91.     Danzer's tortious conduct with respect to Plaintiff's confidential and proprietary business information has resulted in injury to Plaintiff.

92.     Danzer's tortious conduct was not privileged or excused.

93.     As a result of Defendants' wrongful conduct, Plaintiff has sustained and is likely to continue to sustain damages in an amount to be determined at trial of no less than $2,000,000.

94.     Plaintiff is also entitled to punitive damages by reason of Defendants' willful, reckless, deliberate, and intentional conduct.

## FOURTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Unjust Enrichment

95.     Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

96.     Defendants have been enriched by obtaining Plaintiff's confidential, proprietary and trade secret information, including the Stolen Information.  This enrichment has occurred to the detriment of Plaintiff, which incurred substantial time and expense developing such information.

97.     Defendants' enrichment was unjust because they stole the information from Plaintiff or otherwise obtained it unlawfully by, among other things, luring away key employees of Plaintiff who retained possession of the information for the purpose of competing with Plaintiff.

98.     As a result of Defendants' wrongful conduct, Plaintiff has sustained and is likely to continue to sustain damages in an amount to be determined at trial of no less than $2,000,000. Plaintiff is also entitled to recover from Defendants all gains, profits, savings and advantages realized by Defendants from their wrongful conduct.

## FIFTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Federal Unfair Competition and False Advertising
### Under 15 U.S.C. § 1125(a)

99.     Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

100.    Defendants have and are engaged in acts of unfair competition through the use of false and misleading representations of fact and false advertising in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

101.    Defendants' acts of unfair competition have been done willfully and deliberately.

102.    Defendants' acts have caused and are likely to cause confusion, deception and mistake by creating false and misleading impressions.  Defendants have misinformed some customers that Plaintiff is out of business and misinformed other customers that nothing has changed with respect to the seller or support provider of the products they purchased.

103.    As a result, customers are confused who they are doing business with.  A fomer customer of Plaintiff purchased from Defendants thousands of dollars of defective products manufacturerd by Adin.  The customer mistakenly thought it purchased the products from Plaintiff and threatened legal action if it did not receive a refund from Plaintiff.

104.    Defendants' violations of 15 U.S.C. § 1125(a) entitle Plaintiff to recover damages, including but not limited to, disgorgement of profits, loss of business, corrective advertising damages, litigation costs, and attorneys' fees.

105.    Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and Plaintiff in an amount to be determined at trial of no less than $2,000,000.

## SIXTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### New York Unfair Competition

106.    Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

107.    As described above, Defendants have engaged in false and misleading representations and/or omissions and engaged in deceptive conduct.

108.    Defendants' conduct deceived or is likely to deceive Plaintiff's customers and potential customers, and was and is likely to affect such customers.

109.     Defendants have misappropriated confidential information from Plaintiff and utilized their intimate knowledge of Plaintiff's business, customers, and customer sales histories to unfairly compete with Plaintiff and solicit Plaintiff's customers.

110.     Defendants have engaged in unfair competition under the common law of the State of New York.

111.     As a result of Defendants' wrongful conduct, Plaintiff has sustained and is likely to continue to sustain damages in an amount to be determined at trial of no less than $2,000,000.

112.     Plaintiff is also entitled to exemplary and punitive damages by reason of Defendants' willful, reckless, deliberate, and intentional conduct.

## SEVENTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Defamation *Per Se*

113.     Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

114.     Defendants made statements to third parties about Plaintiff which were false.

115.     Defendants knew such false statements would likely result in material and substantial harm to Plaintiff and its business.

116.     Defendants' false statements imputes to Plaintiff conduct, characteristics, and/or conditions incompatible with the proper exercise of Plaintiff's lawful business and/or trade.

117.     Plaintiff's reputation has been harmed by the aforesaid false statements, causing Plaintiff to sustain damages in an amount to be determined at trial of no less than $75,000.

118.     Defendants are therefore liable for the tort of defamation *per se* against Plaintiff.

119.     Plaintiff is also entitled to exemplary and punitive damages by reason of Defendants' willful, reckless, deliberate, and intentional conduct.

## EIGHTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Tortious Interference with Contract

120.   Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

121.   Binding contracts existed between Plaintiff and Shyrokava and between Plaintiff and White.

122.   Through Danzer, Defendants were aware of the contracts Plaintiff had with Shyrokava and White.

123.   Defendants intentionally induced Shyrokava and White to breach their contractual obligations by obtaining employment with Adin and/or Adin USA Newco, employing them to solicit Plaintiff's customers, and utilizing Plaintiff's confidential and protected information.

124.   There was no legal justification for Defendants' actions.

125.   As a result of the breach, Plaintiff has incurred damages, which include, but are not limited to, pecuniary losses and harms to Plaintiff's customer relationships in an amount to be determined at trial of no less than $2,000,000.

126.   Defendants are therefore liable for the tort of tortious interference with a contract.

127.   Plaintiff is also entitled to exemplary and punitive damages by reason of Defendants' willful, reckless, deliberate, and intentional conduct.

## NINTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Tortious Interference with Prospective Business Relationships

128.   Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

129.    Plaintiff had ongoing business relationships with many customers in the United States pursuant to which those customers would purchase dental implants, accessories, and related products from Plaintiff, of which Defendants were aware.

130.    Defendants were also aware of the contracts Plaintiff had with Shyrokava and White, which precluded them from competing with Plaintiff or soliciting Plaintiff's customers.

131.    Defendants made misrepresentations to Plaintiff's customers and caused Shyrokava and White to compete with Plaintiff and solicit those customers in breach of their contracts with Plaintiff.

132.    Defendants' misconduct caused Plaintiff to lose its business relationships with those customers.

133.    There was no legal justification for Defendants' actions.

134.    As a result of this conduct, Plaintiff has incurred damages, which include, but are not limited to, pecuniary losses and harms to Plaintiff's customer relationships in an amount to be determined at trial of no less than $2,000,000.

135.    Defendants are therefore liable for the tort of tortious interference with prospective business relationships.

136.    Plaintiff is also entitled to exemplary and punitive damages by reason of Defendants' willful, reckless, deliberate, and intentional conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment for Plaintiff and against Defendants as follows:

(A)   That Plaintiff is entitled to compensatory damages in an amount to be determined at trial, including pre-judgment and post-judgment interest;

(B)   That Plaintiff is entitled to all gains, profits, savings and advantages realized by Defendants from their wrongful conduct;

(C)   That Plaintiff is entitled to exemplary, punitive and enhanced damages;

(D)   That Plaintiff is entitled to reasonable attorneys' fees, costs and expenses; and

(E)   That Plaintiff is entitled to such additional and further relief as the Court may deem proper and just.

**JURY TRIAL DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all issues so triable.

Dated: July 12, 2017
New York, New York

STORCH AMINI PC


By:  s/ Jason Levin
    Bijan Amini
    Jason Levin
Two Grand Central Tower, 25th Floor
140 East 45th Street
New York, NY  10017
(212) 490-4100
*Attorneys for Plaintiff*