Gregory K. Mueller, Esq.
Mueller Law Group
19 Engle Street
Tenafly, NJ  07670
Tel: (201) 567-4969
Fax: (201) 567-4793

Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs Adin Dental Implant Systems, Inc., Adin Dental Solutions USA, Inc., and Jeremy Danzer

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHETEL INDUSTRIES LLC, <br><br> Plaintiff, <br><br> vs. <br><br> ADIN DENTAL IMPLANT SYSTEMS, INC., ADIN DENTAL SOLUTIONS USA, INC., and JEREMY DANZER, <br><br> Defendants. | Case No.: 2:17-cv-02505-LDW-ARL <br><br> **THE ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, THIRD PARTY COMPLAINT and DEMAND FOR JURY TRIAL of ADIN DENTAL IMPLANT SYSTEMS, INC., ADIN DENTAL SOLUTIONS USA, INC., and JEREMY DANZER** |
| ADIN DENTAL IMPLANT SYSTEMS, INC. AND ADIN DENTAL SOLUTIONS USA, INC., and JEREMY DANZER, <br><br> Counterclaimants and Third-Party Plaintiffs, <br><br> vs. <br><br> SHETEL INDUSTRIES LLC, OSSEOGROUP LLC, and MARKUS WEITZ as Director and President of SHETEL INDUSTRIES LLC, and Individually, <br><br> Counterclaim and Third-Party Defendants. | |

-1-

Defendants, Adin Dental Implant Systems, Inc., Adin Dental Solutions USA, Inc., and Jeremy Danzer (hereinafter "Defendants"), as for their Answer to the Amended Complaint (hereinafter the "Amended Complaint"), state as follows:

## NATURE OF ACTION

1.      Defendants admit that Plaintiff purports to bring a cause of action under the laws of the United States and the State of New York, but denies that Plaintiff can maintain such an action or is entitled to relief.

2.      Defendants admit the allegation contained in Paragraph 2 of the Amended Complaint that Adin Dental Implant Systems, Inc. (hereinafter "Adin") engaged Plaintiff to serve as the exclusive distributor of its dental products throughout the United States.  Defendants deny the allegation contained in Paragraph 2 of the Amended Complaint that Plaintiff spent substantial sums developing and growing the sales of the products of Adin.  Defendants admit the allegation contained in Paragraph 2 of the Amended Complaint that when Plaintiff and Adin first engaged in business, Adin had limited sales or business activity "here" (presuming same to be the United States' market, as alleged by Plaintiff in its Amended Complaint).  Defendants aver that Plaintiff and its principal, Markus Weitz, D.D.S. ("Dr. Weitz"), repeatedly promised to provide the time, money, effort, and connections to establish a business marketing, distributing and selling Adin's dental implants (and accessories) throughout the United States, and Plaintiff relied on the representations of Plaintiff and Dr. Weitz to its detriment.  Defendants admit the allegation contained in Paragraph 2 of the Amended Complaint that Adin repeatedly expressed interest in purchasing Plaintiff's business. Defendants aver that Adin first expressed interest in purchasing Plaintiff's business after Plaintiff threatened to and then did shut down its business in 2013.  As a result of Plaintiff's cessation of business in 2013, Adin suffered material harms, including but

-2-

not limited to, the loss of customers, the loss of prospective customers, the loss of sales, and damage to Adin's reputation throughout the United States.  Defendants further aver that Adin's interest in purchasing Plaintiff's business was intended to (in order of importance): (1) encourage Plaintiff to not solicit Adin's customers by, among other things, misrepresenting to customers that Adin was abandoning the United States' market; (2) prevent Plaintiff from harming Adin's good will and reputation; (3) encouraging Plaintiff to help increase the sales of Adin's products; and (4) preventing any damage to the services provided by Adin.  Defendants deny the allegation contained in Paragraph 2 of the Amended Complaint that Adin "tried to obtain Plaintiff's proprietary information, including its customer list and sales history".  Defendants admit the allegation contained in Paragraph 2 of the Amended Complaint that Plaintiff refused to provide Adin the information and aver that Adin requested the information as it was necessary for Adin to value the purchase of Plaintiff's business.  Defendants admit the allegation contained in Paragraph 2 of the Amended Complaint that Adin eventually hired Mr. Danzer.  Defendants deny the allegation contained in Paragraph 2 of the Amended Complaint that Adin hired Mr. Danzer "to assist it in acquiring the distribution network Plaintiff created without compensating Plaintiff".

3.      Defendants deny the allegations contained in Paragraph 3 of the Amended Complaint.

4.      Defendants admit the allegation contained in Paragraph 4 of the Amended Complaint that Adin USA was incorporated on or around September 14, 2016.  Defendants also admit the allegation contained in Paragraph 4 of the Amended Complaint that Adin hired Mr. Danzer.  Defendants deny the remainder of the allegations contained in Paragraph 4 of the Amended Complaint.

5.     The allegations contained in Paragraph 5 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter.

## JURISDICTION AND VENUE

6.     The allegations contained in Paragraph 6 of the Amended Complaint are legal conclusions to which no response is necessary.  To the extent that a response is required, Defendants admit that Plaintiff purports to invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331.  Defendants deny that there exists any basis in law or fact for Plaintiff's claims.

7.     The allegations contained in Paragraph 7 of the Amended Complaint are legal conclusions to which no response is necessary.  To the extent that a response is required, Defendants admit that Plaintiff purports to invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331.  Defendants deny that there exists any basis in law or fact for Plaintiff's claims.

8.     The allegations contained in Paragraph 8 of the Amended Complaint set forth a legal conclusion that Defendants are not required to admit or deny.  To the extent a response is required, Defendants admits that Plaintiff purports to invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.  Defendants deny that there exists any basis in law or fact for Plaintiff's claims.

9.     The allegations contained in Paragraph 9 of the Amended Complaint set forth a legal conclusion that Defendants are not required to admit or deny.  To the extent a response is required, Defendants admit that Plaintiff purports to invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1332.  Defendants deny that there exists any basis in law or fact for Plaintiff's claims and deny that there exists any basis for a damages claim asserted by Plaintiff.

10.     The allegations contained in Paragraph 10 of the Amended Complaint set forth a legal conclusion that Defendants are not required to admit or deny.  To the extent a response is required, Defendants admit that Plaintiff purports to invoke the personal jurisdiction of this Court. Defendants deny the factual allegations in Paragraph 10 of the Amended Complaint and deny that there exists any basis in law or fact for Plaintiff's claims.

11.     The allegations contained in Paragraph 11 of the Amended Complaint set forth a legal conclusion that Defendants are not required to admit or deny.  To the extent a response is required, Defendants admit that Plaintiff purports to invoke that venue in this district is proper pursuant to 28 U.S.C. § 1391.  Defendants deny that there exists any basis in law or fact for Plaintiff's claims.

## PARTIES

12.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Amended Complaint, and deny the allegations on that basis, other than that Defendants admit that Plaintiff is a limited liability company organized and existing under the laws of the State of New York.

13.     Defendants admit the allegations set forth in Paragraph 13 of the Amended Complaint.

14.     Defendants admit the allegations set forth in Paragraph 14 of the Amended Complaint.

15.     Defendants deny the allegations set forth in Paragraph 15 of the Amended Complaint.

## ALLEGATIONS COMMON TO ALL CLAIMS

Point A.

16.     To the extent that the allegations set forth in Paragraph 16 of the Amended Complaint apply to any period before 2010, Defendants deny the allegations.  To the extent that the allegations set forth in Paragraph 16 of the Amended Complaint pertain to the period between 2010 and 2017, Defendants admit the allegations.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Amended Complaint as they apply to the current day, and, therefore, deny same.

17.     Defendants admit the allegations contained in Paragraph 17 of the Amended Complaint.

18.     Defendants deny the allegation contained in Paragraph 18 of the Amended Complaint that "Adin tried, albeit unsuccessfully, to break into the United States' market for dental implants".  Defendants admit the remainder of the allegations set forth in Paragraph 18 of the Amended Complaint.

19.     As to the allegations contained in Paragraph 19 of the Amended Complaint, Defendants aver that Plaintiff offered to expend its own time and resources to create, grow and maintain the market for Adin's products in the United States and Adin accepted same.

20.     Defendants deny the allegation contained in Paragraph 20 of the Amended Complaint that "Adin often referred to Plaintiff as "Adin USA".  Defendants admit the remainder of the allegations contained in Paragraph 20 of the Amended Complaint.

21.     Defendants deny the allegations contained in Paragraph 21 of the Amended Complaint.

-6-

22.     Defendants deny the allegations contained in Paragraph 22 of the Amended Complaint that "Plaintiff incurred substantial expense developing and maintaining the United States' market for Adin's products, as well as building the Adin brand throughout the United States. Among many other things, Plaintiff invested time and substantial sums in advertising, marketing, trade shows and equipment costs."  Defendants admit the allegation contained in Paragraph 22 of the Amended Complaint that Plaintiff hired a sales force, registered the domain name www.adinimplants.com and developed a website using said domain name, but Defendants aver that Plaintiff had agreed to cease using the "Adin" name and any of its trademarks upon termination of the relationship, as detailed herein.  Defendants further aver that Defendants repeatedly requested ownership and custody of the domain name and website and offered Plaintiff payment for same, yet Plaintiff refused.  As to the remainder of the allegations made in Paragraph 22 of the Amended Complaint, Defendants lack knowledge or information sufficient to form a belief as to their truth, and, therefore, deny same.

23.     Defendants deny the allegation contained in Paragraph 23 of the Amended Complaint that Plaintiff kept Adin aware of the extensive effort and expense through which Plaintiff developed the market and built the Adin brand throughout the United States.  Defendants admit the allegation in Paragraph 23 of the Amended Complaint that Adin communicated with Plaintiff.  Defendants deny the remainder of the allegations contained in Paragraph 23 of the Amended Complaint.

24.     Defendants admit the allegations contained in Paragraph 24 of the Amended Complaint and aver that when Mr. Danzer was hired by Plaintiff, he brought his own customer lists and book of business.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 of the Amended Complaint, and, therefore, deny same.

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the Amended Complaint, and, therefore, deny same.

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27 of the Amended Complaint, and, therefore, deny same.

Point B.

28.     Defendants admit the allegations contained in Paragraph 28 of the Amended Complaint and aver that Adin claimed to be interested in purchasing Plaintiff's business after Plaintiff threatened to and did shut down its business in February 2013 as a negotiation tactic. Defendants aver that Adin first expressed interest in purchasing Plaintiff's business after Plaintiff threatened to and then did shut down its business in 2013.  As a result of Plaintiff's cessation of business in 2013, Adin suffered material harms, including but not limited to, the loss of customers, the loss of prospective customers, the loss of sales, and damage to Adin's reputation throughout the United States.  Defendants further aver that Adin's interest in purchasing Plaintiff's business was intended to (in order of importance): (1) encourage Plaintiff to not solicit Adin's customers by, among other things, misrepresenting to customers that Adin was abandoning the United States' market; (2) prevent Plaintiff from harming Adin's good will and reputation; (3) encourage Plaintiff to help increase the sales of Adin's products; and (4) prevent any damage to the services provided by Adin.

29.     Defendants deny the allegations contained in Paragraph 29 of the Amended Complaint.  Defendants aver: a) Plaintiff agreed to report sales to Adin, which would have identified customer information and sales history, but Plaintiff failed repeatedly to provide same;

-8-

b) Plaintiff repeatedly refused to execute definitive distribution agreements with Adin; and c) Adin repeatedly requested information from Plaintiff necessary for it to value the purchase of Plaintiff's business.

30.     Defendants admit the allegation contained in Paragraph 30 of the Amended Complaint that the parties never agreed on or executed a purchase and sale agreement. Defendants deny the remainder of the allegations contained in Paragraph 30 of the Amended Complaint.

Point C.

31.     Defendants admit the allegation contained in Paragraph 31 of the Amended Complaint that Adin and Plaintiff were unable to reach an agreement to purchase Plaintiff's business.  Defendants aver that the purpose of Adin's efforts to purchase Plaintiff's business was to prevent Plaintiff from threatening to terminate its business and shutting down its business to the detriment of Adin's reputation in the United States' market.  Defendants deny the allegation contained in Paragraph 31 of the Amended Complaint that "Adin still wanted to acquire Plaintiff's business and the market that Plaintiff established in the United States".

32.     Defendants deny the allegation contained in Paragraph 32 of the Amended Complaint that "While Danzer was still employed by Plaintiff, Danzer and Adin discussed the possibility of his employment."  Adin and Adin USA deny the allegation contained in Paragraph 32 of the Amended Complaint that "At the time, Adin was aware that Danzer had access to Plaintiff's proprietary information, including its compilation of customer information, order history and specific customer sales terms (including pricing)".  Mr. Danzer lacks knowledge or information sufficient to form a belief as to the truth of the allegation set forth in Paragraph 32 of the Amended Complaint that "At the time, Adin was aware that Danzer had access to Plaintiff's

proprietary information, including its compilation of customer information, order history and specific customer sales terms (including pricing)" and therefore denies same. Mr. Danzer admits the allegation contained in Paragraph 32 of the Amended Complaint that he had access to information related to Plaintiff's customers; Mr. Danzer lacks knowledge or information sufficient to form a belief as to the truth of the allegation set forth in Paragraph 32 of the Amended Complaint that he had access to "all of Plaintiff's customers", and therefore, denies same. Adin and Adin USA aver that while Mr. Danzer was employed by Plaintiff they lacked knowledge or information sufficient to form a belief as to the truth of the allegation set forth in Paragraph 32 of the Amended Complaint that "Because of his unique position with Plaintiff, Danzer had access to such information relating to all of Plaintiff's customers, and not solely those customers to whom Danzer made sales" and therefore deny same.

33.     Defendants deny the allegations contained in Paragraph 33 of the Amended Complaint.

34.     Defendants deny the allegation contained in Paragraph 34 of the Amended Complaint that Mr. Danzer was in discussions with Adin and Adin USA "at the time". Defendants aver that any diminution to Mr. Danzer's sales targets were of no fault of Defendants and Defendants deny the remainder of the allegations contained in Paragraph 34 of the Amended Complaint.

35.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation set forth in Paragraph 35 of the Amended Complaint that "On July 30, 2016, Plaintiff terminated Danzer's access to his work email account by changing the password", and, therefore, deny same. The allegation contained in Paragraph 35 of the Amended Complaint as to when Mr. Danzer's employment with Plaintiff ended states a legal conclusion to which no

response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny said allegation.

36.     Defendants deny the allegations contained in Paragraph 36 of the Amended Complaint.

37.     Defendants deny the allegations contained in Paragraph 37 of the Amended Complaint.

38.     The allegations contained in Paragraph 38 of the Amended Complaint do not contain any assertions of fact but rather state defamatory legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

39.     Defendants deny the allegations contained in Paragraph 39 of the Amended Complaint.

40.     The allegations contained in Paragraph 40 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

41.     Defendants deny the allegation made in Paragraph 41 of the Amended Complaint that "Plaintiff's trade secrets are the result of the significant expenditure of time, money and effort. Such information is not generally known to the public or to other people who can obtain economic value from its disclosure or use" and aver that Mr. Danzer independently developed the

customer lists that Plaintiff appears to be identifying in this paragraph as its "trade secrets". Defendants lack knowledge or information sufficient to form a belief as to the truth of the remainder of allegations set forth in Paragraph 41 of the Amended Complaint, and, therefore, deny same. To the extent that Paragraph 41 of the Amended Complaint pertains to documents and/or information other than the customer lists independently developed by Mr. Danzer, Defendants lack knowledge or information sufficient to form a belief as to their truth, and, therefore, deny same.

42. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 42 of the Amended Complaint, and, therefore, deny same.

43. Defendants admit the allegation contained in Paragraph 43 of the Amended Complaint that Adin USA was incorporated on September 14, 2016. Defendants deny the remainder of the allegations contained in Paragraph 43 of the Amended Complaint.

44. Defendants deny the allegations contained in Paragraph 44 of the Amended Complaint.

45. Defendants admit the allegation contained in Paragraph 45 of the Amended Complaint that Plaintiff and Adin explored another possibility of a purchase and sale agreement in or about November 2016. Defendants further aver that Adin's interest in purchasing Plaintiff's business was intended to (in order of importance): (1) encourage Plaintiff to not solicit Adin's customers by, among other things, misrepresenting to customers that Adin was abandoning the United States' market; (2) prevent Plaintiff from harming Adin's good will and reputation; (3) encouraging Plaintiff to help increase the sales of Adin's products; and (4) preventing any damage to the services provided by Adin. Defendants also admit the allegation contained in Paragraph

45 of the Amended Complaint that discussions did not progress.  Defendants deny the remainder of the allegations contained in Paragraph 45 of the Amended Complaint.

46.    Defendants admit the allegation contained in Paragraph 46 of the Amended Complaint that they were aware that Mr. White and Ms. Shyrokava had been parties to contracts with Plaintiff.  Defendants further admit that Mr. White and Ms. Shyrokava were hired.  Adin avers that during negotiations for the sale of Plaintiff's business, Plaintiff characterized Mr. White's employment contract as being a burden, and sought for Adin to either assume Mr. White's employment contract or to otherwise hire Mr. White as part of any purchase agreement between Plaintiff and Adin.  The remainder of the allegations contained in Paragraph 46 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

47.    Defendant deny the allegation contained in Paragraph 47 that, "One of Shyrokava and White's tasks after beginning employment with Adin and Adin USA Newco was to contact Plaintiff's customers and convince them to stop doing business with Plaintiff and to start doing business with Defendants."  The remainder of the allegations contained in Paragraph 47 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny the remainder of these allegations.

48.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48 of the Amended Complaint, and, therefore, deny same.

