**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHETEL INDUSTRIES LLC, | Case No.: 2:17-cv-02505-LDW-ARL |
| Plaintiff, | |
| vs. | |
| ADIN DENTAL IMPLANT SYSTEMS, INC., ADIN DENTAL SOLUTIONS USA, INC., and JEREMY DANZER, | |
| Defendants. | |
| ADIN DENTAL IMPLANT SYSTEMS, INC. AND ADIN DENTAL SOLUTIONS USA, INC., and JEREMY DANZER, | |
| Counterclaimants and Third-Party Plaintiffs, | |
| vs. | |
| SHETEL INDUSTRIES LLC, OSSEOGROUP LLC, and MARKUS WEITZ as Director and President of SHETEL INDUSTRIES LLC, and Individually, | |
| Counterclaim and Third-Party Defendants. | |

## DEFENDANTS' BRIEF IN RESPONSE TO THE MOTION TO DISMISS THEIR CLAIMS AGAINST PLAINTIFF AND THIRD-PARTY DEFENDANTS

MUELLER LAW GROUP
19 Engle Street
Tenafly, New Jersey 07670
(201) 567-4969
Attorneys for Defendants,
Counterclaimants, and Third-Party
Plaintiffs

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iv

FACTUAL BACKGROUND .................................................................................................. 1

    A.    Adin Dental Implant Systems, Inc. .............................................................. 1

    B.    Jeremy Danzer ................................................................................................. 2

LAW AND ARGUMENT ....................................................................................................... 3

I.    Legal Standard ............................................................................................................ 3

II.    Defendants' Claims Cited By Movants Are Viable And Vary From Their Contract Claims .............................................................................................................................. 4

    A.    Adin's Claims .................................................................................................. 4

        1.    Second Counterclaim and Third Third-Party Claim – Promissory Estoppel ............ 4

        2.    Third Counterclaim and First Third-Party Claim - Fraud ......................... 5

        3.    Fourth Counterclaim – Negligent Misrepresentation ............................... 7

        4.    Thirteenth Counterclaim – Unjust Enrichment ......................................... 8

        5.    Fifteenth Counterclaim – Trespass to Chattels ......................................... 9

        6.    Seventeenth Counterclaim - Accounting ................................................... 9

    B.    Jeremy Danzer's Claims ............................................................................ 10

        1.    Twentieth and Twenty-First Counterclaims – Quantum Meruit and Unjust Enrichment ....................................................................................... 10

        2.    Nineteenth, Twenty-Third, and Twenty-Fourth Counterclaims - Promissory Estoppel, Fraud, and Negligent Misrepresentation .......................... 11

        3.    Twenty-Fifth Counterclaim - Conversion ............................................... 12

        4.    Twenty-Sixth Counterclaim – Trespass to Chattels ............................... 13

        5.    Twenty-Seventh Counterclaim - Accounting .......................................... 14

III.    Movants' Unauthorized Sale Of Adin Products Constitutes Trademark Infringement And Unfair Competition ............................................................................................ 15

IV.    Respondents Have Sufficiently Plead Their Claims Asserting Cybersquatting ........... 17

    A.    Respondents' Claims are Not Materially Contradicted by Their Pleadings. ............. 17

    B.    Respondents Have Sufficiently Pled The Elements of Their Cybersquatting Claims 18

        1.    The Adin Marks Were Distinctive At The Time The Domain Was Registered ..... 18

        2.    Movants Have Used The Domain Address In Bad Faith. ....................... 20

V.    Respondents Have Sufficiently Pled Facts Regarding Dr. Weitz To Maintain Their Causes Of Action ...................................................................................................... 20

    A.    Dr. Weitz's Acts Prior to Plaintiff's Incorporation .................................. 20

B.     Dr. Weitz's Individual Liability for Trademark Infringement and Unfair Competition ................................................................................................................................ 21

C.     Dr. Weitz's Acts Meriting Veil-Piercing .................................................................. 22

VI.     Respondents Have Sufficiently Pled Facts Regarding Osseogroup To Maintain Their Causes Of Action ............................................................................................................ 24

CONCLUSION ............................................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Cases**

*Abcon Associates v. Najarian*, 166 F.Supp. 3d 266 (E.D.N.Y. 2016) .........................................11

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976) ...........................18

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (S.D.N.Y.2005).............11

*Allenby, LLC v. Credit Suisse, AG,* 134 A.D.3d 577 (1st Dep't 2015)....................................8, 9

*Arias v. All Dimensions Landscaping, Inc.*, 1:14-cv-06827-LDW-AYS, 2016 WL 3906645 (E.D.N.Y. 2014) ..................................................................................................................4

*Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899 (E.D.N.Y. 1988).....................22

*Bank of America Corp. v. Lemgruber*, 385 F. Supp. 2d 200 (S.D.N.Y. 2005)..........................10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)....................................24

*Bettan v. Geico Gen. Ins. Co.*, 296 A.D.2d 469 (2d Dep't 2002) .............................................8, 9

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142 (2d Cir. 1993) ..................................4

*Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir.2001)....................................................................6

*Carnivale v. Staub Design, LLC*, 700 F.Supp. 2d 660 (D.Del. 2010) ......................................20

*Cello Holdings, L.L.C. v. Lawrence-Dahl Companies*, 89 F.Supp.2d 464 (S.D.N.Y. 2000) .....18

*Clark-Fitzpatrick v. Long Island R. R. Co.*, 70 N.Y.2d 382 (1987).............................................9

*Cohen v. Koenig*, 25 F.3d 1168 (2d Cir.1994)...........................................................................6

*Curtis Properties Corporation v. Greif Companies*, 236 A.D.2d 237, 653 N.Y.S.2d 569 (App. Div. 1997) ............................................................................................................................10

*Cyberchron Corp. v. Calldata Systems Development*, 831 F. Supp. 94 (E.D.N.Y. 1993) .....5, 11

*Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986)........................................................................................................12

*Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978).....................................................22

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F. 3d 187 (2d Cir. 2009)...........................................................................................................................7

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508 (S.D.N.Y. 2005) ..........23

*Eternity Glob. Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y.*, 375 F.3d 168 (2d Cir. 2004) ......................................................................................................................................8

*Ex parte Rivera Watch Corp.*, 106 USPQ 145, 1955 WL 6450 (Comm'r Pat. 1955)...............19

*Federal National Mortgage Association v. Olympia Mortgage Corporation*, 1:04-cv-04971-NG-MDG, 2006 WL 2802092 (E.D.N.Y. 2006) .........................................................................23

*Hwang v. Grace Road Church*, No. 14-CV-7187 (KAM) (RML), 2016 WL 1060247 (E.D.N.Y. 2016) ......................................................................................................................................7

*Iannuzzi v. American Mortgage Network, Inc.*, 727 F. Supp. 2d 125 (E.D.N.Y. 2010).............14