49.     Defendants deny the allegations contained in Paragraph 49 of the Amended Complaint.

50.     Defendants deny the allegations contained in Paragraph 50 of the Amended Complaint.

51.     Defendants deny the allegations contained in Paragraph 51 of the Amended Complaint.

52.     Defendants deny the allegations contained in Paragraph 52 of the Amended Complaint.

53.     Defendants deny the allegations contained in Paragraph 53 of the Amended Complaint.

54.     Defendants deny the allegations contained in Paragraph 54 of the Amended Complaint.

55.     Defendants deny the allegations contained in Paragraph 55 of the Amended Complaint.

56.     Defendants deny the allegations contained in Paragraph 56 of the Amended Complaint.

57.     Defendants deny the allegations contained in Paragraph 57 of the Amended Complaint.

58.     Defendants deny the allegations contained in Paragraph 58 of the Amended Complaint.

59.     Defendants deny the allegations contained in Paragraph 59 of the Amended Complaint.

## FIRST CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)
Federal Misappropriation of Trade Secrets Under 18 U.S.C. § 1836 *et seq.*

Defendants repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint as if set forth at length herein.

60.     Defendants deny the allegations contained in Paragraph 60 of the Amended Complaint.

61.     Defendants deny the allegations contained in Paragraph 61 of the Amended Complaint.

62.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 62 of the Amended Complaint, and, therefore, deny same.

63.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 63 of the Amended Complaint, and, therefore, deny same.

64.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 64 of the Amended Complaint, and, therefore, deny same.

65.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 65 of the Amended Complaint, and, therefore, deny same.

66.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation set forth in Paragraph 66 of the Amended Complaint that on July 30, 2016, "Plaintiff terminated Danzer's access to his work email account by changing the password", and, therefore, deny same.  The allegation contained in Paragraph 66 of the Amended Complaint as to when Mr. Danzer's employment with Plaintiff ended state a legal conclusion to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny said allegation.  Defendants lack knowledge or information sufficient to form a

-15-

belief as to the truth of the allegation set forth in Paragraph 66 of the Amended Complaint that "On July 30, 2016, Plaintiff terminated Danzer's access to his work email account by changing the password", and, therefore, deny same.

67.      Mr. Danzer denies the allegations contained in Paragraph 67 of the Amended Complaint.  Defendants Adin and Adin USA lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 67 of the Amended Complaint, and, therefore, deny same.

68.      Mr. Danzer denies the allegations contained in Paragraph 68 of the Amended Complaint.  Defendants Adin and Adin USA lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 68 of the Amended Complaint, and, therefore, deny same.

69.      Defendants deny the allegations contained in Paragraph 69 of the Amended Complaint.

70.      Defendants deny the allegations contained in Paragraph 70 of the Amended Complaint.

71.      The allegations contained in Paragraph 71 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

72.      The allegations contained in Paragraph 72 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs

and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

73.     The allegations contained in Paragraph 73 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

74.     The allegations contained in Paragraph 74 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

## SECOND CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)
New York Misappropriation of Trade Secrets

Defendants repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint as if set forth at length herein.

75.     Defendants deny the allegations contained in Paragraph 75 of the Amended Complaint.

76.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 76 of the Amended Complaint, and, therefore, deny same.

77.     Defendants deny the allegation made in Paragraph 77 of the Amended Complaint that "Plaintiff's trade secrets were developed through great effort and expense in terms of manpower, time, and costs" and aver that Mr. Danzer independently developed the customer lists that Plaintiff appears to be identifying in this paragraph as its "trade secrets". To the extent that

-17-

Paragraph 77 of the Amended Complaint pertains to the customer lists developed by Mr. Danzer, Defendants admit the allegation that "Such information is not generally known to the public or to other people who can obtain economic value from its disclosure or use".

78.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 78 of the Amended Complaint, and, therefore, deny same.

79.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 79 of the Amended Complaint, and, therefore, deny same.

80.     Mr. Danzer denies the allegations contained in Paragraph 80 of the Amended Complaint.  Defendants Adin and Adin USA lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 80 of the Amended Complaint, and, therefore, deny same.

81.     Mr. Danzer denies the allegations contained in Paragraph 81 of the Amended Complaint.  Defendants Adin and Adin USA lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 81 of the Amended Complaint, and, therefore, deny same.

82.     Defendants deny the allegations contained in Paragraph 82 of the Amended Complaint.

83.     Defendants deny the allegations contained in Paragraph 83 of the Amended Complaint.

84.     The allegations contained in Paragraph 84 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs

and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

85.     Defendants deny the allegations contained in Paragraph 85 of the Amended Complaint.

86.     The allegations contained in Paragraph 86 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

**THIRD CLAIM FOR RELIEF (AGAINST Mr. DANZER)**
Trespass to Chattels

Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint as if set forth at length herein.

87.     Mr. Danzer denies the allegations contained in Paragraph 87 of the Amended Complaint.

88.     The allegations contained in Paragraph 88 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Mr. Danzer can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Mr. Danzer denies these allegations.

89.     Mr. Danzer denies the allegations contained in Paragraph 89 of the Amended Complaint.

90.     Mr. Danzer denies the allegations contained in Paragraph 90 of the Amended Complaint.

91.     Mr. Danzer denies the allegations contained in Paragraph 91 of the Amended Complaint.

92.     The allegations contained in Paragraph 92 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Mr. Danzer denies these allegations.

93.     Mr. Danzer denies the allegations contained in Paragraph 93 of the Amended Complaint.

94.     The allegations contained in Paragraph 94 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Mr. Danzer can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Mr. Danzer denies these allegations.

**FOURTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**
Unjust Enrichment

Defendants repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint as if set forth at length herein.

95.     Defendants deny the allegations contained in Paragraph 95 of the Amended Complaint.

96.     Defendants deny the allegations contained in Paragraph 96 of the Amended Complaint.

97.     Defendants deny the allegations contained in Paragraph 97 of the Amended Complaint.

98.     Defendants deny the allegations contained in Paragraph 98 of the Amended Complaint.

### **FIFTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**
Federal Unfair Competition and False Advertising Under 15 U.S.C. § 1125(a)

Defendants repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint as if set forth at length herein.

99.     Defendants deny the allegations contained in Paragraph 99 of the Amended Complaint.

100.     The allegations contained in Paragraph 100 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

101.     The allegations contained in Paragraph 101 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

102.     Defendants deny the allegations contained in Paragraph 102 of the Amended Complaint.

103.     Defendants admit the allegation contained in Paragraph 103 of the Amended Complaint that customers are confused who they are doing business with; however, Defendants aver that said confusion is solely attributable to the acts and omissions of Plaintiff and the Third-Party Defendants.  Defendants lack knowledge or information sufficient to form a belief as to the

truth of the remainder of the allegations set forth in Paragraph 103 of the Amended Complaint, and, therefore, deny same.

104.     Defendants deny the allegations contained in Paragraph 104 of the Amended Complaint.

105.     Defendants deny the allegations contained in Paragraph 105 of the Amended Complaint.

## SIXTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)
New York Unfair Competition

Defendants repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint as if set forth at length herein.

106.     Defendants deny the allegations contained in Paragraph 106 of the Amended Complaint.

107.     Defendants deny the allegations contained in Paragraph 107 of the Amended Complaint.

108.     Defendants deny the allegations contained in Paragraph 108 of the Amended Complaint.

109.     Defendants deny the allegations contained in Paragraph 109 of the Amended Complaint.

110.     Defendants deny the allegations contained in Paragraph 110 of the Amended Complaint.

111.     Defendants deny the allegations contained in Paragraph 111 of the Amended Complaint.

112.     The allegations contained in Paragraph 112 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required,

and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny these allegations.

## **SEVENTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**
### Defamation Per Se

Defendants repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint as if set forth at length herein.

113.    Defendants deny the allegations contained in Paragraph 113 of the Amended Complaint.

114.    Defendants deny the allegations contained in Paragraph 114 of the Amended Complaint.

115.    Defendants deny the allegations contained in Paragraph 115 of the Amended Complaint.

116.    Defendants deny the allegations contained in Paragraph 116 of the Amended Complaint.

117.    Defendants deny the allegations contained in Paragraph 117 of the Amended Complaint.

118.    The allegations contained in Paragraph 118 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny the allegations contained in Paragraph 118 of the Amended Complaint.

119.    The allegations contained in Paragraph 119 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required,

and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny the allegations contained in Paragraph 119 of the Amended Complaint.

## EIGHTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)
Tortious Interference with Contract

Defendants repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint as if set forth at length herein.

120.     Defendants deny the allegations contained in Paragraph 120 of the Amended Complaint.

121.     The allegations contained in Paragraph 121 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny the allegations contained in Paragraph 121 of the Amended Complaint.

122.     Defendants admit the allegation contained in Paragraph 122 of the Amended Complaint that they were aware that Mr. White and Ms. Shyrokava had been parties to contracts with Plaintiff.  Adin avers that during negotiations for the sale of Plaintiff's business, Plaintiff characterized Mr. White's employment contract as being a burden, and sought for Adin to either assume Mr. White's employment contract or to otherwise hire Mr. White as part of any purchase agreement between Plaintiff and Adin.  The remainder of the allegations contained in Paragraph 122 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the

extent that an answer may be required, Defendants deny the remainder of the allegations contained in Paragraph 122.

123.    Defendants deny the allegations contained in Paragraph 123 of the Amended Complaint.

124.    The allegations contained in Paragraph 124 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny the allegations contained in Paragraph 124 of the Amended Complaint.

125.    Defendants deny the allegations contained in Paragraph 125 of the Amended Complaint.

126.    The allegations contained in Paragraph 126 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny the allegations contained in Paragraph 126 of the Amended Complaint.

127.    The allegations contained in Paragraph 127 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny the allegations contained in Paragraph 127 of the Amended Complaint.

**NINTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**
Tortious Interference with Prospective Business Relationships

Defendants repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint as if set forth at length herein.

128.    Defendants deny the allegations contained in Paragraph 128 of the Amended Complaint.

129.    The allegations contained in Paragraph 129 of the Amended Complaint are vague, ambiguous, and lack sufficient specificity.  To the extent that a response is required, Defendants admit the allegation contained in Paragraph 129 of the Amended Complaint that Plaintiff sold Adin's products to customers.  Defendants deny the remainder of the allegations.

130.    Defendants deny the allegations contained in Paragraph 130 of the Amended Complaint.

131.    Defendants deny the allegations contained in Paragraph 131 of the Amended Complaint.

132.    Defendants deny the allegations contained in Paragraph 132 of the Amended Complaint.

133.    The allegations contained in Paragraph 133 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny the allegations contained in Paragraph 133 of the Amended Complaint.

134.    Defendants deny the allegations contained in Paragraph 134 of the Amended Complaint.

135.     The allegations contained in Paragraph 135 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny the allegations contained in Paragraph 135 of the Amended Complaint.

136.     The allegations contained in Paragraph 136 of the Amended Complaint do not contain any assertions of fact but rather state legal conclusions to which no response is required, and Defendants can thus neither admit nor deny same, but rather must leave Plaintiff to its proofs and argument in this matter; however, to the extent that an answer may be required, Defendants deny the allegations contained in Paragraph 136 of the Amended Complaint.


All allegations not specifically admitted are specifically denied.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, Defendants demand judgment against Plaintiff as follows:

(a)  dismissing the Amended Complaint in its entirety, with prejudice;

(b)  dismiss each or any count of the Amended Complaint with prejudice;

(c)  awarding Defendants all attorneys' fees and expenses, professional fees and expenses, and costs including without limitation statutory costs and attorneys' fees pursuant to 17 U.S.C. § 505 and 18 U.S.C. § 1836(b)(3)(D), in connection with the defense of this action; and

(d)  granting any such other and further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Each and every asserted in the Amended Complaint are barred, because Plaintiff fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable Statute of Limitations, because the claims in whole or in part, predate the applicable statutory period of limitations.

### THIRD AFFIRMATIVE DEFENSE

Some or all of the purported claims in the Amended Complaint are barred because the time for which compensation is sought is *de minimis*, and therefore not compensable.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of waiver, estoppel, and/or laches.

### FIFTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred by accord and satisfaction, off-set, settlement, and/or payment and release.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff has failed, refused, and/or neglected to mitigate or avoid the damages complained of in Plaintiff's Amended Complaint, if any.

SEVENTH AFFIRMATIVE DEFENSE

Any damages suffered by Plaintiff were proximately caused by its own conduct and not the conduct of Defendants.

EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by fraud.

NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in accordance with the doctrine of unclean hands.

TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are frivolous and Defendants are entitled to an award of damages, including but not necessarily limited to, attorneys' fees and costs incurred in the defense of this action.

ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to exemplified/punitive damages as Defendants did not act or fail to act in a manner sufficient to give rise to punitive/liquidated damages liability.

TWELFTH AFFIRMATIVE DEFENSE

Defendants' conduct was not deliberate, willful, malicious or fraudulent.

THIRTEENTH AFFIRMATIVE DEFENSE

Defendants have acted in good faith at all relevant times alleged in the Amended Complaint.

-29-

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any infringement, if any, was innocent.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff, and/or the persons and/or entities acting on Plaintiff's behalf, assumed the risk of all conduct of Plaintiff or its agents.

## SIXTEENTH AFFIRMATIVE DEFENSE

Any obligations owed by Defendants under any alleged contract were excused by Plaintiff's breach of the alleged contract.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the statute of frauds.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because there was never a meeting of the minds between Plaintiff and Defendants.

## NINETEENTH AFFIRMATIVE DEFENSE

The agreements at issue has been substantially and/or partially performed by Defendants and as such, is subject to divisibility.

## TWENTIETH AFFIRMATIVE DEFENSE

None of the alleged defamatory statements were published to any third party.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were caused by the acts of Plaintiff, Plaintiff's agents, and/or a failure of its own agents to properly show and sell Defendants' products, including disparaging Defendants' products to customers.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Defendants' defenses to Plaintiff's claims have been prejudiced by Plaintiff's spoliation of evidence.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Without admitting that the Amended Complaint states a claim, Plaintiff has not suffered any loss or damage of any kind or character as a result of Defendants' conduct or any failure to act by any Defendant.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

The alleged defamatory and/or other alleged denigrating statements are true.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of independent creation.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of innocent intent.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of *de minimis* use.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent they are based on alleged obligations of Defendants that are contrary to or absent from the written agreements between Plaintiff and any of the Defendants.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, because Plaintiff cannot identify protectable, confidential, proprietary interest, or trade secret.

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, because Plaintiff failed to take reasonable precautions to protect disclosure of any alleged trade secret.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, because any recovery would constitute unjust enrichment.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred due to violation of public policy.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Defendants did not violate any legal duty owed to Plaintiff.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or reduced because Plaintiff breached the implied covenant of good faith and fair dealing.

<u>THIRTY-FIFTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims are unenforceable because the agreement was not fully integrated.

<u>THIRTY-SIXTH AFFIRMATIVE DEFENSE</u>

The alleged agreements between the parties are unclear and lead to a mistake, either severally or mutually, in their interpretations.   Thus, Plaintiff's claims are unenforceable by reason of mistake, either severally or mutually.

Defendants reserve the right to raise additional separate defense, the existence of which may arise out of the discovery in this action.

## **COUNTERCLAIMS**

Defendants/Counterclaimants Adin Dental Implant Systems, Inc. ("Adin"), Adin Dental Solutions USA, Inc. ("Adin USA"), and Jeremy Danzer ("Mr. Danzer") by and through their attorneys Mueller Law Group, by way of Counterclaims against Plaintiff/Counterclaim Defendant Shetel Industries LLC ("Plaintiff"), allege as follows:

A.   <u>THE PARTIES</u>

1.        Defendant/Counterclaimant Adin is an Israeli corporation located at Industrial Zone Alon Tavor, POB 1128, Afula 1811101, Israel.

2.        Defendant/Counterclaimant Adin USA is a corporation organized and existing under the laws of the State of New Jersey.

3.        Defendant/Counterclaimant Jeremy Danzer resides at 1070 Allessandrini Avenue, New Milford, New Jersey 07646.

4.      Plaintiff is a is a limited liability company organized and existing under the laws of the State of New York.

5.      Plaintiff was initially incorporated on or around May 12, 2011.

6.      Under information and belief, Plaintiff is, and at all times alleged was, organized by individual third-party defendant, Markus Weitz, D.D.S. ("Dr. Weitz"), as his alter ego because a unity of interest and ownership exists such that any individuality and separateness of Plaintiff and Dr. Weitz has ceased, Dr. Weitz exercised complete domination over Plaintiff, and an adherence to the fiction of Plaintiff's separateness would promote injustice.

7.      Adherence to the fiction of the separate existence Plaintiff as an entity distinct and apart from Dr. Weitz would permit an abuse of the corporate privilege and would promote injustice in that Dr. Weitz has used Plaintiff as a means of financing, supporting, and enabling himself to avoid payment for valid debts such as those owed to Defendants.

8.      Upon information and belief, Plaintiff's headquarters are located at 123 Grove Ave, Suite 109, Cedarhurst, NY 11516.

9.      On information and belief, Plaintiff has been and continues to be in the business of distributing, marketing and offering for sale in interstate commerce dental products.

10.      On information and belief, Plaintiff has been and continues to be in the business of distributing, marketing and offering for sale in interstate commerce dental products using the ADIN DENTAL IMPLANT SYSTEMS mark and the ADIN DIGITAL mark (hereinafter "the Adin Marks") owned by Adin.

B.  JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction of this civil action under 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367(a).

12.   The amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

13.   Venue in this Court is proper under 28 U.S.C. §§ 1391(b) and (c).

14.   Plaintiff as well as Third-Party Defendants Osseogroup LLC (hereinafter "Osseogroup") and Dr. Markus Weitz have committed acts of trademark infringement in this judicial district.


C.   FACTS COMMON TO ALL COUNTERCLAIMS

15.   Adin is located in Israel and distributes acclaimed dental products on five continents.  Adin and its corporate predecessors have been manufacturing dental implants since 1991.

16.   In 2008, Adin's products first received approval from the United States Food and Drug Administration.

17.   Enjoying a stellar reputation, in 2012 Adin was awarded the Outstanding Exporter Award by the Israeli Ministry of Economy and Industry.