*Kastle v. Steibel*, 120 A.D. 2d 868 (3d Dep't 1986) ................................................................14

*Kimmell v. Schaefer*, 89 N.Y.2d 257, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996) ....................8

*Kitty Walk Systems, Inc. v. Midnight Pass Inc.*, 431 F. Supp. 2d 306 (E.D.N.Y. 2006) ...........17

*Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455 (E.D.N.Y. 2008)......................17

*Lane Capital Management v. Lane Capital Management*, 192 F.3d 337 (2d Cir. 1999)...........19

*Magee v. Nassau County Medical Center*, 27 F.Supp.2d 154 (E.D.N.Y. 1998) ........................4

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) .........................................3

*Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135 (1993)...................23

*NCC Sunday Inserts Inc. v. World Color Press, Inc.*, 759 F.Supp. 1004 (S.D.N.Y.1991)...........5

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998), *petition for cert. filed*, U.S.L.W. (U.S. Oct. 21, 1998) (No. 98-661)...........................................................................4
*Pirone v. MacMillan, Inc.*, 894 F. 2d 579 (2d Cir. 1990)........................................................19
*Polymer Technology Corp. v. Mimran*, 975 F.2d 58 (2d Cir.1992) .....................................16, 17
*Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F.Supp. 117 (S.D.N.Y. 1996).......................23
*Sawabeh Information Services Co. v. Brody*, 832 F. Supp. 2d 280 (S.D.N.Y. 2011) ................12
*Schwartzco Enterprises LLC v. TMH Management, LLC*, 60 F. Supp. 3d 331 (E.D.N.Y. 2014) ..
...........................................................................................................................................6
*Shmueli v. Corcoran Group,* 9 Misc.3d 589 (Sup. Ct. 2005) .....................................................13
*Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489 (2d Cir. 2000)......................18
*Staron v. McDonald's Corp.*, 51 F.3d 353 (2d. Cir. 1995)..........................................................4
*State Farm Mutual Auto. Ins. v. Cpt Medical Services*, 375 F. Supp. 2d 141 (E.D.N.Y. 2005) ..6
*Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F. Supp. 103 (E.D.N.Y. 1993) ....12
*Suez Equity Investors v. Toronto-Dominion Bank*, 250 F. 3d 87 (2d Cir. 2001).........................8
*Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir. 1979) ............................6
*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753 (1992)...........................18
*Unitel Telecard Distrib. Corp. v. Nunez*, 90 A.D.3d 568 (1st Dep't 2011)............................9, 14
*Universal Indus. Corp. v. Lindstrom,* 459 N.Y.S.2d 492 (App. Div. 1983)...............................7
*Walkovsky v. Carlton*, 18 N.Y.2d 414 (1966).........................................................................23
*Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 672 N.Y.S.2d 8 (1st Dep't 1998) ...............10
*Woods v. Maytag Co.,* 807 F.Supp. 2d 112 (E.D.N.Y. 2011).....................................................6
*World Wrestling Entertainment v. Jakks Pacific*, 530 F. Supp. 2d 486 (S.D.N.Y. 2007) ..........14

**Statutes**

15 U.S.C. § 1125(d) .................................................................................................................18
15 U.S.C. §§ 1052(e), (f) .........................................................................................................19

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................3, 14, 15, 21, 22, 24
Fed. R. Civ. P. 56 ....................................................................................................................21
Fed. R. Civ. P. 9(b) ...................................................................................................................6

## FACTUAL BACKGROUND

A. ADIN DENTAL IMPLANT SYSTEMS, INC.

Adin Dental Implant Systems, Inc. ("Adin") is an Israeli corporation that has been manufacturing dental implants since 1991. CC ¶15[1]. In 2008, the United States Food and Drug Administration first approved an Adin product. CC ¶16. Prior to 2011, Adin had limited sales or business activity in the United States. Answer, ¶2.

In 2010, Dr. Markus Weitz ("Dr. Weitz") approached Adin, presented himself as a wealthy dentist with significant assets both in New York and Israel, and indicated an interest in selling Adin's dental implants. CC ¶18. Through 2010 and 2011, prior to the incorporation of Plaintiff Shetel Industries LLC ("Plaintiff"), Dr. Weitz negotiated with Adin regarding becoming Adin's distributor in the United States. CC ¶¶18-19. Dr. Weitz represented and promised that he had sufficient money, time, and connections to develop a business that would market, distribute and sell Adin's products throughout the United States, and that he would contribute same to develop such a business. CC ¶127. On July 16 2010, the domain address www.AdinImplants.com was registered. CC ¶171. Plaintiff was not incorporated until May 12, 2011. CC ¶5.

In early 2012, Plaintiff began distributing, marketing, and selling Adin products in the United States. CC ¶25. Between early 2012 and September 18, 2016, Plaintiff intermittently marketed, distributed and sold Adin's products, yet despite Adin's prolonged and diligent efforts, Plaintiff dodged execution of a written agreement. CC ¶¶25, 28, 39-50, 73-77, 84-85. During this period, Plaintiff's repeatedly incurred significant debts to Adin. *E.g.* CC ¶¶26, 29, 63, 67, 73. In

---

[1] Respondents employ the same abbreviations as Movants throughout this brief: Counterclaim ("CC"); Third-Party Complaint ("TPC"). Movants also employ Answer ("Ans.") to reference the first thirty-three (33) pages of Respondents' responsive pleading and "Br." to reference Movants' Brief.

-1-

2013, Plaintiff owed Adin more than $220,000; after Plaintiff failed to pay, Adin required Plaintiff to pay upfront for the next order of dental products. Plaintiff retaliated by ceasing all marketing, distribution and sales of Adin's products. CC ¶¶29-36. It was only after Plaintiff both exacted concessions from Adin and resumed its efforts that Adin first expressed interest in purchasing Plaintiff's business. CC ¶36-39. By 2016, Plaintiff had repeatedly failed to meet minimum annual purchase volumes, failed to report sales numbers, failed to pay Adin, and exceeded a credit limit extended by Adin. CC ¶¶73-79. Adin then terminated the relationship, but the parties recommenced negotiating terms for the sale of Plaintiff's business to Adin. CC ¶¶80-82.

Between December 2016 and July 2017, Adin repeatedly demanded that Plaintiff cease and desist marketing and selling Adin products, holding itself out as a distributor of Adin products; using the Adin's trademarks "ADIN DENTAL IMPLANT SYSTEMS" and "ADIN DIGITAL" (the "Adin Marks"); and using www.adinimplants.com to direct internet traffic to the website for third-party defendant, Osseogroup LLC ("Osseogroup"). CC ¶¶84-89.

B.  JEREMY DANZER

Jeremy Danzer is Plaintiff's former employee, who now employed by Adin and Adin Dental Solutions USA, Inc. ("Adin USA").  CC ¶¶2, 98-99.