18.   In 2010, Dr. Weitz, principal of Plaintiff, approached Adin, presented himself as a wealthy dentist who has significant assets both in New York and Israel, and indicated an interest in selling Adin's dental implants.

19.   During said conversations in 2010 and 2011, Dr. Weitz offered to serve as Adin's distributor throughout the United States.  Dr. Weitz made several specific commitments to induce Adin to enter into an agreement with him.  Dr. Weitz represented that

   a.   he possessed and would invest sufficient money, time and effort to develop such a business;

      b.   he had sufficient connections to develop a distribution business throughout the United States; and

      c.   he had the ability to invest the money required to establish a business selling dental implants throughout the United States.

Unknown to Adin, Dr. Weitz's statements were false.

20.     Before entering into a contract with Adin, Dr. Weitz visited Adin's plant in Israel, where Dr. Weitz presented a very promising business plan for his future efforts to market and sell Adin products throughout the United States.

21.     At that period of time, Adin was enjoying significant growth, development and prosperity in the majority of its markets.  As detailed herein, as a result of Plaintiff's failures, misrepresentations, infringements, illusory promises, lack of experience, refusal to commit resources, and bad-faith negotiation tactics, Adin has suffered significant damages.

22.     Adin reasonably relied upon Dr. Weitz's representations that he was able to assist Adin in penetrating the United States' market.  However, Dr. Weitz failed to adequately invest in or otherwise grow the distribution network properly.  Dr. Weitz's promises and plan were illusory as he failed to fulfill same.  Dr. Weitz's purported connections were limited to the Greater-New York City area.  As a result, Dr. Weitz impeded Adin's progress throughout the United States' market rather than advancing it.

23.     Based on Dr. Weitz's false representations of that he made on his own behalf and on behalf of Plaintiff about his and Plaintiff's capabilities, resources, existing relationships, and financial commitment to invest a substantial sums in the venture and Dr. Weitz's commitment to honor his agreement and ensure the venture would be successful, Adin agreed to enter into a contractual relationship with Plaintiff.  Based on the false representations of Dr. Weitz on his

behalf and on behalf of Plaintiff, Adin also agreed to give Plaintiff exclusive rights to distribute throughout the United States.

24.     Plaintiff was, and is, a mere sham and is organized and operated as the alter ego of Dr. Weitz for his personal benefit and advantage, in that Dr. Weitz has at all times mentioned exercised total dominion and control over Plaintiff.  As the alter ego of Plaintiff, Dr. Weitz is, and has been, conducting, managing, and controlling the affairs of Plaintiff since its incorporation, as though it were Dr. Weitz's own business, and Dr. Weitz has used Plaintiff for the purpose of defrauding Adin, Adin USA, and Mr. Danzer, as well as others similarly situated, as set forth herein.

25.     In early 2012, Plaintiff began distributing, marketing, and selling Adin products throughout the United States.

26.     By the end of 2012, Plaintiff owed Adin over $300,000.  Accordingly, Adin provided credit to Plaintiff for much of the products that Plaintiff attempted to market, sell and distribute during the first year of the relationship between Plaintiff and Adin.

27.     On December 28, 2012, Dr. Weitz acknowledged Plaintiff's obligation to provide Adin with sales reports, projections and payments.

28.     However, despite Adin's prolonged and diligent efforts Dr. Weitz and Plaintiff never executed a distribution agreement.

29.     By January of 2013, Plaintiff owed more than $220,000 to Adin.

30.     Dr. Weitz requested a temporary forbearance, which Adin granted; however, Plaintiff did not remit payment.

31.      Given the size of the debt owed by Plaintiff, Adin required Plaintiff to pay upfront for its next shipment of dental products.

32.     Plaintiff retaliated by threatening to shut down its "implant distribution business" in an effort to extract a concession from Adin so that Plaintiff could "remain on a consignment net 90 basis".

33.     In February of 2013, Plaintiff did shut down its implant distribution business for a prolonged period.

34.     During said period, Plaintiff, among other things, terminated at least two representatives, ceased filling orders from customers, ceased marketing to current and prospective customers, and ceased communicating with several customers.

35.     A cessation of business by the distributor of dental implants, even for a short period, can prevent Adin's customers in the United States from being able to purchase Adin's implants, accessories, and/or services, thereby causing harm to Adin's reputation, its good will in the marketplace, and its ability to make sales throughout the United States for quite some time.

36.     In light of Plaintiff's willingness to terminate its marketing, distribution, and sales of Adin products in order to extract more favorable terms from Adin, representatives of Adin first expressed an interest in purchasing Plaintiff's business after the aforesaid February 2013 shut down of Plaintiff's business.

37.     Adin first expressed interest in purchasing Plaintiff's business after Plaintiff threatened to and then did shut down its business in 2013.  Such cessation of business is considered a major threat, as it can potentially cause material harms, including damage to Adin's reputation throughout the United States, which would result in the loss of customers, the loss of prospective customers, and the loss of sales.

38.     Adin's interest in purchasing Plaintiff's business was intended to (in order of importance): (1) encourage Plaintiff to not solicit Adin's customers by, among other things,

-38-

misrepresenting to customers that Adin was abandoning the United States' market; (2) prevent Plaintiff from harming Adin's good will and reputation; (3) encourage Plaintiff to help increase the sales of Adin's products, thereby increasing the value of Plaintiff's business; and (4) prevent any damage to the services provided by Adin.

39.    In light of Plaintiff's prolonged cessation of business, which was intended to extract more favorable terms from Adin, Adin sought to limit the possibility of future threats by Plaintiff.  To accomplish same, Adin entered into negotiations with Plaintiff, which resulted in the drafting of a letter of understanding dated February 25, 2013, between Adin and Plaintiff (the "Letter of Understanding"). stating:

    a.  the Letter of Understanding would be active either until December 31, 2013, or until a contract was agreed upon by Plaintiff and Adin;

    b.  Plaintiff would provide Adin with a letter of credit for $150,000.00;

    c.  Adin would extend a total of $500,000 of credit to Plaintiff;

    d.  Plaintiff would return to Adin "unused, failed, traded goods";

    e.  Plaintiff would provide Adin with an accounting of "free goods";

    f.  Pricing for implants and components;

    g.  Plaintiff was permitted to market under its own name;

    h.  Plaintiff was to report monthly sales;

    i.  Plaintiff was to remit payment to Adin on a 30-day basis (with an example in the clause stating, "payment for January sales due at the end of February; payment for February sales due at the end of March…");

    j.  as long as Plaintiff "complies with these understandings" Adin would continue fulfilling orders and shipping products; and

     k.   as long as Plaintiff "complies with these understandings" Adin would not "ship or distribute to any other entity within the USA through December 31, 2013".

As illustrated by same, Adin made numerous concessions to Plaintiff in the Letter of Understanding, providing extremely favorable terms to Plaintiff in order to prevent Plaintiff from again ceasing business or threatening to cease business.  A true, correct, and redacted copy of the Letter of Understanding and attachment to same is attached hereto as "Exhibit A".

    40.    Accompanying the Letter of Understanding was an offer from Adin to purchase Plaintiff's business, entitled, "Terms for transfer of assets", which was aimed, as explained above, to prevent further and future damages to Adin by Plaintiff.  Dr. Weitz executed same, yet he subsequently refused to honor the terms contained therein, claiming same merely provide a framework for a future sale, should he decide to sell Plaintiff's business in the future.

    41.    Thereafter, Adin made repeated, persistent efforts to negotiate a mutually-agreeable contract with Plaintiff.  While Plaintiff partially acquiesced to subsequent proposals made by Adin by way of its acts and omissions, Plaintiff repeatedly refused to execute a written agreement.

    42.    For example, starting on February 19, 2014, representatives of Adin and representatives of Plaintiff, including Dr. Weitz, repeatedly met to negotiate terms for a contract.  Ultimately, representatives of Plaintiff and Adin reached an agreement as to several material terms for the prospective agreement.

    43.    In mid-March of 2014, Adin memorialized the terms of the agreement negotiated from February 19, 2014 onward in an email correspondence.  Plaintiff and Adin repeatedly revised the aforesaid memorialization.

44.     On March 19, 2014, Dr. Weitz last annotated the memorialized terms of the distribution agreement, which stated in part:

    a.   Plaintiff would remit payment to Adin on a net 90-day basis;

    b.   Adin would extend a credit limit with a maximum of $275,000 to Plaintiff that "does not include permadontics…close fit system and other mutually agreed upon programs";

    c.   Plaintiff represented that it would use "best efforts to reach" minimum annual purchase volumes of implants, and Plaintiff's failure to meet such minimum annual purchase volumes would be grounds for termination of the agreement; and

    d.   Plaintiff represented that it "is its own entity with its own employees, customers, database and intellectual property. Adin has no claims to it and at this point has no interest in owning it."

A true, correct, and redacted copy of Dr. Weitz's email of March 19, 2014 is attached hereto as "Exhibit B".

45.     On June 19, 2014, Adin sent Plaintiff a proposed distribution agreement based on the aforesaid agreed-upon terms and subsequent revisions.  However, Plaintiff refused to sign the agreement.

46.     In late June of 2014, Adin then proposed an alternate agreement entitled, "Distribution Fundamentals".

47.     In a meeting on or around July 7, 2014 in Israel, Plaintiff and Adin discussed revising the terms of the "Distribution Fundamentals" agreement.

48.     On July 26, 2014, Dr. Weitz emailed Adin to memorialize portions of the July 7, 2014 negotiations, and to propose additional and alternate terms.  A true, correct, and redacted copy of Dr. Weitz's July 26, 2014 email is attached hereto as "Exhibit C".

49.     The terms Dr. Weitz set forth included:

a.   Adin was to indemnify Plaintiff related to the sales of CloseFit products in the United States;

b.   Plaintiff "has a right t (sic) sell Adin Implants under our name which we own. (of course we will not cover the adin name in packaging .... As you've outlined...)";

c.   Adin would warranty/"accept exposure" for claims arising from defects;

d.   "Intellectual property — Adin owns what they develop. We own what we develop";

e.   "We own our phone number and our website…We all agreed that I own Adinimplants.com , not Adin Israel and that **Adin Israel owns the trademark of their name**. Adin Israel is allowing Shetel to use their name. **Upon Termination, it is clear that Adin Israel will not allow Shetel to continue using their name**"; and

f.   "Line of credit (275k) needs to scale up with sales" and "Additionally, Eyal agreed to increase a separate line of credit for the Close-fit system when we begin stocking and selling it".

(Emphasis added).

50.     Despite Adin acceding to many of Plaintiff's demanded revisions, Plaintiff did not agree to execute the revised contract.

51.     The parties then transacted substantially under the aforesaid terms set forth in Dr. Weitz's emails of March 19, 2014 (Exhibit B) and July 26, 2014 (Exhibit C); the former set forth operative terms, including but not limited to the minimum annual purchase volumes that Plaintiff agreed to, the latter set forth operative terms, including but not limited to the line of credit extended by Adin.

52.     Upon information and belief, Dr. Weitz exercised complete dominion and control over Plaintiff and used the corporation as an alter ego, as evidenced, for example and upon information and belief, by his personal decisions to repeatedly refuse to execute an agreement on behalf of Plaintiff with Adin; to make promises to Adin on behalf of Plaintiff; and to shut down Plaintiff's business for a prolonged period starting in February of 2013 as a negotiation tactic and to Adin's material harm.

**Plaintiff's Breach of Its Contract with Adin**

53.     Upon entry into the United States' market Adin put much effort, time, and money into developing its position in the United States' market.  Adin relied on representations by Plaintiff that it shared the goal of expanding Adin's presence in the United States' market.  In furtherance of meeting these goals, for more than two years, from 2013 until the end of 2015, Adin gave Plaintiff a very generous credit line and Adin sold Plaintiff Adin's dental products at generous prices.

54.     Despite Adin's support and assistance, Plaintiff repeatedly failed to meet its obligations to Adin.

55.     While Adin has repeatedly attempted to have Plaintiff perform all of Plaintiff's obligations, Plaintiff has refused to meet its minimum annual purchase volumes.

56.     In November 2013, Adin noticed Plaintiff that the former had become aware that Plaintiff had among other things:

        a.   failed to meet annual minimum purchase volumes;

        b.   failed to expand the region in which Plaintiff marketed and sold Adin's products;

        c.   failed to provide sales forecasts; and

        d.   failed to provide sales plans.

57.     In 2014, Plaintiff again failed to meet the minimum annual purchase volumes.

58.     On January 25, 2015, Adin notified Plaintiff that it had again failed to meet its the minimum annual purchase volumes.

59.     In January of 2015, in an effort to support Plaintiff, and at Plaintiff's request, Adin provided Plaintiff with inventory of one of Adin's implant products, CloseFit implants, and accessories to same worth $200,000 in consignment for twelve months.

60.     Also in January of 2015, in an effort to support Plaintiff, and at Plaintiff's request, Adin agreed in writing to indemnify Plaintiff against any and all claims related to the distribution of CloseFit implants throughout the United States.

61.     Plaintiff never reported the sales of CloseFit implants or accessories to Adin.

62.     Plaintiff never paid Adin for the CloseFit implants or accessories from Adin.

63.     On February 11, 2016, Adin notified Plaintiff that it owed Adin $650,000.

64.     Plaintiff responded on February 11, 2016, and disputed that the aggregate sum of $650,000 was accurate.  Jeremy Frenkel, one of Plaintiff's principals, invoked the terms of the March 19-20, 2014 emails (which memorialized the oral agreement between the parties) when he

asserted, "The closefit consignment is part of that number which I asked/demanded to be separated and not part of our account".

65.     On February 15, 2016, Adin specifically asked Plaintiff to markedly revise the latter's website at adinimplants.com to avoid creating confusion in the marketplace, including but not limited to:

>   a.  Contact information that led customers from other markets to contact Plaintiff rather than Adin; and
>
>   b.  Pages entitled "management", "advisory board" and "about us" that pertained to Adin, suggesting that an internet user that the website was the official website of Adin rather than Plaintiff.

66.     On May 29, 2016, Plaintiff alleged that Adin withheld a shipment of goods. Notably, Plaintiff again cited February 19-20, 2014 emails when it asserted that the debt claimed by Adin should exclude the CloseFit products to be sold on consignment.

67.     On May 30, 2016, Adin notified Plaintiff that:

>   a.  it had failed to report sales of CloseFit implants and/or accessories to Adin;
>
>   b.  it owed Adin $314,700, excluding $200,000 in CloseFit inventory, as per the aforesaid agreement;
>
>   c.  it had exceeded the $275,000 credit line established by the aforesaid agreement and was required to pay Adin $90,000 before Adin would fulfill another order;
>
>   d.  it had failed to meet the minimum annual purchase volumes; and
>
>   e.  it had failed to open the $150,000 letter of credit.

68.     On May 31, 2016, Dr. Weitz outlined an agenda for meeting with representatives of Adin on or around June 15, 2016. The agenda items Dr. Weitz identified included "product

pricing", "increased line of credit", "Close fit in the US", "Adin Digital in the US", "Guided surgery for the Adin System", "Adin system in ALL digital libraries (ie – 3 shape)", "signing an agreement", and "Greater NY Dental Meeting".

69.     Despite Adin providing Plaintiff with a credit line, discounts on Adin products, latitude to prescribe minimum annual purchase volumes, Adin's patience when Plaintiff failed to meet said minimum annual purchase volumes, and Adin's agreement to provide indemnification for claims arising out of the sales of certain products, Dr. Weitz deviated from his own agenda at the June of 2016 in New York City.   Therein, he surprised Adin by threatening to terminate Plaintiff's services following day unless Adin agreed to further benefits, concessions, and discounts.

70.     Adin did not accede to Plaintiff's demands; rather, Adin offered to freeze prices for the duration of the calendar year, and to provide Plaintiff 500 implants free of charge for each order of 1,500 implants Plaintiff made.

71.     As of August 16, 2016, more than a year after Plaintiff received a consignment stock of $200,000 in implants, Plaintiff failed to report any specific sales of same to Adin or to remit payment to Adin.

72.     On August 23, 2016, Adin notified Plaintiff that it had become aware that Plaintiff had sold "consignment implants" without paying Adin for same.

73.     By September 2016, Plaintiff continued to refuse to pay Adin, resulting in Plaintiff owing $464,708.00 to Adin.

74.     Furthermore, contrary to the promises of Dr. Weitz and obligations of Plaintiff, Plaintiff never achieved a national presence.   Rather, under information and belief, the majority of Plaintiff's sales of Adin's products were made in the Tri-State region.

75.     As a result of Plaintiff's debt, Plaintiff's failure to remit payment, Plaintiff's failure to meet the minimum annual purchase volumes, and Plaintiff's refusal to report sales numbers, on September 18, 2016, Adin notified Plaintiff that it was terminating its relationship with Plaintiff within thirty days, unless Plaintiff: a) paid $189,708 that was in excess of the parties' agreed-upon credit limit of $275,000 extended by Adin to Plaintiff; b) executed a distribution agreement that memorializes the parties' prior agreed-upon minimum annual purchase volumes by Plaintiff; and c) acknowledges Adin's pricing list.

76.     Plaintiff did not pay Adin $189,708 within thirty days.

77.     Plaintiff did not execute a distribution agreement with Adin within thirty days.

78.     Rather, the following day, Dr. Weitz responded that Plaintiff would perform none of the aforesaid conditions to continue the relationship between the parties.

79.     On September 21, 2016, Adin notified Plaintiff that it had failed to pay the debt owed in excess of the credit limit, failed to meet the minimum annual purchase volumes, failed to report sales of Adin products, and failed to pay Adin for products sold on consignment.  As a result, Adin notified Plaintiff that the agreements between the parties had been terminated and there were no existing obligations between the parties.

80.     Rather than simply terminating the distribution agreement, and acting in good faith, Adin revisited its prior offers to purchase Plaintiff's marketing and distribution business and repeatedly made offers to Plaintiff between September and November of 2016.

81.     In October 2016, Plaintiff prepared the first draft of an agreement for the sale of its business to Adin.  On November 1, 2016, Adin responded with comments and proposed revisions.