In the first quarter of 2012, two of Plaintiff's principals, Dr. Weitz and Jeremy Frenkel, met with Mr. Danzer and his wife.  Plaintiff offered Mr. Danzer a salary of $180,000.00 as well as commissions greater than Mr. Danzer's commission rate at his then-employer, as well as benefits, including health and dental insurance, matching contributions to Mr. Danzer's 401k account, and ownership of a percentage of Plaintiff's stock.  Mr. Danzer accepted Plaintiff's offer on or around February 7, 2012.  CC ¶¶98-99.

At the time of his hiring, Mr. Danzer brought with him compilations of customers for dental products, including spreadsheets and business cards, which he had personally expended significant time, funds and effort to compile as well as training materials for salespeople that Mr. Danzer expended significant time and effort to develop based on his personal experience. Plaintiff used Mr. Danzer's customer lists and information to enrich itself and build its business. CC ¶¶100-101. However, Plaintiff never provided health or dental insurance to Mr. Danzer, established a 401k for Mr. Danzer, or contributed to his pre-existing 401k account. CC ¶¶102-103.

On July 20, 2016, Plaintiff demanded that Mr. Danzer agree to a written post-termination agreement wherein he would agree not to compete with Plaintiff or solicit Plaintiff's customers for an unspecified period of time. Mr. Danzer responded that since he was a partial owner of Plaintiff, he did not believe that the Non-Compete Agreement was necessary. CC ¶104.

On or about July 29, 2016, Plaintiff terminated Mr. Danzer, because he would not agree to execute a post-termination restrictive covenant. CC ¶¶108-109. When Plaintiff terminated Mr. Danzer's employment, it retained the customer lists that Mr. Danzer brought at the time of his hiring and it failed to pay him commissions for sales that occurred after the last date he was paid commissions and the date of termination. CC ¶¶110-111.

## LAW AND ARGUMENT

### I.   LEGAL STANDARD

In deciding a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the allegations in the pleading in question are to be accepted as true, and all reasonable inferences must be drawn in favor of the non-movant. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

When evaluating a Rule 12(b)(6) motion, the Court may consider written documents attached to the pleading at issue as well as documents incorporated therein by reference and those

-3-

of which non-movant had knowledge of and relied upon in commencing the action. *Arias v. All Dimensions Landscaping, Inc.*, 1:14-cv-06827-LDW-AYS, 2016 WL 3906645 (E.D.N.Y. 2014) *citing Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). In addition, matters of public record may be considered by the Court. *Magee v. Nassau County Medical Center*, 27 F.Supp.2d 154, 160 (E.D.N.Y. 1998) (citations omitted).

Dismissal is only appropriate where it appears "beyond a doubt" that the non-movant can prove no set of facts in support of the claim that would entitle the non-movant to relief. *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d. Cir. 1995) (citations omitted).

Given the numerous counterclaims and third-party claims Movants have addressed, Respondents' brief will first address the arguments regarding the claims brought by Adin and Adin USA in sequential order, then the claims brought by Mr. Danzer, then the claims pertaining trademark infringement, cybersquatting, Dr. Weitz's personal liability and then the claims against Osseogroup.

## II. DEFENDANTS' CLAIMS CITED BY MOVANTS ARE VIABLE AND VARY FROM THEIR CONTRACT CLAIMS

### A. ADIN'S CLAIMS

#### 1. Second Counterclaim and Third Third-Party Claim – Promissory Estoppel

Respondents' Second Counterclaim ("CC") and Third Third-Party Claim ("TPC") assert a cause of action independent from their breach of contract claims. Respondents cite a litany of promises made by Dr. Weitz and/or Plaintiff. CC ¶127, TPC ¶ 34. There are two varying classes of promises made by Dr. Weitz and/or Plaintiff that require separate analysis.

First, among the promises listed in CC ¶ 127, are specific promises that Dr. Weitz made: a) before any agreement between Plaintiff and Adin was reached (CC ¶19); b) that are not contained in any purported written contract (See Exhibit A, Exhibit B, and Exhibit C to Ans.);

-4-

and c) before Plaintiff was even incorporated. CC ¶5. An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced. *Cyberchron Corp. v. Calldata Systems Development*, 831 F. Supp. 94, 113 (E.D.N.Y. 1993) *citing NCC Sunday Inserts Inc. v. World Color Press, Inc.*, 759 F.Supp. 1004, 1011 (S.D.N.Y.1991). The promises that Dr. Weitz made, which meet the aforesaid criteria, were that he had sufficient money and connections to develop a distribution business throughout the United States and would invest sufficient money, time, and effort to develop a business selling dental implants throughout the United States. CC ¶127(a), (b), and (c).

Second, the remainder of the promises, CC ¶127(d)-(j), appear in documents that purport to be contractual, but whose enforceability is in question. Movants assert as much, stating, …the business arrangements between Adin and Plaintiff were never reduced to a single integrated written contract. Br., pg. 3. Promissory estoppel is designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement. *Cyberchron Corp.*, *supra* 831 F. Supp. at 113 (citations omitted).

As such, Respondents have effectively pled their promissory estoppel claims, as the underlying promises either do not appear in any purported written agreement or appear in purported agreements that will require further discovery in order to establish their enforceability.

### 2. Third Counterclaim and First Third-Party Claim - Fraud

Movants incorrectly assert that Respondents' fraud claims are "largely an insinuation that Shetel was not honest when it originally agreed to live up to its contractual obligations…" Br., pg. 10. A determination of whether fraudulent inducement claims are duplicative of breach of contract claims requires a determine of whether the alleged misrepresentations were made prior to the formation of the contract, and whether the misrepresentations were explicitly included in

the contract between the parties. *See Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 747 (2d Cir. 1979).

Respondents have alleged that Dr. Weitz made misrepresentations which were intended to induce Adin to enter into a distribution agreement. CC ¶¶19, 136. Further, the misrepresentations made by Dr. Weitz were never integrated into any of the purported written agreements between Adin and Plaintiff. See Exhibit A, Exhibit B, and Exhibit C of Ans.

Movants do not cite to any authority when asserting that Adin "does *not* actually allege that" "'collateral' representations" by Plaintiff or Dr. Weitz were false when made. Br., pg. 11. With respect to the falsity of a misrepresentation, Rule 9(b) is satisfied when the pleading specifies details that "'give rise to a strong inference that the defendant [ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Schwartzco Enterprises LLC v. TMH Management, LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (citations omitted). Under Fed. R. Civ. P. 9(b) "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *Woods v. Maytag Co.,* 807 F.Supp. 2d 112, 125 (E.D.N.Y. 2011) *citing* Fed.R.Civ.P. 9(b). Allegations of scienter:

> …are not subjected to the more exacting consideration applied to the other components of fraud and thus they can be pleaded conclusorily provided they reveal a sufficient showing of fraudulent intent.