82.     Thereafter, Plaintiff refused to provide Adin with data sufficient to evaluate the assets of Plaintiff.

83.     Simultaneously, Plaintiff failed to maintain its marketing and sales efforts.

84.     On December 2, 2016, Adin notified Plaintiff that it has been informed that Plaintiff, acting out of apparent spite, began selling Adin products for markedly reduced costs, ignoring customers, and informing customers and potential customers that Adin was leaving the United States' market.  Adin anticipated Plaintiff's acts, which constituted a significant threat to the good will and reputation of Adin.  Given Plaintiff's repeated failures to meet minimum annual purchase volumes and Plaintiff's willful, destructive acts, Adin was incentivized to purchase Plaintiff's business to prevent the aforesaid, spiteful acts by Plaintiff.

85.     Between February 2017 and April 2017, Adin repeatedly demanded orally and in writing that Plaintiff cease and desist marketing and selling Adin products, holding itself out as a distributor of Adin products, and using the Adin Marks.

86.     For example, on or about March 7, 2017, Adin and Adin USA notified Plaintiff that its registration and continued use of said domain name constituted cyber-squatting.

87.     On or about April 25, 2017, Adin and Adin USA again notified Plaintiff that it continued to use the domain name, and demanded that Plaintiff turn over same to Adin and Adin USA.

88.     Under information and belief, Plaintiff refused to cease selling and marketing Adin products, continued holding itself out as a distributor of Adin products, continued using the Adin Marks, and continued cybersquatting.

89.     On or about July 13, 2017, counsel for Adin and Adin USA served a letter on Plaintiff's counsel, demanding that Plaintiff immediately cease cybersquatting. As of July 13,

2017, when an internet user typed the domain name, the user's browser would be redirected to the website of Third-Party Defendant, Osseogroup.

### The Adin Marks

90.   On October 4, 2016, Adin registered the mark "ADIN DIGITAL" as U.S. Trademark Number 5051986 and claimed a priority date of August 26, 2015.

91.   On November 1, 2016, Adin registered the mark "ADIN DENTAL IMPLANT SYSTEMS" as U.S. Trademark Number 5070690 and claimed a priority date of August 26, 2015.

### The Relationship Between Plaintiff, Dr. Weitz, and Mr. Danzer

92.   In July of 2009, Dr. Weitz, principal of Plaintiff, initiated discussions with Mr. Danzer regarding him leaving his employer to help Dr. Weitz establish a company that would distribute dental implants.

93.   Mr. Danzer, Dr. Weitz, and other representatives of Plaintiff repeatedly discussed Dr. Weitz's July 2009 proposal over the following two years.

94.   In May of 2011, Plaintiff began operating an email server.

95.   In May of 2011, Plaintiff provided Mr. Danzer an email address on its new email server, yet Mr. Danzer was not an employee, independent contractor, or agent of Plaintiff at that time.

96.   On May 24, 2011, Plaintiff made an initial offer to Mr. Danzer to induce him to leave his employer and join Plaintiff; Plaintiff offered $150,000 per year for the first two years of employment, ownership of a percentage of Plaintiff's stock shares to increase each year in lieu of a performance bonus with a maximum of 20% ownership in Plaintiff, profit sharing, benefits inclusive of medical, dental, and vision insurance as well as contributions to Mr. Danzer's retirement plan, commissions to be awarded based on either Mr. Danzer meeting a sales quota or

a percentage to be paid by Plaintiff for every dollar of sales, a car allowance, a travel allowance, reimbursement of expenses, a cellular telephone and laptop, and a buy-out structure.

97.     Thereafter, Mr. Danzer and Plaintiff continued to discuss terms for employment.

98.     In the first quarter of 2012, two of Plaintiff's principals, Dr. Weitz and Jeremy Frenkel, met with Mr. Danzer and his wife at their residence.  Plaintiff offered Mr. Danzer a salary of $180,000.00 as well as commissions greater than Mr. Danzer's commission rate at his then-employer, as well as benefits, including health and dental insurance, matching contributions to Mr. Danzer's 401k account, and ownership of a percentage of Plaintiff's stock.

99.     Mr. Danzer accepted Plaintiff's offer on or around February 7, 2012.

100.    At the time of his hiring, Mr. Danzer brought with him compilations of customers for dental products, including spreadsheets and business cards, which he had personally expended significant time, funds and effort to compile as well as training materials for salesperson that Mr. Danzer expended significant time and effort to develop based on his personal experience.

101.    Plaintiff used Mr. Danzer's customer lists and information to enrich itself and build its business.

102.    At no time did Plaintiff provide any health or dental insurance to Mr. Danzer.

103.    At no time did Plaintiff establish a 401k for Mr. Danzer, nor did Plaintiff make matching contributions to any pre-existing 401k account of Mr. Danzer.

104.    On July 20, 2016, Plaintiff demanded that Mr. Danzer agree to a written agreement wherein he would agree not to compete with Plaintiff or solicit Plaintiff's customers for an unspecified period of time ("Non-Compete Agreement").  Mr. Danzer responded that since he was a partial owner of Plaintiff, he did not believe that the Non-Compete Agreement was necessary.  Dr. Weitz ignored Mr. Danzer's response and threatened that Mr. Danzer could not

remain with Plaintiff in if he did not execute the Non-Compete Agreement.  However, Plaintiff did not provide Mr. Danzer with a copy of the proposed Non-Compete Agreement.

105.    Co-principal of Plaintiff, Jeremy Frenkel, called Mr. Danzer on July 22, 2016, and requested that he make a decision regarding the theretofore unseen Non-Compete Agreement. Mr. Danzer indicated that he would not agree to any agreement that he had no opportunity to review and consider, and Mr. Danzer indicated to Mr. Frenkel that he considered Plaintiff to have terminated him, based on Dr. Weitz's threat of July 20, 2016.  Mr. Danzer further indicated that he would place all of Plaintiff's property that had been in his possession on his front porch for collection.

106.    On July 25, 2016, Dr. Weitz contacted Mr. Danzer and apologized for any miscommunication.  Dr. Weitz ensured the proposed Non-Compete Agreement was sent to Mr. Danzer.  Dr. Weitz also indicated that the deadline for Mr. Danzer to make a decision was extended to July 27, 2016.

107.    The following day, Mr. Danzer indicated to Dr. Weitz that he would not execute the Non-Compete Agreement, because same lacked consideration.

108.    On July 29, 2016, Dr. Weitz sent Mr. Danzer a shipping label to return the property of Plaintiff that Mr. Danzer indicated on July 22, 2016 remained in his possession.

109.    On or about July 29, 2016, Plaintiff terminated Mr. Danzer.

110.    When Plaintiff terminated Mr. Danzer's employment, it retained the customer lists that Mr. Danzer brought at the time of his hiring.

111.    Further, when Plaintiff terminated Mr. Danzer, it failed to pay him commissions for sales that occurred after the last date he was paid commissions and the date of termination.

112.    Upon information and belief, Dr. Weitz exercised complete dominion and control over Plaintiff and used the corporation as an alter ego, as evidenced, for example and upon information and belief, by his personal decisions to make promises to Mr. Danzer on behalf of Plaintiff.

**FIRST COUNTERCLAIM**
[Breach of Contract]

113.    Adin repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

114.    The agreements between Plaintiff and Adin are valid and supported by adequate consideration.

115.    Plaintiff materially breached its agreements by:

    a.   failing to report sales of implants and/or accessories to Adin;

    b.   failing to meet the minimum annual purchase volumes;

    c.   failing to pay Adin all of the products that Plaintiff purchased on credit;

    d.   failing to pay Adin for all of the products that Plaintiff sold on consignment;

    e.   failing to return to Adin all of the products that Plaintiff was to sell on consignment, but failed to sell; and

    f.   failing to expend the time, money and effort necessary to expand Plaintiff's sales and marketing activities throughout the United States.

116.    Further, on September 21, 2016, Adin notified Plaintiff that it was terminating their relationship in thirty days, unless Plaintiff agreed to certain requirements.  Plaintiff refused to said requirements.

117.    As detailed *supra*, Plaintiff has acknowledged the enforceability of, and previously sought to enforce numerous clauses from the emails sent by Dr. Weitz on March 19, 2014 and July 26, 2014.

118.    As part of Dr. Weitz's July 26, 2014 email, referenced *supra*, Plaintiff acknowledged that upon termination, Adin would not permit Plaintiff to continue using the name "Adin".

119.    Despite Adin's termination of the relationship, Plaintiff continues to use the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or counterfeits, copies, reproductions, or colorable imitations thereof in connection with the sale, offering for sale, distribution, and/or advertising of goods and services.

120.    By continuing to use the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or counterfeits, copies, reproductions, or colorable imitations thereof in connection with the sale, offering for sale, distribution, and/or advertising of goods and services, Plaintiff has violated the agreement memorialized in Dr. Weitz's July 26, 2014 email.

121.    Plaintiff materially breached its agreement with Adin in other ways, the details of which are unknown at this time.

122.    In light of Plaintiff's breach of its agreements, Adin is entitled to receive the outstanding $458,978.00 balance due for the implants and accessories Plaintiff agreed to sell on consignment.

123.    In addition to the outstanding $458,978.00 balance due for goods under the agreements, Adin has suffered monetary and other damages, in an as-yet undetermined amount, as the direct and proximate result of Plaintiff's material breaches of the agreements.  Adin suffered economic losses as a result of the amounts it expended to produce and deliver its products to

Plaintiff and also lost out on business opportunities because of its allocation of markets and opportunities to Plaintiff because of its reasonable expectation and reliance that Plaintiff would distribute, market and sell Adin's products throughout the United States pursuant to the promises of Plaintiff and Dr. Weitz.

124.    Furthermore, Adin's business and opportunities throughout the United States were negatively impacted by Plaintiff's lack of actual distribution capability, its failure to use its best efforts to market Adin's products, and its failure to adhere to the other promises identified *supra*. Plaintiff's breaches resulted in Adin suffering from, among other things, diminished sales, lost opportunities, and the alienation of customers as a result of its reliance upon the promises of Plaintiff and Dr. Weitz.

125.    As a result of the foregoing, Adin has sustained damages in an amount to be determined at trial.

## SECOND COUNTERCLAIM
[Promissory Estoppel]

126.    Adin repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

127.    Dr. Weitz and Plaintiff made a clear and definite promise to develop a business to distribute Adin's dental products throughout the United States. To such end, Dr. Weitz and Plaintiff represented that they:

      a.   had sufficient connections to develop a distribution business throughout the United States;

      b.   had the ability to invest the money required to establish a business selling dental implants throughout the United States;

    c.   would invest sufficient money, time and effort and would use the aforesaid connections to develop such a business;

    d.   would provide Adin with a letter of credit for $150,000.00;

    e.   would return to Adin "unused, failed, traded goods";

    f.   would provide Adin with an accounting of "free goods";

    g.   would report timely to Adin monthly sales;

    h.   would remit payment to Adin on a 30-day basis;

    i.   would use "best efforts to reach" minimum annual purchase volumes of implants; and

    j.   would cease using the "Adin" name and the Adin Marks upon termination of the parties' relationship.

128.    Adin reasonably relied on the aforesaid promises. Adin incurred significant costs by, among other things: a) providing its products to Plaintiff for sale throughout the United States; b) foregoing selling its products through any other distributor in the United States; c) extending Plaintiff a significant line of credit; and d) agreeing to indemnify Plaintiff and warranty Adin's products.

129.    As a result of Adin's reasonable reliance, it suffered definite and substantial detriment when Plaintiff failed to adhered to the aforesaid promises.  Adin suffered economic losses as a result of the amounts it expended to produce and deliver its products to Plaintiff and also lost out on business opportunities because of its allocation of markets and opportunities to Plaintiff because of its reasonable expectation and reliance that Plaintiff would distribute, market and sell Adin's products throughout the United States pursuant to the promises of Plaintiff and Dr. Weitz.

130.    As a result of Adin's reliance on the aforesaid promises, it suffered definite and substantial detriment when Plaintiff ultimately lacked the distribution resources, capabilities, or financing it and Dr. Weitz had promised, thereby failing to generate the amount of sales that would have been achieved had its promises been true.

131.    Adin's business and opportunities throughout the United States were negatively impacted by Plaintiff's lack of actual distribution capability, its failure to use its best efforts to market Adin's products, and its failure to adhere to the other promises identified *supra*.  The broken promises of Plaintiff and Dr. Weitz resulted in Adin suffering from, among other things, diminished sales, lost opportunities, and the alienation of customers as a result of its reliance upon the promises of Plaintiff and Dr. Weitz.

132.    As a result of the foregoing, Adin has sustained damages in an amount to be determined at trial.

### THIRD COUNTERCLAIM
[Fraud]

133.    Adin repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

134.    Due to the acts set forth herein committed by Plaintiff with gross malice and with the intention of stealing Adin's products and the Adin Marks, Adin has been defrauded herein due to the loss of sales and market growth.

135.    Plaintiff and Dr. Weitz defrauded Adin by making material misrepresentations to and concealed or suppressed material facts from Adin.  Such misrepresentations and concealed and/or suppressed material facts include those detailed throughout the "Facts Common to All Counterclaims", *supra*.  Specific misrepresentations including, without limitation, Plaintiff's false

representation that it was ordering products for sale on consignment.  Instead however, Plaintiff sold said Adin's products, never reported said sales to Adin, and then kept the proceeds of the sales.  This harmed Adin's business, sales efforts, and reputation.

136.  Plaintiff and Dr. Weitz further defrauded Adin by mispresenting that it would develop a business selling Adin's dental implants throughout the United States because:

   a. it had sufficient connections to develop such a distribution business and would use same;

   b. it had sufficient funds to develop such a distribution business and would do so; and

   c. it had sufficient time and effort to develop such a distribution business and would do so.

Plaintiff and/or Dr. Weitz either lacked sufficient connections, funds, time and effort to develop a business selling Adin's dental implants throughout the United States or Plaintiff and/or Dr. Weitz did not use sufficient connections, funds, time and effort to develop a business selling Adin's dental implants throughout the United States.  This harmed Adin's business, sales efforts, and reputation.

137.  Plaintiff further defrauded Adin by, among other things, falsely representing that it would:

   a. provide Adin with a letter of credit for $150,000.00;

   b. return to Adin "unused, failed, traded goods";

   c. provide Adin with an accounting of "free goods";

   d. report timely to Adin monthly sales;

   e. remit payment to Adin on a 30-day basis;

    f.   use "best efforts to reach" minimum annual purchase volumes of implants;

    g.   cease using the "Adin" name and the Adin Marks upon termination of the parties' relationship.

Plaintiff either lacked sufficient connections, funds, time and effort to develop a business selling Adin's dental implants throughout the United States or Plaintiff did not use sufficient connections, funds, time and effort to develop a business selling Adin's dental implants throughout the United States. This harmed Adin's business, sales efforts, and reputation.

138.    Adin would not have entered into relationship wherein Plaintiff served as Adin's exclusive distributor in the United States or even provided products to Plaintiff to market and sell, had it known the truth that Plaintiff was misrepresenting that it would engage in the aforesaid acts.

139.    As a result of the foregoing, Adin has sustained damages in an amount to be determined at trial.

## FOURTH COUNTERCLAIM
### [Negligent Misrepresentation]

140.    Adin repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

141.    As detailed *supra*, Plaintiff and Dr. Weitz made representations to Adin regarding the contributions Plaintiff and/or Dr. Weitz would make to develop a business to distribute Adin's dental implants and accessories throughout the United States and Plaintiff and Dr. Weitz made representations to Adin regarding the acts and omissions Plaintiff would undertake during their relationship. Said representations appear *supra* in the "Facts Common to All Counterclaims".

142.   A special relationship of trust and confidence existed between Plaintiff and Dr. Weitz, and Adin due to the purported specialized expertise of Plaintiff and Dr. Weitz as to the nature and requirements of the dental products market within the United States.

143.   If the misrepresentations of Plaintiff and Dr. Weitz were not intentionally or recklessly made, then Plaintiff and Dr. Weitz was negligent in making false, incomplete, and misleading statements regarding its resources, capabilities, and willingness to develop a business to distribute Adin's dental implants and accessories throughout the United States.  Adin relied on said misrepresentations.

144.   The factual representations by Plaintiff were material and were false and misleading.  Plaintiff failed to exercise reasonable care or competence in making these representations and in ascertaining or failing to ascertain the truth or falsity of its representations.

145.   Plaintiff made these false, misleading, and incomplete representations of fact with the intent to influence the actions of Adin.

146.   Plaintiff stood to gain financially if Adin agreed to enter into the relationship with Plaintiff as described in the "Facts Common to All Counterclaims", and did indeed gain from Adin's entry into said relationship.

147.   Plaintiff knew that Adin would rely on Plaintiff's false representations in agreeing to enter into the relationship with Plaintiff as described in the "Facts Common to All Counterclaims".

148.   Adin reasonably and justifiably relied on Plaintiff's misrepresentations in agreeing to enter into the relationship with Plaintiff described in the "Facts Common to All Counterclaims" and Plaintiff knew that Adin would rely on such representations.

149.    At the time Adin agreed to enter into said relationship with Plaintiff, Adin was unaware of the true facts and would have acted differently if it had known the true facts.

150.    As a result of Adin's reliance upon Plaintiff's misrepresentations, Adin has suffered damages in an amount to be proved at trial.

## FIFTH COUNTERCLAIM
[Conversion]

151.    Adin repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

152.    The acts and omissions of Plaintiff set forth above constitute conversion of Adin's products.

153.    As a result of the foregoing Adin has been injured and is entitled to damages to be determined at trial.

## SIXTH COUNTERCLAIM
[Trademark Infringement (15 U.S.C. § 1114)]

154.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

155.    Despite knowledge of Adin's rights in the Adin Marks, Plaintiff has, without the consent of either Adin or Adin USA, after the notice of termination from Adin and Adin USA, used and continues to use in commerce, the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or counterfeits, copies, reproductions, or colorable imitations thereof in connection with the sale, offering for sale, distribution, and/or advertising of goods and services.