*State Farm Mutual Auto. Ins. v. Cpt Medical Services*, 375 F. Supp. 2d 141, 154 (E.D.N.Y. 2005) (citations omitted). The four circumstances that can give rise to a strong inference of the requisite scienter are:

> …where the complaint sufficiently alleges that the defendants (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor.

-6-

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F. 3d 187, 199 (2d Cir. 2009). (citations and quotations omitted). Respondents' pleading specifically alleged that Dr. Weitz: made material misrepresentations (CC ¶135); made false, incomplete or misleading statements regarding, among other things, his resources to develop a distribution business (CC ¶143); knew Adin would rely on such false representations (TPC ¶29); and benefitted in a concrete and personal way from the purported fraud; namely, Dr. Weitz used Plaintiff as his alter ego to defraud Respondents (CC ¶24) and Plaintiff has retained and wrongfully failed to pay Adin in excess of $400,000, which includes profits from the sale of Adin products that Plaintiff sold on consignment (CC ¶¶122-123). As such, Respondents respectfully submit that scienter has been sufficiently pled.

In anticipation of Movants' reply, it bears noting that Dr. Weitz made said misrepresentations to Adin (CC ¶¶19, 136) prior to the incorporation of Plaintiff (CC ¶5), yet Plaintiff knowingly received the benefits of the agreement that Dr. Weitz induced Adin to enter into (CC ¶22-25), meeting the criteria sufficient for a finding of promoter liability. *Hwang v. Grace Road Church*, No. 14-CV-7187 (KAM) (RML), 2016 WL 1060247, 9 (E.D.N.Y. 2016) *citing Universal Indus. Corp. v. Lindstrom,* 459 N.Y.S.2d 492 (App. Div. 1983).

Thus, dismissal of Respondents' Third Counterclaim and First TPC is inappropriate.

### 3. Fourth Counterclaim – Negligent Misrepresentation

Movants assert that Adin's negligent misrepresentation claims must be dismissed for failure to allege a false representation of present fact. Br., pg. 11. In refutation, Respondents cite to CC ¶19, which alleges with specificity that at the time the parties were in negotiations preceding contracting, Dr. Weitz made representations of present fact regarding the money, time, networks

-7-

of national connections, and effort he possessed and would invest at that time, and that same were sufficient to develop the proposed business.

Additionally, Movants assert that Respondents have failed to establish a plausible basis for a special relationship required to maintain a claim for negligent misrepresentation. The Second Circuit has consistently held that "sparsely pled" special relationships of trust or confidence is not "fatal to a claim for negligent misrepresentation" where the pleading "emphatically alleges" two other factors: a) whether the person making the representation held or appeared to hold unique or special expertise; and b) whether the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Eternity Glob. Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004); *Suez Equity Investors v. Toronto-Dominion Bank*, 250 F. 3d 87, 103-104 (2d Cir. 2001); *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263-264, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996). Respondents have pled the two remaining *Kimmell* factors with the requisite degree of specificity. Respondents alleged repeatedly that Plaintiff and Dr. Weitz represented that they had specialized expertise in the U.S. dental products market, including knowledge and connections. CC ¶¶20, 22, 142; TPC ¶24. Respondents also alleged repeatedly that Dr. Weitz made representations with the intent to induce Adin to enter into the initial agreement with him. CC ¶19-22; 127-131.

As such, dismissal of the Fourth Counterclaim and the Second Count of the Third-Party Complaint is inappropriate.

### 4. Thirteenth Counterclaim – Unjust Enrichment

Movants contend Respondents' claims alleging unjust enrichment are an "impermissible repackaging of the contract claim", citing to *Bettan v. Geico Gen. Ins. Co.*, 296 A.D.2d 469, 470 (2d Dep't 2002)*; Allenby, LLC v. Credit Suisse, AG,* 134 A.D.3d 577, 579 (1st Dep't 2015); and

-8-

*Clark-Fitzpatrick v. Long Island R. R. Co.,* 70 N.Y.2d 382, 388 (1987). Movants cite to holdings that are distinguishable, as each pertains to the dismissal of unjust enrichment claims arising from the same subject matter that is governed by an enforceable contract. *Bettan*, *supra* 296 A.D.2d at 470; *Allenby*, *supra* 135 A.D.3d at 579; *Clark-Fitzpatrick*, *supra* 70 N.Y.2d at 388. Given the uncertainty of the enforceability of *any* agreement in this matter, Respondents have sufficiently pled their unjust enrichment claims.

### 5.   Fifteenth Counterclaim – Trespass to Chattels

Movants' assertion that Adin's trespass-to-chattels claim is "totally unexplained" is refuted when the claim is examined in the context of the factual allegations preceding it within the pleading. The Fifteenth Counterclaim adopts and incorporates the Facts Common to All Counts, wherein it is alleged that Plaintiff has interfered with the personal property of Adin by refusing to return Adin products for which it never compensated Adin. CC ¶79, 84, 88.

### 6.   Seventeenth Counterclaim - Accounting

Movants assert that Adin's accounting claim fails, because "(n)o facts plausibly supporting such an allegation are made here". Br., pg. 12. Movants cite to *Unitel Telecard Distrib. Corp. v. Nunez*, 90 A.D.3d 568, 569 (1st Dep't 2011), yet they ignore the portion of the *Unitel Telecard* holding that makes clear an unsigned, undated memorandum that on its face purports to be a contract is "insufficient to establish the existence of an enforceable agreement", thus no adequate remedy at law existed. Underscoring the uncertainty in this matter as to whether a written, enforceable agreement governed any portion of the parties' relationship, and as set forth in greater detail *supra*, Movants assert, "…the business arrangements between Adin and Plaintiff were never reduced to a single integrated written contract." Br., pg. 3.

Additionally, Movants incorrectly characterize Adin's allegation that Plaintiff repeatedly represented to the public that it was Adin's corporate entity in the United States (CC ¶ 235) to constitute nothing more than a rephrasing of the undisputed fact that Plaintiff was Adin's U.S. distributor. Br. pg. 13. Under New York law, any inquiry into whether such obligation exists is necessarily fact-specific to the particular case and courts will look to whether a party reposed confidence in another and reasonably relied on another's superior expertise or knowledge. *Bank of America Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005) *quoting Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 122, 672 N.Y.S.2d 8, 14 (1st Dep't 1998). As detailed above, Respondents have sufficiently pled that Dr. Weitz made representations in 2010 regarding his expertise as to the U.S. market. (See Counterclaim Thirteen, *supra*). Dr. Weitz's representations resulted in Adin acting in reliance on same.

Finally, it is fundamentally fair that Plaintiff should account to Respondents for the consignment goods, distribution and sales of Adin's products and repayment and use of the credit facilities extended by Adin.