156.    Plaintiff's actions constitute willful infringement of the exclusive rights of Adin and Adin USA in the Adin Marks in violation of 15 U.S.C. § 1114.

157.    Plaintiff's use of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, counterfeits, copies, reproductions, or colorable imitations thereof, has been and continues to be done with the intent to cause confusion, mistake, and to deceive consumers or potential consumers concerning the source and/or sponsorship of goods and services sold by Plaintiff.

158.    As a direct and proximate result of Plaintiff's conduct, Adin and Adin USA have been, are now, and will be irreparably injured and damaged by the trademark infringements of Plaintiff.  In addition to sales of the products of Adin and Adin USA, which have been and will be diverted to Plaintiff as a result of consumer confusion, the trademarks of Adin and Adin USA serve a unique function in representing intangible assets of Adin and Adin USA such as their reputation and good will.  Unless enjoined by the Court, Adin and Adin USA will suffer further harm to their reputation, and good will each and every day that Plaintiff continues to use the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or any mark confusingly similar to the Adin Marks in connection with the sale, offering for sale, distribution, and/or advertising of their competing goods and services.  The past, present, and in particular future harm to the reputation and good will of Adin and Adin USA is difficult to value and therefore constitutes an injury for which Adin and Adin USA have no adequate remedy at law.

159.    By reason of the foregoing, Plaintiff, has committed and is continuing to commit trademark infringement in violation of 15 U.S.C. § 1114.  As a direct and proximate result of Plaintiff's conduct, Adin and Adin USA are entitled, pursuant to 15 U.S.C. § 1117(a), to recovery of: (i) the profits of Plaintiff related to all uses of the Adin Marks, the predominate ADIN portion

of either or both of the Adin Marks, and any mark confusingly similar to the Adin Marks; (ii) any damages sustained by Adin and Adin USA as a result of the conduct of Plaintiff, the precise amount of which shall be established by Adin and Adin USA at trial; and (iii) the costs of the action herein.

160.    Adin and Adin USA are also entitled to the recovery of their attorneys' fees, costs and expenses pursuant to 15 U.S.C. § 1117.

161.    Adin and Adin USA also seek a preliminary and permanent injunction to prohibit Plaintiff from any further use of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and any mark confusingly similar to the Adin Marks, or any iterations and transliterations thereof, in connection with the advertising, marketing, promotion, sale, offering for sale, and/or distribution of Adin's dental implants, equipment and/or supplies or otherwise, without the express written consent of Adin and/or Adin USA in advance.

## SEVENTH COUNTERCLAIM
[False Designation of Origin (15 U.S.C. § 1125(a))]

162.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

163.    Plaintiff has knowingly and without the consent of either Adin or Adin USA, after the notice of termination from Adin and Adin USA used and continues to use in commerce the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or counterfeits, reproductions, copies, or colorable imitations thereof, in connection with the goods and services that Plaintiff advertise, promote, and sell.  As such, the acts of Plaintiff render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

164.    The use of the Adin Marks by Plaintiff as alleged above, is likely to cause confusion, to cause mistake, and/or to deceive customers, prospective customers, purchasers, and members of the general public as to the source, sponsorship, affiliation, connection, or association of Plaintiff with Adin and Adin USA, and/or as to the origin, sponsorship, or approval of the product(s) of Plaintiff by Adin and/or Adin USA and constitute a false designation of origin and/or sponsorship of the goods of Plaintiff in violation of 15 U.S.C. § 1125(a).

165.    Adin and Adin USA have been, are now, and will be irreparably injured and damaged by the trademark infringement of Plaintiff.  In addition to the sales of Adin and Adin USA, which have been and will be diverted to Plaintiff as a result of consumer confusion, the trademarks of Adin and Adin USA serve a unique function in representing intangible assets of Adin and Adin USA such as their reputations and good will.  Unless enjoined by the Court, Adin and Adin USA will suffer further harm to their reputation, and good will each and every day that Plaintiff continues to use Adin Marks in connection with the sale, offering for sale, distribution, and/or advertising of their competing goods and services.  The past, present, and in particular future harm to the reputation and good will of Adin and Adin USA is difficult to value and therefore constitutes an injury for which Adin and Adin USA have no adequate remedy at law.

166.    By reason of the foregoing, Plaintiff has committed and is continuing to commit trademark infringement in violation of 15 U.S.C. § 1114.  As a direct and proximate result of Plaintiff's conduct, Adin and Adin USA are entitled, pursuant to 15 U.S.C. § 1117(a), to recovery of: (i) the profits of Plaintiff related to all uses of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and any mark confusingly similar to the Adin Marks; (ii) any damages sustained by Adin and/or Adin USA as a result of Plaintiff's conduct, the precise amount

of which shall be established by Adin and Adin USA at trial; and (iii) the costs of the action herein.

167.     In addition, Adin and Adin USA are entitled to the recovery of their attorneys' fees, costs, and expenses pursuant to 15 U.S.C. § 1117.

168.     Adin and Adin USA also seek a preliminary and permanent injunction to prohibit Plaintiff from any further use the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or of any mark confusingly similar to the Adin Marks or any iterations thereof, in connection with the advertising, marketing, promotion, sale, offering for sale, and/or distribution of Adin's dental implants, equipment and/or supplies or otherwise, without the express written consent of Adin and/or Adin USA in advance.

169.     Because of the willful nature of the wrongful acts of Plaintiff, Adin and Adin USA are entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

### EIGHTH COUNTERCLAIM
[Cybersquatting (15 U.S.C. § 1125(d))]

170.     Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

171.     Plaintiff registered the domain www.adinimplants.com on July 16, 2010, which is confusingly similar to the Adin Marks and constitutes cybersquatting under 15 U.S.C. § 1125(d).

172.     On February 15, 2016, Adin notified Plaintiff that Plaintiff's use of the domain www.adinimplants.com creates immense confusion in the market, and requested that Plaintiff use a platform on Adin's website.  As part of the notification to Plaintiff, Adin provided analysis from a third-party consultant, Yaniv Levyatan, PhD.

173.     Plaintiff did not agree to Adin's request.

174.    On September 18, 2016, Adin notified Plaintiff that it was terminating its relationship with Plaintiff.

175.    Plaintiff continues to use this domain after becoming aware that Adin had registered the Adin Marks.  Plaintiff's cybersquatting is willful and deliberate.

176.    On or about March 7, 2017, Adin and Adin USA again notified Plaintiff that its registration and continued use of said domain name constitutes cyber-squatting.

177.    On or about April 25, 2017, Adin and Adin USA demanded that Plaintiff that it cease and desist from using the domain name, and demanded that Plaintiff turn over same to Adin and Adin USA.

178.    Despite these notices, Plaintiff continued to use the domain name to redirect internet users to the website for Third-Party Defendant, Osseogroup.

179.    On or about July 13, 2017, counsel for Adin and Adin USA served a letter on Plaintiff's counsel, demanding among other things that Plaintiff immediately remove the redirect of the domain name to the website for Third-Party Defendant, Osseogroup.

180.    As of August 4, 2017, Plaintiff had only slightly modified its use of the domain name, which now points to a "404 error" page under Osseogroup's top-level domain name.

181.    Adin and Adin USA are entitled to statutory damages up to $100,000. Alternatively, Adin and Adin USA are entitled to actual damages should actual damages exceed statute limits.

182.    In addition, as a result of Plaintiff's willful and deliberate violation of 15 U.S.C. § 1125(d), Adin and Adin USA are entitled to the recovery of their attorneys' fees, costs, and expenses.

183.    Adin and Adin USA also seeks a preliminary and permanent injunction to prohibit Plaintiff from any further use of www.adinimplants.com and requests that the Court order the transfer of the domain name to Adin and Adin USA.

### NINTH COUNTERCLAIM
[Injury to Business Reputation and Dilution (N.Y. Gen. Bus. Law § 360-l)]

184.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

185.    The Adin Marks are distinctive and/or have acquired secondary meaning in the marketplace.

186.    Plaintiff's acts, as described above, are likely to dilute, have diluted and, unless enjoined, will continue to dilute the unique and distinctive quality of Adin's trademarks.

187.    Specifically, Plaintiff's use of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or marks that are substantially similar or virtually identical to the Adin Marks in conjunction with the offering and provision of dental supplies blur and dilute Adin's trademarks.

188.    Plaintiff's conduct violates N.Y. Gen. Bus. Law §360-l.

189.    As a direct and proximate result of the willful and wanton acts and conduct of Plaintiff, the reputation and good will of Adin and Adin USA have been damaged.

190.    Plaintiff's acts and conduct have caused and continue to cause irreparable injury to the reputation and good will of Adin and Adin USA, and will continue to do so unless enjoined by this Court.

191.    Plaintiff's acts and conduct have continued despite multiple oral and written notices to cease and desist as detailed *supra*.

192.    Adin and Adin USA have no adequate remedy at law.

## TENTH COUNTERCLAIM
[Deceptive Business Acts or Practices (N.Y. Gen. Bus. Law § 349)]

193.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

194.    Plaintiff's acts described above constitute deceptive acts or practices in the conduct of a business, trade or commerce and/or in the furnishing of services in violation of N.Y. Gen. Bus. Law § 349, as they are likely to deceive the public.

195.    As detailed *supra*, Adin repeatedly demanded that Plaintiff cease and desist the deceptive business acts and/or practices.

196.    Plaintiff's deceptive business acts and/or practices have caused and will continue to cause Adin and Adin USA irreparable harm.

197.    In addition to their actual damages, Adin and Adin USA are entitled to a judgment enjoining and restraining Plaintiff from engaging in further deceptive business acts and/or practices.  Adin and Adin USA seek a preliminary and permanent injunction to prohibit Plaintiff from any further use of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or any iterations thereof, for any reason including but not limited to in connection with the advertising, marketing, promotion, sale, offering for sale, and/or distribution of Adin's dental implants, equipment and/or supplies or otherwise, without the express written consent of Adin and/or Adin USA in advance.

198.    Plaintiff has committed the acts alleged above willfully and knowingly and: (i) with previous knowledge of the prior right to and use of the Adin Marks by Adin and/or Adin USA; (ii) with the willful intent to trade on the good will and reputation of Adin and/or Adin

USA; and (iii) with the willful intent to cause confusion, mistake, or deception.  As a result, Adin and Adin USA are entitled to treble damages.

199.    In addition, Adin and Adin USA are entitled to the recovery of their attorneys' fees, costs, and expenses, and any penalties for which the law provides.

## ELEVENTH COUNTERCLAIM
### [False Advertising (N.Y. Gen. Bus. Law § 350)]

200.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

201.    The unauthorized use of the Adin Marks by Plaintiff in its advertising constitutes false advertising in violation of N.Y. Gen. Bus. Law § 350.

202.    As detailed *supra*, Adin repeatedly demanded that Plaintiff cease and desist the unauthorized use of the Adin Marks.

203.    Plaintiff's wrongful acts have caused and will continue to cause Adin and Adin USA irreparable harm.  Adin and Adin USA have no adequate remedy at law.

204.    Adin and Adin USA are entitled to a judgment enjoining and restraining Plaintiff from engaging in further acts of false advertising.

205.    Plaintiff has committed the acts alleged above: (i) with previous knowledge of the prior right to and use of the Adin Marks by Adin and/or Adin USA; (ii) with the willful intent to trade on the good will and reputation of Adin and/or Adin USA; and (iii) with the willful intent to cause confusion, mistake, or deception.  As a result, Adin and Adin USA are entitled to: (i) (i) an accounting of Plaintiff's  sales, collections, receipts, disbursements, charges, payments, and profits in specific detail with respect to Adin's products and services; (ii) the profits of Plaintiff related to all uses of the Adin Marks, and all iterations thereof; (iii) any damages sustained by

Adin and Adin USA as a result of Plaintiff's conduct, the precise amount of which shall be established by Adin and Adin USA at trial; and (iv) the costs of the action herein.

206.    In addition, Adin and Adin USA are entitled to the recovery of their attorneys' fees, costs, and expenses, and treble damages.

207.    Adin and Adin USA also seeks a preliminary and permanent injunction to prohibit Plaintiff from any further use of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or any iterations thereof, in connection with the advertising, marketing, promotion, sale, offering for sale, and/or distribution of Adin's dental implants, equipment and/or supplies or otherwise, without the express written consent of Adin and/or Adin USA in advance.

### TWELFTH COUNTERCLAIM
[Use of Name with Intent to Deceive (N.Y. Gen. Bus. Law § 133)]

208.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

209.    Plaintiff's use of the Adin Marks as and/or as part of its trade name is likely to deceive or mislead the public as to the identity of Plaintiff and/or the connection of Plaintiff with Adin and Adin USA, in violation of N.Y. Gen. Bus. Law § 133.

210.    As detailed *supra*, Adin repeatedly demanded that Plaintiff cease and desist using the Adin Marks as and/or as part of its trade name.

211.    The deceptive business acts and/or practices of Plaintiff have caused and will continue to cause Adin and Adin USA irreparable harm.

212.    As a result of the violation of N.Y. Gen. Bus. Law § 133 by Plaintiff, Adin and Adin USA are entitled to a judgment enjoining and restraining Plaintiff from engaging in further use of the Adin Marks as, or as part of, its trade name.  Adin and Adin USA seek a preliminary

and permanent injunction to prohibit Plaintiff from any further use of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or any iterations thereof, in connection with the advertising, marketing, promotion, sale, offering for sale, and/or distribution of Adin's dental implants, equipment and/or supplies or otherwise, without the express written consent of Adin and/or Adin USA in advance.

### THIRTEENTH COUNTERCLAIM
[Unjust Enrichment]

213.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

214.    Plaintiff has received and taken customers, business contacts, intellectual property, fees, property and other things of value from Adin and Adin USA to which it was not entitled, and received the benefit of credit and goods advanced without repaying same, and from which Plaintiff has wrongfully benefitted.

215.    As detailed *supra*, Adin repeatedly demanded that Plaintiff cease and desist the aforesaid acts and omissions that resulted in above-alleged wrongful benefits to Plaintiff.

216.    As a direct and proximate result of the wrongful taking of these things of value by Plaintiff and from the wrongful benefits which it has received, Adin and Adin USA have been damaged and Plaintiff has been unjustly enriched.

217.    To allow Plaintiff to keep the wrongful benefits it has received would unjustly enrich Plaintiff to the severe detriment of Adin and Adin USA, and in equity and good conscience, Plaintiff should not be permitted to retain such benefits.

218.    As a result of Plaintiff's actions, Adin and Adin USA have been injured and are entitled to damages in an amount not less than $1 million.

## FOURTEENTH COUNTERCLAIM
[Tortious Interference with a Prospective Economic Advantage]

219.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

220.    On information and belief, upon notice from Adin of termination of the agreement between Plaintiff and Adin, Plaintiff, knew and had known that Adin and Adin USA are the only entities with the right and authority to use the Adin Marks in commerce.

221.    As detailed *supra*, after Adin sent notice of termination to Plaintiff, Adin repeatedly demanded that Plaintiff: a) cease and desist using the Adin Marks; b) stop selling Adin's products; c) return Adin's products to Adin; d) pay Adin $458,978 owed to Adin within fourteen (14) days; and e) turn over the domain www.adininplants.com to Adin.

222.    On information and belief, Plaintiff committed acts intended or designed to disrupt the prospective economic advantage of Adin and Adin USA arising from licensing, advertising, marketing, selling and/or providing goods or services in connection with the Adin Marks.

223.    Plaintiff's actions have disrupted or are intended to disrupt the business of Adin and Adin USA by, among other things, diverting customers away from genuine authorized services and products that use the Adin Marks and Adin goods to market, distribute, and sell unauthorized services and products of Plaintiff using the same.

224.    Plaintiff has no legal right, privilege or justification for its conduct.

225.    As a direct and proximate result of the intentional interference with the prospective economic advantage of Adin and Adin USA by Plaintiff, Adin and Adin USA have suffered, and will continue to suffer, monetary damages and irreparable injury.

226.    Based on the intentional, willful and malicious nature of Plaintiff's actions, Adin and Adin USA are entitled to recover exemplary damages and reasonable attorneys' fees and costs incurred in connection with this action.

## FIFTEENTH COUNTERCLAIM
[Trespass to Chattels]

227.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

228.    Plaintiff's actions as set forth above constitute a trespass to chattels which are the property of and belong to Adin and Adin USA.

229.    By reason of the foregoing, Adin and Adin USA have been injured and are entitled to damages to be determined at trial.

## SIXTEENTH COUNTERCLAIM
[Common Law Unfair Competition]

230.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

231.    By reason of the foregoing, Plaintiff has been, and is, engaged in acts of unfair competition in violation of the common law.

232.    Upon information and belief, by virtue of Plaintiff's unlawful conduct, Plaintiff has made or will make substantial profits and gains to which it is not in law or equity entitled.

233.    The aforesaid conduct of Plaintiff has caused Adin and Adin USA irreparable harm and, unless enjoined, will continue to cause Adin and Adin USA irreparable harm, for which they no adequate remedy at law.

## SEVENTEENTH COUNTERCLAIM
[Accounting]

234.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

235.    Plaintiff repeatedly represented to the public that it was Adin's corporate entity throughout the United States. As such, Plaintiff was a fiduciary of Adin.

236.    Further, Plaintiff was to sell Adin's products on consignment, yet as detailed *supra*, Plaintiff held and never returned Adin's products; sold some of Adin's products; and refused to pay Adin for the sales Plaintiff did make.

237.    Additionally, as detailed *supra*, Plaintiff continues to improperly use the Adin Marks.

238.    Adin is entitled to an accounting of Plaintiff's sales, collections, receipts, disbursements, charges, payments, and profits in specific detail with respect to the products and services that were the subject of the agreements.

239.    Adin and Adin USA are entitled to an accounting with respect to Plaintiff's unreported sales and acts of infringement.

240.    As Adin and Adin USA are currently unaware of the full extent of Plaintiff's unauthorized sales and Plaintiff's acts of infringement, Adin and Adin USA are entitled to discovery as to same.