B.  UNDERLINE_JEREMY DANZER'S CLAIMS

1.  **Twentieth and Twenty-First Counterclaims – Quantum Meruit and Unjust Enrichment**

Movants contend that Mr. Danzer's "unjust enrichment and quantum meruit claims cannot properly be based on the same allegations underlying a breach of contract claim". Br., pg. 14.

Under New York law:

> A party is not precluded from proceeding on both breach of contract and quasi-contract theories where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue.

*Curtis Properties Corporation v. Greif Companies*, 236 A.D.2d 237, 239, 653 N.Y.S.2d 569 (App. Div. 1997). Further, a party can properly plead contradictory claims for breach of contract

-10-

and for recovery under theories of quantum meruit and unjust enrichment. *Cyberchron Corp. v. Calldata Systems Development*, 831 F. Supp. 94, 110 (E.D.N.Y. 1993).

As has been pled, despite promises by Dr. Weitz and Plaintiff, Mr. Danzer was not provided a written contract until the very end of their multi-year relationship. CC ¶244-245; Br., pg. 12. The Doctrine of Quantum Meruit:

> …allows a plaintiff to recover even where an express contract has been rescinded, is unenforceable or has been abrogated because it enforces the enriched party's implied promise to pay for benefits conferred by the plaintiff.

*Abcon Associates v. Najarian*, 166 F.Supp. 3d 266, 273 (E.D.N.Y. 2016) .

In the absence of a written contract, the terms and enforceability of the agreement governing Mr. Danzer's employment is very much in question; thus, Respondents have adequately pled the Twentieth and Twenty-First Counterclaims.

### 2. Nineteenth, Twenty-Third, and Twenty-Fourth Counterclaims - Promissory Estoppel, Fraud, and Negligent Misrepresentation

Respondents' Nineteenth Counterclaim (promissory estoppel) (and Fifteenth TPC), Twenty-Third Counterclaim (fraudulent inducement) (and Fourteenth TPC), and Twenty-Fourth Counterclaim (negligent misrepresentation) (and Sixteenth TPC) are each based on the offer conveyed by Plaintiff and Dr. Weitz to Mr. Danzer to induce him to quit his prior job and commence working for Plaintiff. Movants assert that each fails because the misrepresentations alleged therein "are all identical to the 'contractual terms' alleged in paragraphs 245-47 in the contract counterclaim". Br., pg. 14.

Case law undermines Movants' argument. First, as detailed *supra*, an action for promissory estoppel generally requires the absence of a written, enforceable contract. *Cyberchron Corp., supra* 831 F. Supp. at 113. Second, as set forth in *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc*., 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89, 502 N.E.2d 1003, 1004

-11-

(1986), a representation of present fact which was the inducement for the contract and which was collateral to that contract, could support a claim of fraud. Third, the elements of negligent misrepresentation in the context of inducement are substantially the same as common law fraud. *Sawabeh Information Services Co. v. Brody*, 832 F. Supp. 2d 280, 298 (S.D.N.Y. 2011). Thus, a claim for fraud requires a showing that either: a) misrepresentations were outside of the scope of an agreement; or b) there was no enforceable agreement.

As briefed *supra*, there was no written agreement between Mr. Danzer and Plaintiff. Furthermore, there remain material questions as to the terms of Mr. Danzer's employment and the enforceability of any oral agreement.

As such, Respondents' Nineteenth Counterclaim (promissory estoppel) (and Fifteenth TPC), Twenty-Third Counterclaim (fraudulent inducement) (and Fourteenth TPC), and Twenty-Fourth Counterclaim (negligent misrepresentation) (and Sixteenth TPC) have been sufficiently pled in light of the uncertainty as to the existence of an enforceable agreement, making dismissal of these claims is inappropriate.

### 3.  Twenty-Fifth Counterclaim - Conversion

Movants assert that Mr. Danzer's conversion counterclaim fails because it is at least in part duplicative of his contract claim insofar as it seeks payment of money allegedly due to him as commissions or otherwise. CC ¶ 288. Movants cite to *Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F. Supp. 103, 106 (E.D.N.Y. 1993), which is distinguishable from the instant matter; in *Strojmaterialintorg* the basis for the conversion claim was an allegation that goods that were the subject of written, enforceable agreement were accepted by a buyer, which then failed to make payment.

-12-

In contrast, in the instant matter, the terms of Mr. Danzer's employment (inclusive of the scope of use and ownership of the customer lists developed by Mr. Danzer) were never reduced to an enforceable, written agreement. CC ¶¶98-104; 287-292; TPC ¶136-141. Movants note that Respondents do not allege, among other things, whether Plaintiff ever agreed contractually to stop using the customer lists Mr. Danzer supplied or to stop doing business with the customers on the lists Mr. Danzer supplied. Br., pg. 8. These omissions serve not to weaken Mr. Danzer's counterclaim, but to emphasize that the ownership of the customer lists, training materials, and other documents and data Mr. Danzer supplied were never the subject of nor governed by any enforceable, written agreement.

Additionally, citing *Shmueli v. Corcoran Group,* 9 Misc.3d 589 (Sup. Ct. 2005), Movants argue that the Twenty-Fifth Counterclaim fails, because Mr. Danzer does not allege that Plaintiff "retained" Mr. Danzer's customer lists, training materials, etc. and that he does not have his own copy. Br., pg. 15. Movants fail to cite to any authority establishing that to sustain a conversion claim, a litigant must allege that it does not possess a complete or partial copy of the information.

Thus, dismissal of the Twenty-Fifth Counterclaim as it applies to the customer lists, training materials, and other documents and data Mr. Danzer supplied to Plaintiff is inappropriate.

### 4. Twenty-Sixth Counterclaim – Trespass to Chattels

Movants assert that Mr. Danzer's Twenty-Sixth Counterclaim fails because he did not plead any chattels in his possession that Plaintiff interfered with. Br. pg. 14. As detailed *supra*, Movants have interfered with Mr. Danzer's use of the documents and data he supplied to Plaintiff. CC ¶¶100, 101, 110, and 288-291.

-13-

### 5. Twenty-Seventh Counterclaim - Accounting

Without specificity, Movants assert that Mr. Danzer's accounting claim also fails, and cited to their prior arguments. In response to Adin's accounting counterclaim, Movants asserted that "no facts plausibly supporting" an allegation that no adequate remedy at law were made and "no facts pled that support" that Shetel served as Adin's fiduciary. Br., pg. 12.

The existence of a fiduciary relationship normally depends on the facts of a particular relationship, and therefore a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6). *World Wrestling Entertainment v. Jakks Pacific*, 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007) (quotation omitted).