241.    Adin and Adin USA are entitled upon such accounting to judgment against Plaintiff, directing Plaintiff to pay over such sums as are found to be due together with costs and interests in this action or in the alternative, if not paid, to judgment against Plaintiff for the amounts shown to be due thereon.

242.    Adin and Adin USA have no adequate remedy at law.

## EIGHTEENTH COUNTERCLAIM
[Breach of Contract]

243.    Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

244.    Mr. Danzer was promised by Dr. Weitz and Plaintiff a written contract of employment.

245.    Nonetheless, Mr. Danzer worked for Plaintiff for a number of years, and contractual terms arose out of a combination of the oral representations made by Dr. Weitz to Mr. Danzer and his wife in the first quarter of 2012 and the subsequent course of conduct of Plaintiff and Mr. Danzer.

246.    Under these contractual terms, Plaintiff was obligated to pay commissions to Mr. Danzer for all sales by Plaintiff, provide health and dental insurance, make matching contributions to Mr. Danzer's 401k account, and provide Mr. Danzer with ownership of a percentage of Plaintiff's stock.

247.    The agreement that Plaintiff would pay commissions to Mr. Danzer for all sales by Plaintiff, provide health and dental insurance, make matching contributions to Mr. Danzer's 401k account, and provide Mr. Danzer with ownership of a percentage of Plaintiff's stock constitutes a valid and enforceable contract.

248.    Mr. Danzer fully complied with the terms of the agreement with Plaintiff.

249.    Ireliance on the promises of Dr. Weitz and Plaintiff as well as the resulting contract with Plaintiff, Mr. Danzer left his prior employment and worked exclusively for Plaintiff.

250.     Plaintiff is in breach of its agreement with Mr. Danzer, having failed to pay him amounts owed for commissions, provide health and dental insurance, make matching contributions to Mr. Danzer's 401k account, and provide Mr. Danzer ownership of a percentage of Plaintiff's stock.

251.     As a direct and proximate result of the above-described breaches, Mr. Danzer suffered damages in an amount to be determined at trial, but in no event less than $400,000 plus the value of his portion of Plaintiff's stock.

## NINETEENTH COUNTERCLAIM
[Promissory Estoppel]

252.     Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

253.     Plaintiff and Dr. Weitz unambiguously promised Mr. Danzer that Plaintiff would pay commissions to Mr. Danzer for all sales by Plaintiff, provide health and dental insurance, make matching contributions to Mr. Danzer's 401k account, and provide Mr. Danzer with ownership of a percentage of Plaintiff's stock.

254.     In reasonable and foreseeable reliance on the promises of Plaintiff and Dr. Weitz, Mr. Danzer quit his prior employment and worked exclusively for the benefit of Plaintiff, originating extensive sales and significant revenue for the benefit of Plaintiff.

255.     As a direct and proximate result of Mr. Danzer's reliance on the promises made by Plaintiff and Dr. Weitz, and the actions he reasonably and foreseeably undertook as a result, Mr. Danzer has suffered damages in an amount to be determined at trial, but in no event less than $400,000 plus the value of Plaintiff's stock.

## TWENTIETH COUNTERCLAIM
[Quantum Meruit]

256.    Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

257.    As detailed herein, Mr. Danzer performed services, in good faith, on behalf of Plaintiff.

258.    The services performed by Mr. Danzer were accepted by Plaintiff.

259.    Mr. Danzer had a reasonable expectation that he would be compensated for the services rendered on behalf of Plaintiff, based on, inter alia, express promises made by Plaintiff and Dr. Weitz, and on the course of conduct between the parties.

260.    The reasonable value of the services rendered by Mr. Danzer, less compensation already received, is in an amount to be determined at trial, but in no event less than $400,000.

## TWENTY-FIRST COUNTERCLAIM
[Unjust Enrichment]

261.    Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

262.    As detailed herein, Mr. Danzer performed services, in good faith, on behalf of Plaintiff.

263.    The services performed by Mr. Danzer were accepted by Plaintiff.

264.    Plaintiff is unfairly benefitting from the services provided by Mr. Danzer, in that it has failed to pay commissions to Mr. Danzer for all sales by Plaintiff, provide health and dental insurance, make matching contributions to Mr. Danzer's 401k account, and provide Mr. Danzer

with ownership of a percentage of Plaintiff's stock.  Mr. Danzer would not have acted to make or assist in the making of the sales at issue but for the understanding that Plaintiff would pay him appropriate consideration.

265.     Accordingly, Plaintiff has been unfairly enriched in an amount to be determined at trial, but in no event less than $400,000.

## TWENTY-SECOND COUNTERCLAIM
[New York State Labor Law for Commissions]

266.     Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

267.     Mr. Danzer is a "commissioned salesperson" within the meaning of Sections 190(6) and 191(c), and otherwise as referenced in the New York State Labor Law.

268.     Contrary to Section 191(c) of the New York State Labor Law, the agreed terms of employment between Plaintiff and Mr. Danzer was not reduced to writing and kept on file by Plaintiff. Accordingly, Mr. Danzer is entitled to a presumption that he is accurately presenting the agreed terms of employment.

269.     Pursuant to the agreed terms of employment, as set forth in oral discussions and the course of conduct between the parties, Plaintiff was to provide commissions to Mr. Danzer on all of Plaintiff's sales, provide health and dental insurance, make matching contributions to Mr. Danzer's 401k account, and provide Mr. Danzer with ownership of a percentage of Plaintiff's stock.  Said commissions were to be paid on a monthly basis in the month following when payment was received by Plaintiff.

270.     Section 191(3) of the New York State Labor Law provides in part that "[i]f employment is terminated, the employer shall pay the wages not later than the regular pay day for

the period during which the termination occurred, as established in accordance with the provisions of this section."

271.    Mr. Danzer has received no commission payments since Plaintiff terminated his employment on September 15, 2016.

272.    Pursuant to Section 191(c) of the New York State Labor Law, Mr. Danzer is entitled to recover all commissions due and owing to him. This is true with respect to commissions that were already due and owed to him as of the date of his termination, and with respect to all commissions that have come due and owing since that date.

273.    Pursuant to Section 198(1-a) of the New York State Labor Law, in addition to the full amount of any underpayment of wages, Mr. Danzer further entitled to recover all reasonable attorneys' fees incurred in connection with his claim and prejudgment interest.

274.    On information and belief, Plaintiff's withholding of commissions due and owing to Mr. Danzer has been willful and Plaintiff did not have a good faith basis to believe that its underpayment of commissions was in compliance with the law.  Accordingly, in addition to the commissions and attorneys' fees as set forth above, Mr. Danzer is entitled to liquidated damages under Section 198(1-a) of the New York State Labor Law in the amount of one hundred percent of the commissions and other wages ultimately found to be due.

## TWENTY-THIRD COUNTERCLAIM
[Fraud]

275.    Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

276.    In the first quarter of 2012, Plaintiff and Dr. Weitz misrepresented to Mr. Danzer that Plaintiff would pay him $180,000.00 per year as well as commissions greater than Mr.

Danzer's commission rate at his prior employer, and benefits, including health and dental insurance, matching contributions to Mr. Danzer's 401k account, and ownership of a percentage of Plaintiff's stock.

277.   Both the amount of compensation and the benefits were material to Mr. Danzer's acceptance of Plaintiff's offer of employment.

278.   Plaintiff and Dr. Weitz either knew that their representations concerning the amount of compensation and the benefits were false when they made the offer or they acted recklessly as to the truth or falsity of these representations.

279.   Plaintiff and Dr. Weitz intentionally misrepresented the amount of compensation and the benefits in order to induce Mr. Danzer's reliance on the oral offer.

280.   Mr. Danzer justifiably relied on the misrepresentations, quitting his job in reliance on same and starting to work for Plaintiff.

281.   Mr. Danzer's reliance on the misrepresentations caused him to suffer damages in an amount to be determined at trial.

## TWENTY-FOURTH COUNTERCLAIM
[Negligent Misrepresentation]

282.   Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

283.   Plaintiff and Dr. Weitz materially misrepresented to Mr. Danzer that Plaintiff would pay him $180,000.00 as well as commissions greater than Mr. Danzer's commission rate at his prior employer, and benefits, including health and dental insurance, matching contributions to Mr. Danzer's 401k account, and ownership of a percentage of Plaintiff's stock.

284.    Plaintiff and Dr. Weitz failed to exercise reasonable care or competence in communicating the amount of compensation and the benefits to Mr. Danzer when they made said offer.

285.    Plaintiff and Dr. Weitz made the aforesaid misrepresentations with the intent to induce Mr. Danzer's reliance.

286.    As a result of Mr. Danzer's justifiable reliance on the misrepresentations of Plaintiff and Dr. Weitz, Mr. Danzer has suffered damages to be determined at trial.

## TWENTY-FIFTH COUNTERCLAIM
[Conversion]

287.    Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

288.    At all times relevant, Mr. Danzer was the owner of his assets and property, including but not limited to money due and owing to him as fees, reimbursement or commissions from various sales; his customer lists and records which were taken by Plaintiff without authorization; and other personal property that belongs to Mr. Danzer.

289.    Mr. Danzer is, and continues to be, entitled to immediate possession of all such assets and property.

290.    Similarly, Mr. Danzer owns all business opportunities and customer lists that were developed by him prior to his hiring by Plaintiff, including good will from the customers that Mr. Danzer developed.

291.    Plaintiff has intentionally and unlawfully exercised ownership, dominion and control over Mr. Danzer's assets and property, in denial and repudiation of his rights thereto.

292.     As a result of the foregoing Mr. Danzer has been injured and is entitled to damages to be determined at trial.

## TWENTY-SIXTH COUNTERCLAIM
[Trespass to Chattels]

293.     Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

294.     Plaintiff's actions set forth above constitute a trespass to chattels which are the property of and belong to Mr. Danzer.

295.     By reason of the foregoing, Mr. Danzer has been injured and is entitled to damages to be determined at trial.

## TWENTY-SEVENTH COUNTERCLAIM
[Accounting]

296.     Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

297.     Pursuant to the agreement of Plaintiff and Mr. Danzer and subject to the New York State Labor Law, Plaintiff was required to make certain commission payments to Mr. Danzer. Plaintiff has not made such payments and has not provided records of payments owed. Accordingly, and under the circumstances set forth herein, Mr. Danzer is entitled to a full accounting of all sales by Plaintiff during Mr. Danzer's employment, all payments remitted to Plaintiff by customers during Mr. Danzer's employment, all commissions paid to Mr. Danzer, and all commissions owed to Mr. Danzer in order to determine whether appropriate amounts have been paid.

## **PRAYER FOR RELIEF**

WHEREFORE, Adin, Adin USA, and Mr. Danzer pray that this Court enter judgment against Plaintiff and Dr. Weitz, jointly and severally, as follows:

1. Holding Plaintiff liable for breach of contract;

2. Holding Plaintiff liable for trademark infringement for its sales of the products of Adin and Adin USA after the termination of the applicable agreements;

3. Directing Plaintiff to pay the entire remaining unpaid $458,978.00 balance for the products received pursuant to the agreements, and directing Plaintiff to confess judgment for such amounts;

4. Finding that Plaintiff has violated 15 U.S.C. § 1125(a) and the common law; willfully infringed the Adin Marks under 15 U.S.C. § 1114 and the common law; willfully diluted the distinctive quality of the Adin Marks under 15 U.S.C. § 1125(c) and N.Y. Gen. Bus. Law § 360-l; engaged in unfair competition and deceptive business practices under N.Y. Gen. Bus. Law § 349 and the common law; and engaged in tortious interference with existing contractual relationships and intentional interference with prospective economic advantage;

5. Finding that this case is "Exceptional" within the meaning of 15 U.S.C. § 1117(a) and awarding Adin and Adin USA reasonable attorneys' fees, costs and expenses incurred in connection with this action;

6. Forthwith permanently enjoining and restraining Plaintiff and its officers, managers, members, agents, directors, employees, licensees, servants, partners, representative, assigns, successors, related companies, and attorneys and all persons in active concert or participation with it, from:

a. Falsely associating the Adin Marks or the predominate ADIN portion of either or both of the Adin Marks with Plaintiff or its business or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Adin and/or Adin USA and from otherwise interfering with or injuring the Adin Marks or the good will associated therewith;

b. Licensing, offering to license, using, promoting, advertising, publicizing, distributing, and posting any of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or any other mark, designation, name, symbol, or logo that is a copy or colorable imitation of, incorporate, dilutes, or is confusingly similar to the Adin Marks for any good or service;

c. Engaging in any act which is likely to dilute the distinctive quality of the Adin Marks and/or injures the business reputation of Adin and/or Adin USA;

d. Representing or implying that Plaintiff is in any way related to, affiliated with, in contract with, connected with, associated, with, in partnership with, or retained by Adin and/or Adin USA;

e. Applying to register the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or any other reproduction, counterfeit, copy, or colorable imitation of the Adin Marks as a mark, business name, domain name, keyword, metatag, search term or any other designation with any governmental authority or Internet registry; and

    f.   Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 6(a) to (e) above;

7.    Pursuant to 15 U.S.C. § 1118, ordering that Plaintiff, its officers, agents, directors, employees, licensees, servants, partners, representative, assigns, successors, related companies, and attorneys and all persons in active concert or participation with it, deliver up for destruction all goods, packaging, containers, literatures, brochures, business cards, labels, signs, prints, wrappers, receptacles and other advertising and promotional materials bearing or otherwise using the Adin Mark, the predominate ADIN portion of either or both of the Adin Marks, and/or other words, symbols, colors, or marks of any type, or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates and models;

8.    Pursuant to 15 U.S.C. § 1116, Plaintiff be directed to file with this Court and serve upon Adin and Adin USA within ten (10) days after service of the injunction a report in writing under oath that sets forth in detail the manner and form in which Plaintiff has complied with the injunction;

9.    Pursuant to 15 U.S.C. § 1117, Plaintiff be directed to pay an amount equal to: 1) Plaintiff's profits from the sale of infringing goods; 2) any damages sustained by Adin and Adin USA; and 3) the costs of the action;

10.    Pursuant to 15 U.S.C. § 1117, Plaintiff be directed to pay an amount equal to three times its profits or the damages of Adin and Adin USA, whichever is greater, together with reasonable attorneys' fees, costs, and expenses;

11.    Ordering that Adin and/or Adin USA are the only owners of the Adin Marks and that such rights are valid and protectable;

12.     Pursuant to 15 U.S.C. § 1125(d)(1)(C), Plaintiff, its officers, managers, members, agents, directors, employees, licensees, servants, partners, representative, assigns, successors, related companies, and attorneys and all persons in active concert or participation with it be forthwith directed to transfer the Internet web address of http://www.adinimplants.com and all other addresses incorporating the Adin Marks or substantial portions of same to Adin;

13.     Granting Adin and Adin USA punitive damages under New York General Business Law;

14.     Granting Adin and Adin USA pre-judgment and post-judgment interest on any recovery at the maximum rate permitted by law;

15.     Granting reasonable attorneys' fees, costs and expenses to Adin and/or Adin USA;

16.     Granting Mr. Danzer liquidated and compensatory damages;

17.     Returning to Mr. Danzer his property wrongfully taken or being held by Plaintiff;

18.     Temporary, preliminary and permanent enjoining Plaintiff from using Mr. Danzer's customer lists and proprietary information;

19.     Granting Mr. Danzer the full amount of any underpayment of wages, liquidated damages under Section 198(1-a) of the New York State Labor Law in the amount of one hundred percent of the commissions and other wages ultimately found to be due, all reasonable attorneys' fees incurred in connection with his claim, prejudgment interest;

20.     Returning to Mr. Danzer his assets and property, including but not limited to money due and owing to him as fees, reimbursement or commissions from various sales; his customer lists and records which were taken by Dr. Weitz and/or without authorization; and other personal property; and

21.     Granting such other and further relief as the Court finds just and proper.

## THIRD-PARTY COMPLAINT

Defendants/Third-Party Plaintiffs Adin Dental Implant Systems, Inc. ("Adin"), Adin Dental Solutions USA, Inc. ("Adin USA"), and Jeremy Danzer ("Mr. Danzer") by and through their attorneys Mueller Law Group, by way of Third-Party Complaint against Third-Party Defendants Osseogroup LLC ("Osseogroup") and Dr. Markus Weitz, allege as follows:

A. THE PARTIES

1.      Defendant/Third-Party Plaintiff, Adin Dental Implant Systems, Inc. is an Israeli corporation located at Industrial Zone Alon Tavor, POB 1128, Afula 1811101, Israel.

2.      Defendant/Third-Party Plaintiff, Adin Dental Solutions USA, Inc. is a corporation organized and existing under the laws of the State of New Jersey.

3.      Defendant/Third-Party Plaintiff, Jeremy Danzer, resides at 1070 Allessandrini Avenue, New Milford, New Jersey 07646.

4.      Third-Party Defendant, Osseogroup, is a limited liability company organized and existing under the laws of the State of New York.

5.      Osseogroup was initially incorporated on or around March 21, 2016.

6.      Under information and belief, Osseogroup is, and at all times alleged was, organized by individual third-party defendant, Markus Weitz, D.D.S. ("Dr. Weitz"), as his alter ego because a unity of interest and ownership exists such that any individuality and separateness of Osseogroup and Dr. Weitz has ceased, Dr. Weitz exercised complete domination over Osseogroup, and an adherence to the fiction of Osseogroup's separateness would promote injustice.

7.      Adherence to the fiction of the separate existence Osseogroup as an entity distinct and apart from Dr. Weitz would permit an abuse of the corporate privilege and would promote

injustice in that Dr. Weitz has used Osseogroup for, among other reasons, a means of depriving Adin and Adin USA of the Adin Marks.

8.     Upon information and belief, Osseogroup's headquarters are located at 123 Grove Avenue, Suite 109, Cedarhurst, New York 11516.

9.     Third-Party Defendant, Dr. Markus Weitz, is an individual with a primary place of business at 657 Central Avenue, Cedarhurst, New York 11516.

### B.   JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction of this civil action under 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367(a).