To be entitled to an equitable accounting, a claimant must demonstrate that he or she has no adequate remedy at law. *Kastle v. Steibel*, 120 A.D. 2d 868, 869 (3d Dep't 1986). Allegations of the absence of an enforceable, written employment contract provide sufficient for a finding that no adequate remedy exists at law. *Unitel Telecard*, *supra* 90 A.D.3d at 569. As to Mr. Danzer, the terms of Mr. Danzer's employment were never reduced to an enforceable, written agreement. CC ¶¶98-104; 287-292; TPC ¶136-141.

Furthermore, as has been alleged, a relationship of mutual confidentiality existed between Plaintiff and Mr. Danzer; same is illustrated by Mr. Danzer's production of the list of customers he developed before his employment with Plaintiff. CC ¶100. However, Respondents have sufficiently pled the accounting claim. To establish a fiduciary relationship, there must be a relationship in which trust and confidence were reposed by one side, and the other side exercised domination and influence. *Iannuzzi v. American Mortgage Network, Inc.*, 727 F. Supp. 2d 125, 137 (E.D.N.Y. 2010). Respondents have pled repeatedly that Plaintiff and Dr. Weitz offered to pay Mr. Danzer a commission at a rate greater than the rate paid by his employer at the time. CC

-14-

¶96, 98. Plaintiff failed to pay Mr. Danzer the commissions promised and presumably pocketed Mr. Danzer's money. CC ¶111; 297. Should Mr. Danzer ultimately prevail, he would be entitled to an accounting to ascertain his unpaid commission and the aforesaid unpaid contributions his 401k. Movants have not cited any authority establishing that a Rule 12(b)(6) motion should be granted on a claim for an accounting on the basis of an insufficiently-pled fiduciary relationship when it has been alleged that the employment relationship in question lacked a written agreement, but included representations that the party with superior knowledge would provide the other party commissions, benefits, and a share of ownership in the former.

### III.  MOVANTS' UNAUTHORIZED SALE OF ADIN PRODUCTS CONSTITUTES TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

Exhibit C is an email from Dr. Weitz to Hadas Davidson of Adin, dated July 26, 2014, wherein Dr. Weitz drafted a memorialization of oral negotiations that had occurred at a meeting. CC¶48. As such, Exhibit C is germane to Movants' argument. Movants do not reference Exhibit C to Respondents' Pleading in their argument for the dismissal of Respondents' claims regarding the unauthorized sale of Adin products since the termination of the parties' relationship; however, Movants, to make their argument as to ownership of the internet domain address www.adinimplants.com, presuppose the enforceability of the terms of Exhibit C as a binding agreement between Plaintiff and Adin. Br., pg. 19.

It also bears noting for the purpose of interpretation that Dr. Weitz purports to be the author of Exhibit C.

Three clauses from Exhibit C make clear that Respondents have properly pled Counterclaims Six, Seven, Nine, Ten, Eleven, and Twelve (and the correlating third-party claims) as they relate to Movants' continued, unauthorized sale of Adin's products:

-15-

> Shetel has a right t (sic) sell Adin Implants under our name which we own. (of course, we will not cover the adin name in packaging .... As you've outlined...) Agreed;
>
> Intellectual property — Adin owns what they develop. We own what we develop. Agreed;
>
> We own our phone number and our website…We all agreed that I own Adinimplants.com , not Adin Israel and that Adin Israel owns the trademark of their name. Adin Israel is allowing Shetel to use their name. Upon Termination, it is clear that Adin Israel will not allow Shetel to continue using their name.

See Exhibit C to Ans., pgs. 1-2; see also CC ¶49. These terms preclude Plaintiff and the Third-Party Defendants from continuing to use Adin's Marks after the termination of the relationship.

Additionally, Movants do not acknowledge Exhibit A to Respondents' Pleading, which is a two-page exhibit. The first page of Exhibit A is entitled "Letter of Understanding to continue the activity in USA – until December 31, 2013 or a signed and agreed contract is established", and which bears the date February 25, 2013. The first page of Exhibit A purports to be signed by both Eyal Millman on behalf of "Adin Dental Implant Systems, LTD" and Moti Weitz (Dr. Weitz) on behalf of "Shetel Industries/Adin USA"). The second page of which is entitled "Terms for transfer of assets" and references a non-compete clause. See Exhibit A to Ans.

Movants cite to the bright-line rule from *Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir.1992):

> [a]s a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner...Thus, a distributor who resells trademarked goods without change is not liable for trademark infringement.

However, *Polymer Technology* sets forth an exception to said rule, which is applicable to the instant matter:

> [a] distributor's failure to observe a restrictive condition on the type or class of customers with whom it may deal can constitute trademark infringement, but more

-16-

is required than unauthorized sales standing alone…The element of consumer confusion must also be present.

*Id.* at 63. (citations omitted). Plaintiff has conceded that customers have become confused as it continues to sell Adin products in the U.S. market. See AC ¶103. In their pleading, Respondents acknowledged that customers are confused, but averred that the confusion is attributable to the acts and omissions of Movants. Ans, pg. 21, ¶103.

Movants' reliance on *Kitty Walk Systems, Inc. v. Midnight Pass Inc.*, 431 F. Supp. 2d 306 (E.D.N.Y. 2006) is inappropriate, as the agreement at issue in *Kitty Walk* was unwritten and lacked any terms that would govern the parties' post-termination conduct.

Movants cite to *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 470-71 (E.D.N.Y. 2008) to assert:

> The unauthorized sale of genuine trademarked goods that do not differ in quality from those sold through authorized channels does not create any likelihood of consumer confusion as to the ultimate nature, quality, and source of the goods, and thus does not constitute a violation of the General Business Law or common law unfair competition.

Br., pg. 18. *Krasnyi Oktyabr* is distinguishable to the case at bar, as the holding is devoid of any evidence that either party acquiesced to a restrictive covenant that would preclude the sales of products bearing the manufacturer's trademark at any time.

## IV. RESPONDENTS HAVE SUFFICIENTLY PLEAD THEIR CLAIMS ASSERTING CYBERSQUATTING

### A. RESPONDENTS' CLAIMS ARE NOT MATERIALLY CONTRADICTED BY THEIR PLEADINGS.

Movants' assertion that Respondents' claims regarding cybersquatting are materially contradicted by Adin's pleadings is incorrect. Movants cite to Exhibit C of Respondents' pleadings, wherein Adin and Plaintiff agreed that Dr. Weitz owned www.adinimplants.com. Br., pg. 19. Exhibit C includes a provision that undermines Movants' argument:

-17-

Adin Israel is allowing Shetel to use their name. Upon Termination, it is clear that Adin Israel will not allow Shetel to continue using their name.

CC¶¶48, 49(c).

B. RESPONDENTS HAVE SUFFICIENTLY PLED THE ELEMENTS OF THEIR CYBERSQUATTING CLAIMS

1. **The Adin Marks Were Distinctive At The Time The Domain Was Registered**

Movants assert:

No allegation is made that the "Adin" brand had any recognition at all in the United States when Shetel registered the www.adinimplants.com URL in 2010.