11.     The amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

12.     Venue in this Court is proper under 28 U.S.C. §§ 1391(b) and (c).

13.     Plaintiff, Osseogroup and Dr. Weitz have committed acts of trademark infringement in this judicial district and Dr. Weitz is directly and vicariously liable for the acts and omissions of Plaintiff and Osseogroup as set forth in the counterclaims and herein.

### C.   FACTS COMMON TO ALL COUNTS OF THE THIRD-PARTY COMPLAINT

14.     Adin, Adin USA, and Mr. Danzer repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

## FIRST COUNT
### [Fraud]

15.     Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

16.     Due to the acts set forth herein committed by Dr. Weitz with gross malice and with the intention of misappropriating Adin's products and the Adin Marks, Adin has been defrauded due to the loss of sales and market growth.

17.     Dr. Weitz defrauded Adin by making material misrepresentations to and concealed or suppressed material facts from Adin.   Such misrepresentations and concealed and/or suppressed material facts include those detailed throughout the "Facts Common to All Counterclaims", *supra*.

18.     Dr. Weitz defrauded Adin by mispresenting that he and Plaintiff would develop a business selling Adin's dental implants throughout the United States in the following, non-exhaustive list of particulars:

    a.   he had sufficient connections to develop such a distribution business and would use same;

    b.   he had sufficient funds to develop such a distribution business and would do so; and

    c.   he had sufficient time and effort to develop such a distribution business and would do so.

19.     Dr. Weitz either lacked sufficient connections, funds, time and effort to develop a business selling Adin's dental implants throughout the United States or he did not use sufficient connections, funds, time and effort to develop a business selling Adin's dental implants

throughout the United States.  This harmed Adin's business, sales efforts, and reputation; and radically limited Adin's growth trajectory.

20.     Adin would not have entered into relationship wherein Plaintiff served as Adin's exclusive distributor in the United States or even provided Adin's products to Plaintiff to market and sell, had it known the truth that Dr. Weitz was misrepresenting that he would engage in the aforesaid acts or that he would direct Plaintiff sell Adin's products and keep the proceeds.

21.     As a result of the foregoing, Adin has sustained damages in an amount to be determined at trial.

## SECOND COUNT
[Negligent Misrepresentation]

22.     Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

23.     As detailed *supra*, Dr. Weitz made representations to Adin regarding the contributions he would make to develop a business to distribute Adin's dental implants and accessories throughout the United States.  Said representations appear *supra* in the "Facts Common to All Counterclaims".

24.     A special relationship of trust and confidence existed between Dr. Weitz and Adin due to the former's purported specialized expertise as to the nature and requirements of the dental products market within the United States.

25.     If Dr. Weitz's misrepresentations were not intentionally or recklessly made, then Dr. Weitz was negligent in making false, incomplete, and misleading statements regarding its

resources, capabilities, and willingness to develop a business to distribute Adin's dental implants and accessories throughout the United States.  Adin relied on said misrepresentations.

26.     The factual representations by Dr. Weitz were material and were false and misleading. Dr. Weitz failed to exercise reasonable care or competence in making these representations and in ascertaining or failing to ascertain the truth or falsity of his representations.

27.     Dr. Weitz made these false, misleading, and incomplete representations of fact with the intent to influence the actions of Adin.

28.     Dr. Weitz stood to gain financially if Adin agreed to enter into the relationship with Plaintiff as described in the "Facts Common to All Counterclaims", and he did indeed gain from Adin's entry into said relationship.

29.     Dr. Weitz knew that Adin would rely on his false representations in agreeing to enter into the relationship with Plaintiff as described in the "Facts Common to All Counterclaims".

30.     Adin reasonably and justifiably relied on Dr. Weitz's misrepresentations in agreeing to enter into the relationship with Plaintiff described in the "Facts Common to All Counterclaims" and Dr. Weitz intended for Adin to rely on such representations and knew that Adin would rely on such representations.

31.     At the time Adin agreed to enter into said relationship with Plaintiff, Adin was unaware of the true facts and would have acted differently if it had known the true facts.

32.     As a result of Adin's reliance upon Dr. Weitz's misrepresentations, Adin has suffered damages in an amount to be proved at trial.

## THIRD COUNT
[Promissory Estoppel]

33.     Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

34.     Dr. Weitz made a clear and definite promise to develop a business to distribute Adin's dental products throughout the United States.  Specifically, Dr. Weitz promised he would invest sufficient money, time and effort and would use the aforesaid connections to develop such a business.

35.     Adin reasonably relied on the aforesaid promises. Adin incurred significant costs by, among other things: a) providing its products to Plaintiff at reduced prices for sale throughout the United States; b) foregoing selling its products to any other distributor in the United States; c) extending Plaintiff a significant line of credit; and d) agreeing to indemnify Plaintiff and warranty Adin's products.

36.     As a result of Adin's reasonable reliance on Dr. Weitz's false and misleading promises, it suffered definite and substantial detriment when Dr. Weitz failed to adhered to the aforesaid promises and when Dr. Weitz engaged in a long-term pattern of deception and bait-and-switch negotiation tactics to wrest contractual commissions from Adin.  Adin suffered economic losses as a result of the amounts it expended to produce and deliver its products to Plaintiff, also lost out on business opportunities because of its allocation of markets and opportunities to Plaintiff because of its reasonable expectation and reliance that Plaintiff would distribute, market and sell Adin's products throughout the United States pursuant to the promises of Dr. Weitz.

37.     As a result of Adin's reliance on Dr. Weitz's aforesaid promises, it suffered definite and substantial detriment when Dr. Weitz ultimately lacked the resources, capabilities, or commitment he had promised.

38.     Adin's business and opportunities throughout the United States were negatively impacted by Dr. Weitz's lack of resources, capabilities, or commitment.  Dr. Weitz's broken promises resulted in Adin suffering from, among other things, diminished sales, lost opportunities, the alienation of customers and other reputational injuries as a result of its reliance upon Dr. Weitz's promises.

## FOURTH COUNT
[Trademark Infringement (15 U.S.C. § 1114)]

39.     Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

40.     Despite knowledge of Adin's rights in the Adin Marks, Osseogroup and Dr. Weitz have, without the consent of either Adin or Adin USA, used after both the notice of termination and repeated cease and desist letters referenced *supra* from Adin and Adin USA to Plaintiff and continue to use in commerce, the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or counterfeits, copies, reproductions, or colorable imitations thereof in connection with the sale, offering for sale, distribution, and/or advertising of goods and services.

41.     The actions of Osseogroup and Dr. Weitz constitute willful infringement of the exclusive rights of Adin and Adin USA in the Adin Marks in violation of 15 U.S.C. § 1114.

42.     The use by Osseogroup and Dr. Weitz of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, counterfeits, copies, reproductions, or colorable

imitations thereof, has been and continues to be done with the intent to cause confusion, mistake, and to deceive consumers or potential consumers concerning the source and/or sponsorship of goods and services of Osseogroup and Dr. Weitz.

43.     As a direct and proximate result of the conduct of Osseogroup and Dr. Weitz, Adin and Adin USA have been, are now, and will be irreparably injured and damaged by the trademark infringements of Osseogroup and Dr. Weitz.  In addition to sales of the products of Adin and Adin USA, which have been and will be diverted to Osseogroup and Dr. Weitz as a result of consumer confusion, the trademarks of Adin and Adin USA serve a unique function in representing intangible assets of Adin and Adin USA such as their reputation and good will.  Unless enjoined by the Court, Adin and Adin USA will suffer further harm to their reputation, and good will each and every day that Osseogroup and Dr. Weitz continue to use the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or any mark confusingly similar to the Adin Marks in connection with the sale, offering for sale, distribution, and/or advertising of their competing goods and services.  The past, present, and in particular future harm to the reputation and good will of Adin and Adin USA is difficult to value and therefore constitutes an injury for which Adin and Adin USA have no adequate remedy at law.

44.     By reason of the foregoing, Osseogroup and Dr. Weitz have committed and are continuing to commit trademark infringement in violation of 15 U.S.C. § 1114.  As a direct and proximate result of the conduct of Osseogroup and Dr. Weitz, Adin and Adin USA are entitled, pursuant to 15 U.S.C. § 1117(a), to recovery of: (i) the profits of Osseogroup and Dr. Weitz related to all uses of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and any mark confusingly similar to the Adin Marks; (ii) any damages sustained by Adin and

Adin USA as a result of the conduct of Osseogroup and Dr. Weitz, the precise amount of which shall be established by Adin and Adin USA at trial; and (iii) the costs of the action herein.

45.     Adin and Adin USA are also entitled to the recovery of their attorneys' fees, costs and expenses pursuant to 15 U.S.C. § 1117.

46.     Adin and Adin USA also seeks a preliminary and permanent injunction to prohibit Osseogroup and Dr. Weitz from any further use of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and any mark confusingly similar to the Adin Marks, or any iterations and transliterations thereof, in connection with the advertising, marketing, promotion, sale, offering for sale, and/or distribution of Adin's dental implants, equipment and/or supplies or otherwise, without the express written consent of Adin and/or Adin USA in advance.

## FIFTH COUNT
[False Designation of Origin (15 U.S.C. § 1125(a))]

47.     Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

48.     Osseogroup and Dr. Weitz have knowingly used and continue to use the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or counterfeits, reproductions, copies, or colorable imitations thereof, in connection with the goods and services that Osseogroup and Dr. Weitz advertise, promote, and sell.  As such, the acts of Osseogroup and Dr. Weitz render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

49.     The use of the Adin Marks or the predominate ADIN portion of either or both of the Adin Marks by Osseogroup and Dr. Weitz as alleged above, is likely to cause confusion, to cause mistake, and/or to deceive customers, prospective customers, purchasers, and members of

the general public as to the source, sponsorship, affiliation, connection, or association of Osseogroup and Dr. Weitz with Adin and Adin USA, and/or as to the origin, sponsorship, or approval of the product(s) of Osseogroup and Dr. Weitz by Adin and/or Adin USA and constitute a false designation of origin and/or sponsorship of the goods of Osseogroup and Dr. Weitz in violation of 15 U.S.C. § 1125(a).

50.     Adin and Adin USA have been, are now, and will be irreparably injured and damaged by the trademark infringement of Osseogroup and Dr. Weitz.  In addition to the sales of Adin and Adin USA, which have been and will be diverted to Osseogroup and Dr. Weitz as a result of consumer confusion, the trademarks of Adin and Adin USA serve a unique function in representing intangible assets of Adin and Adin USA such as their reputations and good will. Unless enjoined by the Court, Adin and Adin USA will suffer further harm to their reputation, and good will each and every day that Osseogroup and Dr. Weitz continue to use Adin Marks or the predominate ADIN portion of either or both of the Adin Marks in connection with the sale, offering for sale, distribution, and/or advertising of their competing goods and services.  The past, present, and in particular future harm to the reputation and good will of Adin and Adin USA is difficult to value and therefore constitutes an injury for which Adin and Adin USA have no adequate remedy at law.

51.     By reason of the foregoing, Osseogroup and Dr. Weitz have committed and are continuing to commit trademark infringement in violation of 15 U.S.C. § 1114.  As a direct and proximate result of the conduct of Osseogroup and Dr. Weitz, Adin and Adin USA are entitled, pursuant to 15 U.S.C. § 1117(a), to recovery of: (i) the profits of Osseogroup and Dr. Weitz related to all uses of the Adin Mark, the predominate ADIN portion of either or both of the Adin Marks, and any mark confusingly similar to the Adin Marks; (ii) any damages sustained by Adin and/or

Adin USA as a result of the conduct Osseogroup and Dr. Weitz, the precise amount of which shall be established by Adin and Adin USA at trial; and (iii) the costs of the action herein.

52.     In addition, Adin and Adin USA are entitled to the recovery of their attorneys' fees, costs, and expenses pursuant to 15 U.S.C. § 1117.

53.     Adin and Adin USA also seek a preliminary and permanent injunction to prohibit Osseogroup and Dr. Weitz from any further use the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or of any mark confusingly similar to the Adin Marks or any iterations thereof, in connection with the advertising, marketing, promotion, sale, offering for sale, and/or distribution of Adin's dental implants, equipment and/or supplies or otherwise, without the express written consent of Adin and/or Adin USA in advance.

54.     Because of the willful nature of the wrongful acts of Osseogroup and Dr. Weitz, Adin and Adin USA are entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

## SIXTH COUNT
[Cybersquatting (15 U.S.C. § 1125(d))]

55.     Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

56.     Plaintiff registered the domain www.adinimplants.com on July 16, 2010, which is confusingly similar to the Adin Marks and constitutes cybersquatting under 15 U.S.C. § 1125(d).

57.     On September 18, 2016, Adin notified Plaintiff that it was terminating its relationship with Plaintiff.

58.     Plaintiff, acting in concert with Osseogroup and Dr. Weitz, continues to use this domain after becoming aware that Adin had registered the Adin Marks after being served with the aforesaid termination notice and several "cease and desist" notices.  This cybersquatting is willful and deliberate.

59.     On or about March 7, 2017, Adin and Adin USA notified Plaintiff that its registration and continued use of said domain name constitutes cyber-squatting.

60.     On or about April 25, 2017, Adin and Adin USA again notified Plaintiff that it continued to use the domain name, and demanded that Plaintiff turn over same to Adin and Adin USA.

61.     Despite these notices, Plaintiff, Osseogroup and Dr. Weitz continued to use the domain name to redirect internet users to the website for Osseogroup.

62.     On or about July 13, 2017, counsel for Adin and Adin USA served a letter on Plaintiff's counsel, demanding that Plaintiff immediately remove the redirect of the domain name to the website for Osseogroup.

63.     As of August 4, 2017, the domain name has been only slightly modified, as it now directs internet users to a "404 error" page under Osseogroup's top-level domain name.

64.     Adin and Adin USA are entitled to statutory damages up to $100,000. Alternatively, Adin and Adin USA are entitled to actual damages should actual damages exceed statute limits.

65.     In addition, as a result of the willful and deliberate violation of 15 U.S.C. § 1125(d) by Plaintiff, Osseogroup, and Dr. Weitz, Adin and Adin USA are entitled to the recovery of their attorneys' fees, costs, and expenses.

66.     Adin and Adin USA also seek a preliminary and permanent injunction to prohibit Plaintiff, Osseogroup, and Dr. Weitz from any further use of www.adinimplants.com and requests that the Court order the transfer the domain name to Adin and Adin USA.

### SEVENTH COUNT
[Injury to Business Reputation and Dilution (N.Y. Gen. Bus. Law § 360-l)]

67.     Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

68.     The Adin Marks are distinctive and/or have acquired secondary meaning in the marketplace.

69.     The acts of Osseogroup and Dr. Weitz, as described above, are likely to dilute, have diluted and, unless enjoined, will continue to dilute the unique and distinctive quality of Adin's trademarks.

70.     Specifically, the use, by Osseogroup and Dr. Weitz, of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or marks that are substantially similar or virtually identical to the Adin Marks in conjunction with the offering and provision of dental supplies blur and dilute Adin's trademarks.

71.     The conduct of Osseogroup and Dr. Weitz violates N.Y. Gen. Bus. Law § 360-l.

72.     As a direct and proximate result of the willful and wanton acts and conduct of Osseogroup and Dr. Weitz, the reputation and good will of Adin and Adin USA have been damaged.

73.      The acts and conduct of Osseogroup and Dr. Weitz have caused and continue to cause irreparable injury to the reputation and good will of Adin and Adin USA, and will continue to do so unless enjoined by this Court.

74.      Adin and Adin USA have no adequate remedy at law.

## EIGHTH COUNT
[Deceptive Business Acts or Practices (N.Y. Gen. Bus. Law § 349)]

75.      Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

76.      The acts of Osseogroup and Dr. Weitz described above constitute deceptive acts or practices in the conduct of a business, trade or commerce and/or in the furnishing of services in violation of N.Y. Gen. Bus. Law § 349, as they are likely to deceive the public.

77.      The deceptive business acts and/or practices of Osseogroup and Dr. Weitz have caused and will continue to cause Adin and Adin USA irreparable harm.

78.      As detailed *supra*, Adin repeatedly demanded that Osseogroup and Dr. Weitz cease and desist the deceptive business acts and/or practices.

79.      In addition to its their actual damages, Adin and Adin USA are is entitled to a judgment enjoining and restraining Osseogroup and Dr. Weitz from engaging in further deceptive business acts and/or practices.  Adin and Adin USA seek a preliminary and permanent injunction to prohibit Osseogroup and Dr. Weitz from any further use of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or any iterations thereof, for any reason including but not limited to in connection with the advertising, marketing, promotion, sale,

offering for sale, and/or distribution of Adin's dental implants, equipment and/or supplies or otherwise, without the express written consent of Adin and/or Adin USA in advance.

80.     Osseogroup and Dr. Weitz have committed the acts alleged above willfully and knowingly and: (i) with previous knowledge of the prior right to and use of the Adin Marks by Adin; (ii) with the willful intent to trade on the good will and reputation of Adin and/or Adin; and (iii) with the willful intent to cause confusion, mistake, or deception.  As a result, Adin and Adin USA are entitled to treble damages.

81.     In addition, Adin and Adin USA are entitled to the recovery of their attorneys' fees, costs, and expenses, and any penalties for which the law provides.

## NINTH COUNT
[False Advertising (N.Y. Gen. Bus. Law § 350)]

82.     Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and in the Third-Party Complaint as if same were set forth and repeated at length herein.

83.     The unauthorized use of the Adin Marks and/or the predominate ADIN portion of either or both of the Adin Marks by Osseogroup in its advertising constitutes false advertising in violation of N.Y. Gen. Bus. Law § 350.

84.     As detailed *supra*, Adin repeatedly demanded that Plaintiff cease and desist the unauthorized use of the Adin Marks.

85.     The wrongful acts of Osseogroup have caused and will continue to cause Adin and Adin USA irreparable harm.  Adin and Adin USA have no adequate remedy at law.

86.     Adin and Adin USA are entitled to a judgment enjoining and restraining Osseogroup from engaging in further acts of false advertising.