Br., pg. 19. Brand recognition is not relevant to an analysis of the sufficiency of a pleading alleging violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). Distinctiveness "is a completely different concept from fame"; "a mark may be distinctive even though its fame is nonexistent and likewise even a famous mark may be so ordinary ... as to be notable for its lack of distinctiveness". *Cello Holdings, L.L.C. v. Lawrence-Dahl Companies*, 89 F.Supp.2d 464, 473 (S.D.N.Y. 2000) *quoting Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 496 (2d Cir. 2000).

Respondents have averred sufficient factual allegations to suggest that "Adin Implants" is a distinctive mark.

Courts routinely apply the test set forth by Judge Friendly in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976), to evaluate the inherent distinctiveness of a mark. A mark is either (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary; or (5) fanciful. The latter three categories of marks are deemed by the courts to be inherently distinctive and are thus entitled to protection under 15 U.S.C. § 1125(d). *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753 (1992).

-18-

Words which are "**primarily merely a surname**" may not be registered without proof of secondary meaning, proof that the mark "has become distinctive of the applicant's goods." (Emphasis added). *Pirone v. MacMillan, Inc.*, 894 F. 2d 579, 585 (2d Cir. 1990) *quoting* 15 U.S.C. §§ 1052(e), (f). However, a mark is primarily merely a surname only if the primary significance of the mark to the purchasing public is that of a surname; thus, in this context "merely" is synonymous with "only" as in whether a mark is "primarily only a surname". *Lane Capital Management v. Lane Capital Management*, 192 F.3d 337, 345 (2d Cir. 1999).

In this case, "Adin" was identified in a Response to Office Action during the process of registering the mark "ADIN DENTAL IMPLANT SYSTEMS" with the P.T.O. as being the "last name of one of the owners and founders of the company YECHEZKEL ADIN". (Exhibit__, Ross Dec.). However, "Adin" is not primarily merely a surname. Respondents ask the Court to take judicial notice that "Adin" translates from Hebrew to "gentle". In *Ex parte Rivera Watch Corp.*, 106 USPQ 145, 149, 1955 WL 6450 (Comm'r Pat. 1955), the court noted that surnames such as "Reeves", "Higgins", and "Wayne" are primarily surnames, but "King" and "Cotton" are not, as the latter have "well known meanings as a word in the language". *Id*. In the context of dental implants, the word "gentle" is suggestive, fanciful or arbitrary rather than descriptive. Moreover, "Adin" is not a common surname in the United States.

Evincing the prior and ongoing use of the marks, Respondents pled that Adin first used a substantial portion of the Adin Marks during the application process for one of its products with the United States Food and Drug Administration culminating in approval in 2008. CC ¶16.

Further, Respondents averred that when Adin first engaged in business with Plaintiff, Adin had limited sales or business activity (Ans. ¶2), rather than Movants' assertion that Adin had no or virtually no sales or business activity in the United States. Br., pg. 19.

-19-

Lastly, the registration of the marks by Adin after the registration of the domain address does not preclude a finding that the marks were distinctive. *See Carnivale v. Staub Design, LLC*, 700 F.Supp. 2d 660 (D.Del. 2010).

### 2. Movants Have Used The Domain Address In Bad Faith

Movants assert:

> …there is no allegation that Shetel made any offer to transfer, sell, or otherwise assign the domain name to the mark owner ... for financial gain without having used ... the domain name in the bona fide offering of any goods or services, the statutory factor which is the classic hallmark of a bad-faith cybersquatter.

Br., pg. 20. Respondents have pled that in October 2016, Plaintiff prepared a proposed agreement for the sale of its business to Adin, which included the website domain name. CC¶81. Also, Respondents pled that in the fourth quarter of 2016, Adin was notified that Plaintiff, among other things, was selling Adin's products for markedly reduced costs, threatening the good will and reputation of Adin. CC¶84. Thus, contrary to Movants' argument, Respondents sufficiently alleged that Plaintiff both offered to sell the infringing domain name and used the domain name in furtherance of the sale of Adin's goods for less than the market rate.

## V. RESPONDENTS HAVE SUFFICIENTLY PLED FACTS REGARDING DR. WEITZ TO MAINTAIN THEIR CAUSES OF ACTION

Movants' argument that Respondents have failed to adequately allege facts that give rise to veil piercing or any other theory of individual liability against Dr. Weitz does not address either: a) the facts alleged that give rise to personal liability of Dr. Weitz for his acts prior to the incorporation of Plaintiff; or b) that facts alleged that give rise to veil piercing.

### A. DR. WEITZ'S ACTS PRIOR TO PLAINTIFF'S INCORPORATION

Shetel Industries LLC only filed its initial Certificate of Incorporation with the New York State Department of State on **May 12, 2011**. CC ¶5. Dr. Weitz is alleged to have undertake

numerous acts prior to May 12, 2011 as an individual and/or as a promoter of the theretofore

unincorporated entity, and then after May 12, 2011, with willful disregard of the corporate form.

Respondents alleged that Plaintiff initially registered www.adinimplants.com on July 16,

2010. CC ¶171. However, Plaintiff had not yet been incorporated on July 16, 2010. CC ¶5[2].

Even after Plaintiff was incorporated, Dr. Weitz used the pronoun "I" when referencing

the ownership of the domain name www.adinimplants.com, while using the pronoun "We"

throughout the remainder of the same paragraph to reference Plaintiff, stating:

> We own our phone number and our website…We all agreed that **I own
> Adinimplants.com , not Adin Israel** and that Adin Israel owns the trademark of
> their name. **Adin Israel is allowing Shetel to use their nam**e. Upon Termination,
> it is clear that **Adin Israel will not allow Shetel** to continue using their name.

(Emphasis added). See Exhibit C to Ans., pgs. 1-2; CC ¶49.

Additionally, as has been alleged, Dr. Weitz negotiated with Adin in 2010 and 2011,

inclusive of a period of time that preceded Plaintiff's incorporation. CC ¶¶18-19. It was during

said negotiations that Dr. Weitz falsely represented he possessed and would invest sufficient

funds, time, contacts and effort to develop a marketing and distribution business for Adin's

products throughout the United States. CC ¶19.