87.     Osseogroup has committed the acts alleged above: (i) with previous knowledge of the prior right to and use of the Adin Marks by Adin and/or Adin USA; (ii) with the willful intent to trade on the good will and reputation of Adin and/or Adin USA; and (iii) with the willful intent to cause confusion, mistake, or deception.  As a result, Adin and Adin USA are entitled to: (i) an accounting of Osseogroup's sales, collections, receipts, disbursements, charges, payments, and profits in specific detail with respect to Adin's products and services; (ii) the profits of Osseogroup related to all uses of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and all iterations thereof; (iii) any damages sustained by Adin and Adin USA as a result of Osseogroup's conduct, the precise amount of which shall be established by Adin and Adin USA at trial; and (iv) the costs of the action herein.

88.     In addition, Adin and Adin USA are entitled to the recovery of their attorneys' fees, costs, and expenses, and treble damages.

89.     Adin and Adin USA also seeks a preliminary and permanent injunction to prohibit Osseogroup from any further use of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and any iterations thereof, in connection with the advertising, marketing, promotion, sale, offering for sale, and/or distribution of Adin's dental implants, equipment and/or supplies or otherwise, without the express written consent of Adin and/or Adin USA in advance.

## TENTH COUNT
[Use of Name with Intent to Deceive (N.Y. Gen. Bus. Law § 133)]

90.     Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in Third-Party Complaint as if same were set forth and repeated at length herein.

91.     Osseogroup's use of the Adin Marks as and/or as part of its trade name is likely to deceive or mislead the public as to the identity of Osseogroup and/or the connection of Osseogroup with Adin and/or Adin USA, in violation of N.Y. Gen. Bus. Law § 133.

92.     As detailed *supra*, Adin repeatedly demanded that Osseogroup cease and desist using the Adin Marks as and/or as part of its trade name.

93.     The deceptive business acts and/or practices of Osseogroup have caused and will continue to cause Adin and/or Adin USA irreparable harm.

94.     As a result of the violation of N.Y. Gen. Bus. Law § 133 by Osseogroup, Adin and Adin USA are entitled to a judgment enjoining and restraining Osseogroup from engaging in further use of the Adin Marks as, or as part of, its trade name.  Adin and Adin USA seek a preliminary and permanent injunction to prohibit Osseogroup from any further use of the Adin Marks, the predominate ADIN portion of either or both of the Adin Marks, and/or any iterations thereof, in connection with the advertising, marketing, promotion, sale, offering for sale, and/or distribution of Adin's dental implants, equipment and/or supplies or otherwise, without the express written consent of Adin and/or Adin USA in advance.

## ELEVENTH COUNT
[Unjust Enrichment]

95.     Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

96.     Osseogroup and Dr. Weitz have received and taken sales, customers, business contacts, intellectual property, fees, property and other things of value from Adin and Adin USA

to which they were not entitled, and received the benefit of credit and goods advanced without repaying same, and from which the Osseogroup and Dr. Weitz have wrongfully benefitted.

97.     As detailed *supra*, Adin repeatedly demanded that Osseogroup and Dr. Weitz cease and desist the aforesaid acts and omissions that resulted in above-alleged wrongful benefits to Osseogroup and Dr. Weitz.

98.     As a direct and proximate result of the wrongful taking of these things of value by Osseogroup and Dr. Weitz and from the wrongful benefits which they have received, Adin and Adin USA have been damaged and Osseogroup and Dr. Weitz have been unjustly enriched.

99.     To allow Osseogroup and Dr. Weitz to keep the wrongful benefits they have received would unjustly enrich Osseogroup and Dr. Weitz to the severe detriment of Adin and Adin USA, and in equity and good conscience, Osseogroup and Dr. Weitz should not be permitted to retain such benefits.

100.    As a result of the actions of Osseogroup and Dr. Weitz, Adin and Adin USA have been injured and are entitled to damages in an amount not less than $1 million.

## TWELFTH COUNT
[Tortious Interference with a Prospective Economic Advantage]

101.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained the Third-Party Complaint as if same were set forth and repeated at length herein.

102.    On information and belief, upon notice from Adin of termination of the agreement between Plaintiff and Adin, Osseogroup and Dr. Weitz knew and had known that Adin and Adin USA are the only entities with the right and authority to use the Adin Marks in commerce.

103.    As detailed supra, after Adin sent notice of termination to Plaintiff, Adin served more than one notice on Dr. Weitz demanding that he: a) cease and desist using the Adin Marks; b) stop selling Adin's products; c) return Adin's products to Adin; d) pay Adin $458,978 owed to Adin within fourteen (14) days; and e) turn over the domain www.adininplants.com to Adin.

104.    To-date Osseogroup and Dr. Weitz continue to use the Adin Marks.

105.    To-date Osseogroup and Dr. Weitz have not turned over the domain www.adinimplants.com.

106.    On information and belief, Osseogroup and Dr. Weitz committed acts intended or designed to disrupt the prospective economic advantage of Adin and Adin USA arising from licensing, advertising, marketing, selling and/or providing goods or services in connection with the Adin Marks.

107.    The actions of Osseogroup and Dr. Weitz have disrupted or are intended to disrupt the business of Adin and Adin USA by, among other things, diverting customers away from genuine authorized services and products using the Adin Marks and/or the predominate ADIN portion of either or both of the Adin Marks to the market, distribute, and sell unauthorized services and products of Osseogroup and Dr. Weitz using the same.

108.    Osseogroup and Dr. Weitz have no legal right, privilege or justification for their conduct.

109.    As a direct and proximate result of the intentional interference with the prospective economic advantage of Adin and Adin USA by Osseogroup and Dr. Weitz, Adin and Adin USA have suffered, and will continue to suffer, monetary damages and irreparable injury.

110.    Based on the intentional, willful and malicious nature of the actions of Osseogroup and Dr. Weitz, Adin and Adin USA are entitled to recover exemplary damages and reasonable attorneys' fees and costs incurred in connection with this action.

## THIRTEENTH COUNT
[Common Law Unfair Competition]

111.    Adin and Adin USA repeat each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

112.    By reason of the foregoing, Osseogroup and Dr. Weitz have been, and are, engaged in acts of unfair competition in violation of the common law.

113.    Upon information and belief, by virtue of the unlawful conduct of Osseogroup and Dr. Weitz, Osseogroup and Dr. Weitz have made or will make substantial profits and gains to which they are not in law or equity entitled.

114.    The aforesaid conduct of Osseogroup and Dr. Weitz have caused Adin and Adin USA irreparable harm and, unless enjoined, will continue to cause Adin and Adin USA irreparable harm, for which they no adequate remedy at law.

## FOURTEENTH COUNT
[Promissory Estoppel]

115.    Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

116.     Dr. Weitz unambiguously promised Mr. Danzer that Plaintiff would pay commissions to Mr. Danzer for all sales by Plaintiff, provide health and dental insurance, make matching contributions to Mr. Danzer's 401k account, and provide Mr. Danzer with ownership of a percentage of Plaintiff's stock.

117.     In reasonable and foreseeable reliance on Dr. Weitz's promises, Mr. Danzer quit his job worked exclusively for the benefit of Plaintiff, originating extensive sales and significant revenue for the benefit of Plaintiff.

118.     As a direct and proximate result of Mr. Danzer's reliance on Dr. Weitz's promises, and the actions he reasonably and foreseeably undertook as a result, Mr. Danzer has suffered damages in an amount to be determined at trial, but in no event less than $400,000 and stock.

## FIFTEENTH COUNT
[Fraud]

119.     Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

120.     In the first quarter of 2012, Dr. Weitz misrepresented to Mr. Danzer that Plaintiff would pay him $180,000.00 per year as well as commissions greater than Mr. Danzer's commission rate at his prior employer, and benefits, including health and dental insurance, matching contributions to Mr. Danzer's 401k account, and ownership of a percentage of Plaintiff's stock.

121.     Both the amount of compensation and the benefits were material to Mr. Danzer's acceptance of Dr. Weitz's offer.

122.    Dr. Weitz either knew that his representations concerning the amount of compensation and the benefits were false when he made the offer or he acted recklessly as to the truth or falsity of these representations.

123.    Dr. Weitz intentionally misrepresented the amount of compensation and the benefits in order to induce Mr. Danzer's reliance on the oral offer.

124.    Mr. Danzer justifiably relied on the misrepresentations, quitting his job in reliance on same and starting to work for Plaintiff.

125.    Mr. Danzer's reliance on Dr. Weitz's misrepresentations caused him to suffer damages in an amount to be determined at trial.

## SIXTEENTH COUNT
[Negligent Misrepresentation]

126.    Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

127.    Dr. Weitz materially misrepresented to Mr. Danzer that he and Plaintiff would pay Mr. Danzer $180,000.00 as well as commissions greater than Mr. Danzer's commission rate at his prior employer, and benefits, including health and dental insurance, matching contributions to Mr. Danzer's 401k account, and ownership of a percentage of Plaintiff's stock.

128.    Dr. Weitz failed to exercise reasonable care or competence in communicating the amount of compensation and the benefits to Mr. Danzer when it made his offer.

129.    Dr. Weitz made the aforesaid misrepresentations with the intent to induce Mr. Danzer's reliance.

130.    As a result of Mr. Danzer's justifiable reliance on Dr. Weitz's misrepresentations, Mr. Danzer has suffered damages to be determined at trial.

## SEVENTEENTH COUNT
[Unjust Enrichment]

131.    Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

132.    As detailed herein, Mr. Danzer performed services, in good faith, on behalf of Dr. Weitz.

133.    The services performed by Mr. Danzer were accepted by Dr. Weitz.

134.    Dr. Weitz is unfairly benefitting from the services provided by Mr. Danzer, in that he has failed to pay commissions to Mr. Danzer for all sales by Plaintiff, provide health and dental insurance, make matching contributions to Mr. Danzer's 401k account, and provide Mr. Danzer with ownership of a percentage of Plaintiff's stock.  Mr. Danzer would not have acted to make or assist in the making of the sales at issue but for the understanding from Dr. Weitz that Plaintiff would pay him appropriate consideration.

135.    Accordingly, Dr. Weitz has been unfairly enriched in an amount to be determined at trial, but in no event less than $400,000.

## EIGHTEENTH COUNT
[Conversion]

136.    Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and

each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

137.    At all times relevant, Mr. Danzer was the owner of his assets and property, including but not limited to money due and owing to him as fees, reimbursement or commissions from various sales; his customer lists and records which were taken by Dr. Weitz and/or without authorization; and other personal property that belongs to Mr. Danzer.

138.    Mr. Danzer is, and continues to be, entitled to immediate possession of all such assets and property.

139.    Similarly, Mr. Danzer owns all business opportunities and customer lists that were developed by him prior to his hiring by Plaintiff, including good will from the customers that Mr. Danzer developed.

140.    Dr. Weitz and Osseogroup intentionally and unlawfully exercised ownership, dominion and control over Mr. Danzer's assets and property, in denial and repudiation of his rights thereto.

141.    As a result of the foregoing Mr. Danzer has been injured and is entitled to damages to be determined at trial.

**NINETEENTH COUNT**
[Trespass to Chattels]

142.    Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint, each and every allegation contained in the Counterclaims, and each and every allegation contained in the Third-Party Complaint as if same were set forth and repeated at length herein.

143.    The actions of Dr. Weitz and Osseogroup set forth above constitute a trespass to chattels which are the property of and belong to Mr. Danzer.

144.     By reason of the foregoing, Mr. Danzer has been injured and are is entitled to damages to be determined at trial.

## TWENTIETH COUNT
[Accounting]

145.     Mr. Danzer repeats each and every response to each and every allegation set forth in Plaintiff's Amended Complaint and each and every allegation contained in the Counterclaims as if same were set forth and repeated at length herein.

146.     Pursuant to the agreement of Plaintiff and Mr. Danzer and subject to the New York State Labor Law, Plaintiff was required to make certain commission payments to Mr. Danzer. Plaintiff has not made such payments and has not provided records of payments owed. Accordingly, and under the circumstances set forth herein, Mr. Danzer is entitled to a full accounting of all sales by Plaintiff and Osseogroup during Mr. Danzer's employment, all payments remitted to Plaintiff and Osseogroup by customers during Mr. Danzer's employment with Plaintiff, all commissions paid to Mr. Danzer, and all commissions owed to Mr. Danzer in order to determine whether appropriate amounts have been paid.

## PRAYER FOR RELIEF

WHEREFORE, Adin, Adin USA, and Mr. Danzer pray that this Court enter judgment against Osseogroup and Dr. Weitz, jointly and severally, as follows:

1.     Holding Dr. Weitz liable for trademark infringement for its sales of the products of Adin and Adin USA after the termination of the applicable agreements;

2.     Directing Dr. Weitz to pay the entire remaining unpaid $458,978.00 balance for the products received pursuant to the agreements, and directing Dr. Weitz to confess judgment for such amounts;

3.      Finding that Osseogroup and Dr. Weitz have violated 15 U.S.C. § 1125(a) and the common law; willfully infringed the Adin Marks under 15 U.S.C. § 1114 and the common law; willfully diluted the distinctive quality of the Adin Marks under 15 U.S.C. § 1125(c) and N.Y. Gen. Bus. Law § 360-l; engaged in unfair competition and deceptive business practices under N.Y. Gen. Bus. Law § 349 and the common law; and engaged in tortious interference with existing contractual relationships and intentional interference with prospective economic advantage;

4.      Finding that this case is "Exceptional" within the meaning of 15 U.S.C. § 1117(a) and awarding Adin and Adin USA reasonable attorneys' fees, costs and expenses incurred in connection with this action;

5.      Forthwith permanently enjoining and restraining Osseogroup, Dr. Weitz and any officers, managers, members, agents, directors, employees, licensees, servants, partners, representative, assigns, successors, related companies, and attorneys of same and all persons in active concert or participation with either, from:

a.   Falsely associating the Adin Marks and/or the predominate ADIN portion of either or both of the Adin Marks with Osseogroup, Dr. Weitz, or the business of any of the aforesaid or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Adin and/or Adin USA and from otherwise interfering with or injuring the Adin Marks, the predominate ADIN portion of either of the Adin Marks, or the good will and reputation associated therewith;

b.   Licensing, offering to license, using, promoting, advertising, publicizing, distributing, and posting any of the Adin Marks or any other mark, designation,

name, symbol, or logo that is a copy or colorable imitation of, incorporate, dilutes, or is confusingly similar to the Adin Marks for any good or service;

c.  Engaging in any act which is likely to dilute the distinctive quality of the Adin Marks and/or injures the business reputation of Adin and/or Adin USA;

d.  Representing or implying that Osseogroup or Dr. Weitz are in any way related to, affiliated with, in contract with, connected with, associated, with, in partnership with, or retained by Adin and/or Adin USA;

e.  Applying to register the Adin Marks the predominate ADIN portion of either of the Adin Marks, or any other reproduction, counterfeit, copy, or colorable imitation of the Adin Marks as a mark, business name, domain name, keyword, metatag, search term or any other designation with any governmental authority or Internet registry;

f.  Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 5(a) to (e) above;

6.  Pursuant to 15 U.S.C. § 1118, ordering that Osseogroup, Dr. Weitz and any officers, agents, directors, employees, licensees, servants, partners, representative, assigns, successors, related companies, and attorneys of same and all persons in active concert or participation with either, deliver up for destruction or other disposition as determined by Adin and Adin USA all goods, packaging, containers, literatures, brochures, business cards, labels, signs, prints, wrappers, receptacles and other advertising and promotional materials bearing or otherwise using the Adin Mark, the predominate ADIN portion of either of the Adin Marks, or

other words, symbols, colors, or marks of any type, or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates and models;

7.      Pursuant to 15 U.S.C. § 1116, Osseogroup and Dr. Weitz be directed to file with this Court and serve upon Adin and Adin USA within ten (10) days after service of the injunction reports in writing under oath that sets forth in detail the manner and form in which each has complied with the injunction;

8.      Pursuant to 15 U.S.C. § 1117, Osseogroup and Dr. Weitz be directed to pay an amount equal to: 1) their profits from the sale of infringing goods; 2) any damages sustained by Adin and Adin USA; and 3) the costs of the action;

9.      Pursuant to 15 U.S.C. § 1117, Osseogroup and Dr. Weitz be directed to pay an amount equal to three times their profits or the damages of Adin and Adin USA, whichever is greater, together with a reasonable attorneys' fees, costs and expenses;

10.     Ordering that Adin and/or Adin USA are the only owners of the Adin Marks and that such rights are valid and protectable;

11.     Pursuant to 15 U.S.C. § 1125(d)(1)(C), Osseogroup, Dr. Weitz and any officers, managers, members, agents, directors, employees, licensees, servants, partners, representative, assigns, successors, related companies, and all persons in active concert or participation with it be forthwith directed to transfer the Internet web address of http://www.adinimplants.com and all other addresses incorporating the Adin Marks or substantial portions of same to Adin;

12.     Granting Adin and Adin USA pre-judgment interest on any recovery;

13.     Granting reasonable attorneys' fees, costs and expenses to Adin and/or Adin USA;

14.     Granting Mr. Danzer liquidated and compensatory damages;

15. Granting Mr. Danzer the full amount of any underpayment of wages, liquidated damages under Section 198(1-a) of the New York State Labor Law in the amount of one hundred percent of the commissions and other wages ultimately found to be due, all reasonable attorneys' fees incurred in connection with his claim, prejudgment interest;

16. Returning to Mr. Danzer his assets and property, including but not limited to money due and owing to him as fees, reimbursement or commissions from various sales; his customer lists and records which were taken by Dr. Weitz and/or without authorization; and other personal property; and

17. Granting such other and further relief as the Court finds just and proper.

## JURY DEMAND

Demand is hereby made for a trial by jury on all issues raised in the above-captioned litigation as per Federal Rule of Civil Procedure 38(b).

Dated: August 9, 2017                          Mueller Law Group
      Tenafly, New Jersey

                                             s/Gregory K. Mueller
                                           Gregory K. Mueller
                                           Attorney for Defendants
                                           Adin Dental Implant Systems, Inc.,
                                           Adin Dental Solutions USA, Inc., and
                                           Jeremy Danzer