B.  DR. WEITZ'S INDIVIDUAL LIABILITY FOR TRADEMARK INFRINGEMENT
AND UNFAIR COMPETITION

A corporate officer may be personally liable for trademark infringement and unfair

competition if it is established that …the officer is a 'moving, active conscious force behind [the

---

[2] Respondents do not seek to introduce facts that would trigger the requirement of Rule 12(b)(6)
to convert the pending motion to a Rule 56 motion; however, in the interest of accuracy, it bears
noting that subsequent investigation has established that Dr. Markus Weitz, not Plaintiff, was the
registrant of www.adinimplants.com.  Same is detailed in the accompany declaration pertaining
to this limited issue, which is separate from counsel's other declaration to enable the Court to
consider or disregard the issue-specific declaration as it so chooses.

defendant corporation's] infringement.' *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913 (E.D.N.Y. 1988). (citations omitted). A showing that an officer authorized and approved the acts of unfair competition which are the basis of [the] ... corporation's liability ... is sufficient participation in the wrongful acts to make [officer] individually liable. *Id. quoting Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978). Respondents adopt and incorporate their argument regarding trademark infringement and unfair competition made *supra*. Respondents have alleged with sufficiency that Dr. Weitz personally acceded to Exhibit C, wherein he agreed that Plaintiff would cease using Adin's marks after the termination of the relationship; however, Movants continue to use Adin's marks, including, but not limited to, through the continued use of part or all of the Adin Marks in internet domain addresses, which Dr. Weitz registered and never transferred to any other entity.

Further, as alleged in the Respondents' pleading, Dr. Weitz incorporated and organized as his alter ego Third-Party Defendant Osseogroup, LLC, which used part of the Adin Marks in its internet domain page name for the purposes of marketing dental implants. TPC ¶¶5-6, 55-66.

In the context of the *Bambu Sales*, Respondents have pled claims against Plaintiff and Osseogroup, LLC sufficient for a finding of liability against Dr. Weitz.

## C. DR. WEITZ'S ACTS MERITING VEIL-PIERCING

Movants contend that Respondents do not even attempt to plead specific allegations regarding Dr. Weitz doing business for himself, disregarding Plaintiff's corporate form, or commingling personal and corporate assets. Br., pg. 21.

Allegations of complete domination of a corporation and the use of that domination to commit a wrong against creditors have been held to be sufficiently pled to meet the standard of Rule 12(b)(6). *See Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F.Supp. 117, 122 (S.D.N.Y.

-22-

1996). Further, whenever anyone uses control of the corporation to further his own rather than the corporation's business, he will be liable for the corporation's acts upon the principle of respondeat superior applicable even where the agent is a natural person. *Walkovsky v. Carlton*, 18 N.Y.2d 414, 417 (1966).

Generally, piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 141-142 (1993). To avoid dismissal, a party seeking to pierce the corporate veil must present factual allegations concerning both of the aforesaid elements. *Federal National Mortgage Association v. Olympia Mortgage Corporation*, 1:04-cv-04971-NG-MDG, 2006 WL 2802092, *7 (E.D.N.Y. 2006) *citing EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005).

As alleged in Respondents' pleadings, Dr. Weitz made numerous false promises designed to induce Adin to enter into a distribution agreement with an entity, Plaintiff, which he had not yet incorporated (CC, ¶19); requested a forbearance agreement on behalf of Plaintiff (CC ¶30); executed an agreement for the sale of Plaintiff's business to Adin, and refused to honor the terms of same (CC ¶40); asserted personal ownership of the domain address www.adinimplants.com (CC ¶49); personally decided to repeatedly refuse to execute an agreement on behalf of Plaintiff with Adin, make promises to Adin on behalf of Plaintiff, and shut down Plaintiff's business for a prolonged period starting in February of 2013 as a negotiation tactic and to Adin's material harm (CC ¶49). As to undercapitalization of Plaintiff, Respondents specifically alleged that Dr. Weitz either lacked funds sufficient to develop Plaintiff's business or elected not to contribute funds sufficient to develop Plaintiff's business to Respondents' detriment. CC ¶19.

-23-

Respondents have sufficiently alleged grounds to maintain the causes of action against Dr. Weitz for his actions prior to and after the incorporation of Shetel.

## VI.   RESPONDENTS HAVE SUFFICIENTLY PLED FACTS REGARDING OSSEOGROUP TO MAINTAIN THEIR CAUSES OF ACTION

Movants make two arguments regarding Third-Party Defendant Osseogroup LLC: a) only one factual allegation regarding Osseogroup has been made; and b) the allegations made in Respondents' pleading do not indicate Osseogroup committed trademark infringement, statutory violations, or torts.

Movants identify one aspect of Respondents' allegations of Osseogroup, stating:

> The only factual allegation specific to Osseogroup is that the www.adinimplants.com URL, after it stopped directing users to Shetel's website, redirected users to Osseogroup's website and later to a Not Found error message on Osseogroup's top-level domain name (www.osseogroup.com/aaa.html). CC ¶¶ 178-80; TPC¶¶ 61-63.

Br., pgs. 22-23. As set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007):

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

(internal citations, alterations, and quotations marks omitted). Movants fail to acknowledge the allegations in paragraph 89 of Respondents' Counterclaims (and incorporated into Respondents' Third-Party Complaint), wherein Respondents made clear that despite Respondents' prior cease and desist notices to Movants, Osseogroup continued to use Adin's trademark in its online marketing. On July 13, 2017, Respondents again served Movants with a cease and desist letter, wherein Respondents specifically identified via exhibits, Movants' collective, continued use of the Adin Marks. (See Exhibit 1, Declaration of Gregory K. Mueller). As Movants are well aware,

-24-

and as referenced in paragraph 89 of Respondents' Counterclaims, as of July 5, 2017, after Respondents served Movants with multiple cease and desist letters (CC ¶85), Plaintiff filed the instant lawsuit, the domain address http://www.Osseogroup.com/adin.html still pointed to an active webpage on Osseogroup's website, which stated:

OSSEOGROUP
CALL US NOW: 212.764.2900
OSSEOGROUP CARRIES VARIOUS LINES OF DENTAL IMPLANTS.
Our available abutments, prosthetics and supplementary products ft a wide array
of dental implant lines. Please inquire about compatibility and availability.
© 2016 OSSEOGROUP.COM. All rights reserved.
(https://twitter.com/Osseocore)
212.764.2900
123 Grove Ave, Suite 109, Cedarhurst, NY 11516

(Exhibit 1, Mueller Decl.). As pled, on August 4, 2017, only after receipt of the cease and desist letter referenced in paragraph 89, did Osseogroup modify its domain name to eliminate the aforesaid marketing. CC¶ 180.

Additionally, it bears noting that Respondents alleged Osseogroup and Dr. Weitz diverted sales of Respondents' products to Osseogroup and Dr. Weitz. TPC ¶43-44.

**CONCLUSION**

For the reasons set forth herein, Respondents respectfully request the Court deny *en toto* the Motion to Dismiss.

Dated:  Tenafly, New Jersey
        February 1, 2018

MUELLER LAW GROUP

By:  /s/Gregory K. Mueller
       Gregory K. Mueller
       Matthew J. Ross
19 Engle Street
Tenafly, New Jersey 07670
(201) 567-4969
*Attorneys for Adin Dental Implant Systems, Inc., Adin Dental Solutions USA, Inc., and Jeremy Danzer*

-25-
